**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| CORROSION PREVENTION TECHNOLOGIES LLC | ) ) ) |
| Plaintiff, | ) )   Case No. 4:20-cv-02201 |
| v. | ) ) |
| LOREN L. HATLE, SANTIAGO HERNANDEZ, TIMOTHY MULVILLE, BEAR METAL TECHNOLOGIES, LLC, and CORROSION EXCHANGE, LLC, | )   **JURY TRIAL DEMANDED** ) ) ) ) |
| Defendant. | |

## COMPLAINT

Plaintiff Corrosion Prevention Technologies LLC files this Complaint against Defendants Loren L. Hatle, Santiago Hernandez, Timothy Mulville, Bear Metal Technologies, LLC, and Corrosion Exchange, LLC for violations of the Defend Trade Secrets Act, the Texas Uniform Trade Secrets Act, and the Lanham Act, and for breaches of contract, misappropriation, and conversion, as follows:

### I.   PARTIES

1.     Plaintiff Corrosion Prevention Technologies LLC ("CPT") is a limited liability company organized and existing under the law of the State of Texas.[1]  CPT maintains its principal place of business in the United States located at 4020 Strawberry Road, Pasadena, Texas 77504.

2.     On information and belief, Defendant Loren L. Hatle ("Hatle") is an individual Texas resident who can be served with process at his residence 21122 Grandin Wood Court,

---

[1] CPT is the new name of TGS Solutions, LLC as of Friday, June 12, 2020.  *See* **Exhibit O,** a true and correct copy of which is attached to this Complaint.

1

Humble, Texas 77338. Upon information and belief, he also conducts business in this District through his company Corrosion Exchange, LLC.

3.      On information and belief, Defendant Santiago Hernandez ("Hernandez") is an individual Texas resident who can be served with process at his residence 9509 Kerrwood Lane, Houston, Texas 77080.  Upon information and belief, he also conducts business in this District through his company Bear Metal Technologies, LLC.

4.      On information and belief, Defendant Timothy Mulville ("Mulville") is an individual Texas resident who can be served with process at his residence 11210 Albury Park Lane, Tomball, Texas 77375.  Upon information and belief, he also conducts business in this District through his company Bear Metal Technologies, LLC.

5.      On information and belief, Defendant Bear Metal Technologies, LLC ("Bear Metal Technologies" or "BMT") is a Texas limited liability company with a principal place of business at Three Sugar Creek Center, Suite 100, Sugar Land, Texas and may be served through its registered agent, Santiago Hernandez, Three Sugar Creek Center, Suite 100, Sugar Land, Texas 77478.

6.      On information and belief, Defendant Corrosion Exchange, LLC ("Corrosion Exchange") is a Texas limited liability company with a principal place of business at 20523 Whitebury Court, Humble, Texas and may be served through its registered agent, Christopher Knowles, 20523 Whitebury Court, Humble, Texas 77346.

## II. JURISDICTION

7.      This Court has original subject matter jurisdiction over this dispute, pursuant to 28 U.S.C. §§ 1331 and 1338, because CPT's claims against Defendant arise under the Federal Defend Trade Secrets Act, 18 U.S.C § 1836 *et seq.* ("DTSA") and under the Lanham Act, 15 U.S.C. § 1051 *et seq.*  This Court has supplemental and pendent jurisdiction over CPT's state and common law

claims under 28 U.S.C. § 1367 because CPT's claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

8.      This Court has personal jurisdiction over Defendants because they reside in this District and transact business in this District.  Specifically, this Court has personal jurisdiction over Hatle, Hernandez, and Mulville because they are citizens and residents of Texas.  This Court has personal jurisdiction over BMT and Corrosion Exchange because, upon information and belief, these entities either have their principal place of business in this District or employ a Texas resident and citizen (Hatle, Hernandez, and/or Mulville), and the conduct of the entities sought to be enjoined by CPT is related to this conduct within the forum state.

### III. VENUE

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) because at least one Defendant resides in this District and in Texas, because a substantial portion of the acts or omissions giving rise to CPT's claims occurred in this District, and/or because at least one Defendant is subject to this Court's personal jurisdiction for this action.

### IV. BACKGROUND

**A.  CPT's CorrX™ Technology Revolutionized the Corrosion Prevention Industry**

10.      Corrosion prevention has been an issue for various industries, including the oil and gas industry, shipping trades, and others for decades, causing nearly $2.2 trillion in damage.  While several companies have claimed to have the solution to this global issue, most corrosion solution products merely mask the problem.  Most companies address corrosion issues with abrasive blasting and coating techniques, which, although they may appear to be successful to the naked eye, often leave corrosion issues unresolved at the microscopic level.

11.     After many years of research and investment, from 2009 through 2014, CPT's predecessors, Trigenix and CorrLine International, LLC ("CorrLine"), developed valuable intellectual property in the form of a treatment kit comprised of a powder and a liquid/gel used to decontaminate metal substrates to prevent corrosion and a method of applying the treatment kit components to remove contaminants.  Accordingly, CPT and its predecessors ("CPT") invested significant resources researching and developing this corrosion prevention technology.

12.     Included in this technology is CPT's suite of CorrX™ products.   CorrX™ technology removes both water-soluble and non-water-soluble contaminants, effectively taking out a key component of the corrosion mechanism necessary for cathodic corrosion-induced coating failure.   CorrX™ breaks the attraction between certain non-water-soluble materials and their surfaces.  By removing the surface contaminants, CorrX™ achieves a superiorly cleaned substrate that ensures that coating systems can have a higher bonding strength and a longer service life. CorrX™ makes an immediate difference at the corroding equipment's project level by eliminating redundant procedures, such as having to reblast due to flash rust, that accelerate costs and asset downtime.  These effects had not previously been achieved in the coating industry, making CPT and CorrX™ an industry pioneer.

13.     CPT's technology saves time and energy by allowing customers to prepare the substrate, such as a ship hull or petroleum storage tank, just one time.  Once the hull or tank is blasted to remove surface contaminants, CorrX™ PREP is applied.  CorrX™ PREP is a patented powder converted into a gel on site.  The gel removes any substrate contaminants remaining on the metal and any flash rust that has occurred since the cleaning.  CorrX™ WASH rinses away the reacted contaminants and stabilizes the substrate.  When the substrate is dry, customers can then coat the substrate to protect from future corrosion.

14.     CorrX™ revolutionized the coating process by allowing an entire project to be sandblasted, CorrX™ treated, then coated, in stark contrast to the traditional method of sandblasting a small section, applying corrosion inhibitor, coating, and then repeating so as to not allow excess flash rust to interfere with coating adhesion.  In total, Corrx™ technology increased project efficiency by as much as 25-30% as compared with utilizing traditional methods.

### B.  Hatle, a Chief Developer of CPT's IP, Leaves CorrLine

15.     A chief developer of CPT's CorrX™ technology was Defendant Loren Hatle, an employee of CorrLine and its predecessor, Trigenix, for over five years, and a co-inventor on patents that embody CorrX™.

16.     In January 2012, Trigenix filed United States Provisional Patent Application No. 61/591,028, naming as co-inventors James Knocke and Loren Hatle.

17.     In 2013, CorrLine inventors Knocke and Hatle filed two related patent applications that later issued as United States Patent Nos. 9,193,943 and 9,782,804, which relate to a treatment kit and a method for cleaning substrate surfaces.  Both the 9,193,943 and 9,782,804 Patents list CorrLine as the applicant and are assigned to CPT's prior entity name, TGS Solutions, LLC.[2]

18.     Defendants Santiago Hernandez and Timothy Mulville were also employees of CorrLine at the same time as Hatle.

19.     Also in 2013, during their employment with CorrLine, each of Defendants Hatle, Hernandez, and Mulville (the "Individual Defendants") signed a Confidentiality Agreement.  A true and correct copy of Hatle's Confidentiality Agreement is attached as **Exhibit A**.  A true and

---

[2] As mentioned in footnote 1, *supra*, CPT is the new name of TGS Solutions, LLC ("TGS").  TGS acquired CorrLine through a bankruptcy sale order in 2014 and subsequently changed its name to CPT.  This Complaint refers to Plaintiff as CPT despite that many of the agreements, including the assignment, refer to it by its old name as TGS.  Plaintiff is also in the process of changing the assignment of the 9,193,943 and 9,782,804 Patents from TGS to CPT.

correct copy of Hernandez's Confidentiality Agreement is attached as **Exhibit B**.  A true and correct copy of Mulville's Confidentiality Agreement is attached as **Exhibit C**.

20.     In their Confidentiality Agreements, Hatle and Hernandez acknowledged that CorrLine's "Confidential Information" was a "valuable, special and unique asset of CorrLine" and that

> during the term of Employee's employment and thereafter, the Employee shall not (i) disclose any Confidential Information to any person or entity; (ii) use or exploit in any manner the Confidential Information for himself or any other person, partnership, association, corporation, or any other entity other than [CorrLine]; (iii) remove any Confidential Information, or any reproduction thereof, from the possession or control of the Company or (iv) treat Confidential Information otherwise than in a confidential manner.

*See* Ex. A at ¶ 2; Ex. B at ¶ 2.  Hatle and Hernandez also agreed to "return to the Company all Confidential Information . . . immediately upon request and in any event upon the completion of his employment by the Company.  I further agree that I shall not retain copies, notes or abstracts of the foregoing."  Ex. A at ¶ 3; Ex. B at ¶ 3.  Mulville's Confidentiality Agreement contains similar provisions.  Ex. C at ¶¶ 2–3.

21.     The Hatle and Hernandez Agreements define "Confidential Information" to include

> CorrX materials (and products related thereto), product information, specifications, manuals, formulas, compositions, application process and procedures, technology, data . . . trademarks and other intellectual property, reports, analyses, . . . studies and other materials . . . [and] products . . . that may be disclosed, provided or made available to Employee in any form or format (including orally, in writing or electronically) before, on or after the date of hire, or to which the Employee otherwise becomes aware or gain access or possession.

Ex. A at ¶ 1; Ex. B at ¶ 1. Mulville's Agreement contains a similar definition.  Ex. C at ¶ 1(a).

22.     In addition, Hatle and Hernandez agreed that "All Confidential Information developed, created or maintained by the Employee, alone or with others while employed by

CorrLine International, and all Confidential Information maintained by the Employee thereafter, shall remain at all times the exclusive property of the Company."  Ex. A at ¶ 3; Ex. B at ¶ 3.

23.     Hatle resigned from CorrLine in September 2014.   Hernandez and Mulville resigned around the same time.  On information and belief, the Individual Defendants took CPT's confidential information, including the product information, specifications, manuals, methods, formulas, compositions, application process and procedures, technology, data, know-how, reports, analyses, compilations, records, notes, presentations, summaries, studies and other materials of CPT's corrosive resistance technology CorrX™, in violation of the Confidentiality Agreements they entered with CorrLine.

24.     In October 2014, CPT acquired the assets of CorrLine through a bankruptcy sale order which provided CPT with exclusive ownership of Intellectual Property "and authorization to manage, register and otherwise perfect its rights in such property, including the filing of further patent registration."  Intellectual Property is defined to include trade secrets and confidential know-how, and patents and patent applications, including but not limited to CorrX™ coatings and procedures, all marketing material, and many other such assets.  The bankruptcy sale order also transferred "all Contracts of [CorrLine] used in the Business, including, but not limited to [CorrLine]'s rights under non-competition agreements with former officers, employees, and their agents" as well as other "company agreements" to CPT.

25.     On December 2, 2014, Hatle assigned and transferred to CPT "the entire right, title, and interest in and to the Inventions in the United States and foreign countries and the Patents and Patent Applications, including but not limited to all reissues, divisions, continuations and extensions of the Patents."  A true and correct copy of the Assignment Agreement is attached as **Exhibit D**.  In the Assignment Agreement, Hatle also agreed "for no additional compensation, to

cooperate with ASSIGNEE [CPT] and to execute and deliver all papers, documents, instruments, and assignments as may be necessary to vest all rights, title, and interests in and to the aforesaid materials in ASSIGNEE [CPT], including without limitation, any patent applications."  Ex. D.

26.    Upon resignation from CorrLine, the Individual Defendants started Bear Metal Technologies, which engaged in the manufacture of products and methods of use for those products in direction competition with CorrLine and CPT.

27.    Bear Metal Technologies developed a promotional video[3] of its purported "revolutionary technology," blatantly using CorrX™ Scanning Electron Microscope ("SEM") & Energy Dispersive X-Ray Spectrometer Analysis of samples cleaned with CorrX™ (**Exhibit E**, a true and correct copy of which is attached to this Complaint).  For example, *compare* Bear Metal Technologies promotional video *with* CPT website:

---

[3] Bear Metal Technologies promotional video, available at https://www.youtube.com/watch?v=dM1iAtyCYiA (last visited June 4, 2020).



28. Furthermore, Bear Metal Technologies' promotional video uses CorrLine's CorrX™ product description in near-verbatim. For example, *compare* Bear Metal Technologies promotion video *with* CPT website:

| CPT website "How Corrosion Starts" (**Ex. F**) | Bear Metal Technologies promotion video at 0:52–1:05 |
|---|---|
| "even when white metal, the industry's highest visual standard, looks pristine to the naked eye, the view under the microscope tells a completely different story" | " . . . even when metal is cleaned to the industry's highest substrate preparation standards, and looks pristinely clean to the naked eye, the view under the microscope tells a completely different story." |
| *Id.* | *Id.* at 1:12–1:41 |
| "Within hours, the surface had already rusted. One side of the rusted area was treated with CorrX and analyzed within 4 hours. Energy-dispersive X-ray spectroscopy reports showed no contaminants on the CorrX side. Microscopic views of the untreated side reveal cracks in oxidation layers and contaminant deposits. The CorrX side had no contaminants and no corrosion." | "Within hours, the substrate has rusted. One side of the rusted area was treated with BMT and analyzed within 4 hours. Energy-dispersive X-ray spectroscopy reports showed no contaminants on the BMT-treated side. Microscopic views of the untreated side reveal a different story.  There are cracks in oxidation layers and contaminant deposits. The BMT-treated side had no contaminants and no corrosion." |
| CPT website "Benefits of CorrX" (**Ex. F**) | *Id.* at 2:44–1:41 |
| "CorrX is an environmentally-friendly, long-term solution to an age-old problem. With CorrX, you can dramatically reduce project costs, expedite project schedules, remove corrosion-causing substrate contaminants, enhance coating performance, and minimize asset maintenance and downtime caused by corrosion." | "BMT is an environmentally-friendly, long-term solution to an age-old problem. With BMT, you can dramatically reduce project costs, expedite complicated project schedules, eliminate corrosion-causing substrate contaminants, enhance coating performance, and minimize asset maintenance and downtime caused by corrosion." |
| *Id.* | *Id.* at 3:58–4:13 |
| "By eliminating contaminants, CorrX ensures that coating systems can have higher bonding strength and longer service life. CorrX makes an immediate difference at the project level by eliminating variables, such as having to reblast due to flash rust, that accelerate costs and asset downtime." | "By eliminating contaminants, BMT assures that coating systems have a longer service life and perform exponentially better. It also makes an immediate difference at the project level by eliminating variables that accelerate costs and asset downtime." |
| *Id.* | *Id.* at 4:14–4:53 |
| "With our simple and safe Coating-Edge Technology™, you prepare the substrate just once. After the tank is blasted, CorrX PREP is applied. . . . The gel removes any substrate contaminants remaining on the metal and any flash rust that has occurred since the cleaning. CorrX WASH rinses away the reacted | "With our simple and safe Coating-Edge Technology, you prepare the substrate just once. When you are ready to coat, BMT PREP is applied. The gel destroys any substrate contaminants remaining on the metal and any flash rust that has occurred since the cleaning. BMT WASH removes the |

| | |
|---|---|
| contaminants and stabilizes the substrate. When the substrate is dry, you are ready to coat. With CorrX, you don't have to coat the same day of surface preparation. In fact, coatings have been applied more than three weeks after the initial cleaning with no recordable coating failures on any project." | reacted contaminants and stabilizes the substrate. When the substrate is dry, you are ready to coat. With BMT, you don't have to coat the same day of surface preparation. In fact, coatings have been applied more than three weeks after the initial cleaning with no recordable coating failures on any project.." |

29.    In February 2015, Hatle joined Clean Metal Technologies, LLC ("CMT").  While at CMT, Hatle filed additional patent applications using the same technologies that he developed with James Knocke and assigned to CPT.  The CMT patent applications, one of which has since issued as United States Patent No. 10,030,310, disclose and claim the same or very similar technology disclosed and claimed in the 9,193,943 and 9,782,804 Patents.  Despite his promises in the Assignment Agreement, and his obligations under the bankruptcy sale order, Hatle did not assign the patent applications, or provide all necessary papers to vest title in these patent applications, to CPT.

30.    Thereafter, Hatle left CMT and began MicroClean Metals, LLC and other companies, including but not limited to WirxGroup, LLC ("WirxGroup") and Defendant Corrosion Exchange, which all engaged in the manufacture of products and methods of use for those products in direction competition with CorrLine and CPT.

31.    Specifically, on information and belief, Corrosion Exchange manufactures and sells CleanWirx 207 and WirxGroup manufactures and sells OxNot, both designed to directly compete with CorrX™.  *See* **Exhibit G** (Corrosion Exchange website listing CleanWirx for sale, a true and correct copy of which is attached to this Complaint) and **Exhibit H** (WirxGroup website listing OxNot as a "pioneering product," a true and correct copy of which is attached to this Complaint).

32.     In each of these new business endeavors, Hatle has used CPT's intellectual property, proprietary, and confidential information to enrich his respective companies and to CPT's detriment.

**C.  Hatle's Use of CPT's Intellectual Property, Proprietary, and Confidential Information**

33.     As mentioned, Hatle's subsequent businesses sell competing products CleanWirx 207 and OxNot.  In developing and marketing these products, Hatle and Defendants relied on information, products, know how, data, formulations, and other Confidential Information relating to the CorrX™ products.

34.     For example, as part of its continuing research and testing results, CPT performed a Scanning Electron Microscope ("SEM") & Energy Dispersive X-Ray Spectrometer Analysis of samples cleaned with CorrX™.  *See generally* Ex. E.  As part of this analysis, two steel samples were photographed using an SEM—one treated with CorrX™ and one that was not treated. website.  Twelve images were produced and included as part of the report.  The Analysis, and the images contained therein, is available on CPT's publicly-available website.  In addition, CPT uses images #4 and #7 on the "How Corrosion Starts" section of its website (Ex. F):

 

35.    Notably, these exact same images appear on the OxNot website with text overlaid falsely suggesting one of the samples has been treated with OxNot (**Exhibit I**, a true and correct copy of which is attached to this Complaint), a snapshot of which is provided below:



36.    Portions of image #7 also appear in a video that streams on Corrosion Exchange's website[4], snapshots of which are provided below:



[4] Corrosion Exchange promotional video, available at https://www.cleanwirx.com/ (last visited June 12, 2020).

37.     What's worse, in one of WirxGroup's marketing materials for OxNot, it states

"***OXNOT GEL & OXNOT 2-7 have been renamed from CorrX PREP & CorrX WASH***."  *See*

**Exhibit J**, a true and correct copy of which is attached to this Complaint (emphasis added).  On

information and belief, Hatle inserted this language.

38.     Hatle's statement is untrue, and CPT did not authorize the use of its CorrX™

trademark on this document.  Hatle's actions have harmed and continue to harm CPT.

39.     In addition, Hatle and Defendants have used CPT's marketing materials as the basis

for deceptive advertising.  The CorrX™ marketing material at left below is property of CPT, but

Hatle maintained and used it in violation of his Confidentiality Agreement to create the

CLEANWIRX marketing material at right.



40.     In addition, Hatle maintained letters of recommendation sent to CPT such as the

one shown at left below in which a National Association of Corrosion Engineers (NACE) inspector

explained that in 2011 work, CorrLine delivered superior service and CorrX™ resolved several

difficult corrosion problems.  As shown at right, Hatle and Cleanwirx removed the names CorrLine and CorrX™ from the letter and replaced them with Cleanwirx—a company and a product that did not exist in 2011.

| CorrLine CorrX™ Letter | Hatle's Edited CleanWirx Letter |
|---|---|
| 12/19/2011

To Whom It May Concern:

I was the inspector on a U.S. Naval base fuel tank storage farm where eight, 125,000 barrel (142' x 50'), tanks were built in San Diego California. Following construction, the tanks were unknowingly hydro-tested with extremely contaminated water that immediately resulted in some of the worst corrosion I had ever seen. The contractors had tried multiple abrasive applications in conjunction with a product commonly used in the industry for surface preparation, with no success. The project was running behind schedule with no solution in sight.

I remembered working with Mr. Hatle several years earlier in Houston on some heavily contaminated waste water tanks at an abandoned refinery undergoing refurbishment. His technology removed the contaminants and yielded an acceptable visual standard that allowed us to proceed with, and complete, the project. With that in mind, I suggested that Mr. Hatle be contacted for this project as well.

CorrLine was finally invited in November, 2011 to demonstrate the CorrX process after months of alternative, yet futile, applications were tried. In addition to providing acceptable visual standards, CorrX also removed the problem causing surface contamination that had delayed the project for several months.

As a NACE Inspector, I have now personally witnessed CorrLine's performance in two separate, extremely contaminated project environments. CorrLine delivers superior specification compliance and enables project managers to complete projects on or ahead of schedule. I highly recommend CorrLine to anyone concerned with eliminating surface contaminants and protecting assets from corrosion.

Sincerely,

Pablo Reyna
12-19-2011
Pablo Reyna
NACE CIP Level III #11071

METCO
700 Rockmead Drive, Suite 213
Kingwood, TX  77339

Mobile: 832-544-1902
Pablo.Reyna@metco-ndt.com | 12/19/2011

To Whom It May Concern:

I was the inspector on a U.S. Naval base fuel tank storage farm where eight, 125,000 barrel (142' x 50'), tanks were built in San Diego California. Following construction, the tanks were unknowingly hydro-tested with extremely contaminated water that immediately resulted in some of the worst corrosion I had ever seen. The contractors had tried multiple abrasive applications in conjunction with a product commonly used in the industry for surface preparation, with no success. The project was running behind schedule with no solution in sight.

I remembered working with Mr. Hatle several years earlier in Houston on some heavily contaminated waste water tanks at an abandoned refinery undergoing refurbishment. His technology removed the contaminants and yielded an acceptable visual standard that allowed us to proceed with, and complete, the project. With that in mind, I suggested that Mr. Hatle be contacted for this project as well.

CleanWirx was finally invited in November, 2011 to demonstrate the CleanWirx process after months of alternative, yet futile, applications were tried. In addition to providing acceptable visual standards, CleanWirx also removed the problem causing surface contamination that had delayed the project for several months.

As a NACE Inspector, I have now personally witnessed CleanWirx's performance in two separate, extremely contaminated project environments. CleanWirx delivers superior specification compliance and enables project managers to complete projects on or ahead of schedule. I highly recommend CleanWirx to anyone concerned with eliminating surface contaminants and protecting assets from corrosion.

Sincerely,

Pablo Reyna
12-19-2011
Pablo Reyna
NACE CIP Level III #11071

METCO
700 Rockmead Drive, Suite 213
Kingwood, TX  77339

Mobile: 832-544-1902
Pablo.Reyna@metco-ndt.com |

41.     Furthermore, Hatle submitted a National Association of Corrosion Engineers ("NACE") whitepaper for Clearwirx 207 boldly using CorrLine images and promotional materials.  *See* **Exhibit K**, a true and correct copy of which is attached to this Complaint.  For example, Hatle usurps CorrLine's Brine Pit piping maintenance project success story as Clearwirx 207's own, even though Brine Pit piping maintenance project used CorrX™, not Clearwirx 207:



42.     But Hatle's bad acts do not end there.   He also pirated a CorrLine CorrX™ environmental run-off study, claiming the study as his own of CleanWirx.  *Compare* **Exhibit M** (CorrX™ Run-off Study, a true and correct copy of which is attached to this Complaint) *with* **Exhibit N** (Hatle's repurposed CleanWirx Run-off Study, a true and correct copy of which is attached to this Complaint).  The company that performed the test confirmed that they "did not do two separate pairs of test on the same day with the same test number and the same result."

| **Exhibit M** (Original CorrX™ Run-off Study) | **Exhibit N** (Copied CleanWirx Run-off Study) |
| --- | --- |
|  |  |

43.     The above-described acts represent some of Defendants' misconduct, but are by no means exhaustive and are meant to be only illustrative.

## COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.* – All Defendants)

44.     CPT re-alleges and incorporates herein by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

45.     CPT owns a valid trademark to "CORRX" registered with the United States Patent and Trademark Office under serial number 88735807 at least as of December 2019, and has used the CORRX mark for many years.  Consumers have recognized the CorrX™ brand for over 8 years as the revolutionary and superior corrosion control technology.

46.     Defendants Hatle and Corrosion Exchange have made false and misleading statements about their OxNot, OxNot 207, and CleanWirx 207 products.  For example, as stated, in WirxGroup's marketing materials for OxNot, it states "*OXNOT GEL & OXNOT 2-7 **have**

17

***been renamed from CorrX PREP & CorrX WASH*.**"  *See* Ex. J (emphasis added).  But CorrX™ Prep and CorrX™ Wash are products of CPT, not of Hatle or WirxGroup.  CPT has never given Hatle permission to utilize CorrX™ products as the genesis of the OxNot products, nor has CPT renamed its CorrX™ products to OxNot.  Hence these statements are clearly false.  Furthermore, Defendants have used CPT's SEM and Energy Dispersive X-Ray Spectrometer results for their products—displaying CorrX™ results on the product websites as if these SEM results are *their own*.  *See* Exs. F–I.  These representations are misleading.

47.     Defendants' false and misleading statements are held out to the public and have either already deceived or have the capacity to deceive consumers.  For example, Hatle's statements through the WirxGroup website about the origin of the OxNot products are made not in private conversations, but in its marketing materials designed to target a wide range of potential consumers.  Bear Metal Tecnologies', Corrosion Exchange's, and WirxGroup's use of CorrX™ SEM and Energy Dispersive X-Ray Spectrometer results for the promotion of their products is published on their respective websites, a medium that reaches any potential consumer in the world with an internet connection.  Likewise, copying and altering CPT's marketing documents and reference letters reveals that Hatle and other Defendants are intentionally trading off the name and reputation of CPT.

48.     These and other false statements and misrepresentations most likely influence consumers' purchasing decisions as CPT's CorrX™ has been the leading corrosion prevention technology in the industry for its revolutionary and efficient corrosion control.  Defendants' direct and indirect use of CorrX™ information in its product descriptions thus likely affects consumer decisions as many consumers in the industry recognize the CorrX™ brand name.

49.     Defendants' products, like CPT's CorrX™, are sold and used across multiple states, and are thus used in interstate commerce.

50.     As a natural, probable, and foreseeable consequence of the actions of Defendants, CPT has suffered and continues to suffer damages for which Defendants are liable, including lost profits, loss of customers, and loss of future business opportunities and good will.

51.     CPT is entitled to damages to make whole the irreparable harm it has suffered.

## COUNT II
### (Violation of the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.* – All Defendants)

52.     CPT re-alleges and incorporates herein by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

53.     CPT is the owner of valid and enforceable trade secrets, including the trade secrets in the product information, specifications, manuals, methods, formulas, compositions, application process and procedures, technology, data, know-how, reports, analyses, compilations, records, notes, presentations, summaries, studies, and other materials of CPT's corrosive resistance technology CorrX™.

54.     All of CPT's trade secrets are confidential, proprietary, and highly valuable trade secrets that derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

55.     CPT's misappropriated trade secrets are not generally known and are not readily ascertainable.  CPT took reasonable precautions to maintain the secrecy of these misappropriated trade secrets, including by maintaining Confidentiality Agreements with key employees (including

Hatle), by maintaining secured networks and databases, and by limiting access to such information from others.

56.     Accordingly, CPT's misappropriated trade secrets are considered a "trade secret" under the DTSA, because the information is not generally known outside of CPT's business or by employees and others involved in CPT's business.  CPT has invested significant amounts of time and money in developing the information, continuously uses the information in its business, and has also taken reasonable measures to guard the secrecy of the information.  The information cannot easily be acquired or duplicated by others, and is of great value to CPT and its competitors.

57.     During the course and scope of the Individual Defendants' employment with CPT's predecessor, they were exposed to and had access to CPT's misappropriated trade secrets.  The Individual Defendants agreed, as part of their employment, to not disclose to others or use any confidential technical or business information belonging to CPT.  The Individual Defendants further agreed that upon termination of their employment, they would surrender to CPT all confidential information in his possession relating to the business of CPT and to preserve as confidential all trade secrets of CPT.  The Individual Defendants further agreed to not reveal any misappropriated trade secrets or disclose to others such trade secrets, nor to take, retain, or copy any of CPT's documents containing such confidential information.

58.     The Individual Defendants copied and retained certain of CPT's trade secrets without authorization, and therefore stole CPT's misappropriated trade secrets while still employed at CPT, with, upon information and belief, an intent to use in a competing business and are now using that information in their new positions.

59.     Bear Metal Technologies and Corrosion Exchange knew or reasonably should have known that the Individual Defendants did not—and still do not—have permission to disclose any

20

of CPT's confidential information or the misappropriated trade secrets to Bear Metal Technologies and Corrosion Exchange.  The Individual Defendants' continued improper possession and use of CPT's confidential information demonstrates that they have no intention of complying with the law, and upon information and belief, Bear Metal Technologies and Corrosion Exchange will continue to facilitate the knowing theft and misuse of CPT's misappropriated trade secrets and confidential information.

60.    Upon information and belief, Defendants intended to leverage and commercially exploit CPT's misappropriated trade secrets for the financial benefit of their own corrosion solution services and in furtherance of their rapid development of anti-corrosive materials, including OxNot, OxNot 207, and CleanWirx 207.  In furtherance of that plan, and without authorization from CPT, upon information and belief, Defendants improperly acquired access to CPT's misappropriated trade secrets and intended to leverage, commercially exploit, and otherwise use the CPT misappropriated trade secrets without permission or authorization.

61.    The Individual Defendants had notice that CPT's misappropriated trade secrets were confidential, proprietary, and highly valuable, and Bear Metal Technologies and Corrosion Exchange knew or reasonably should have known the same.  Upon information and belief, Defendants have utilized the unlawfully obtained confidential information and misappropriated trade secrets to unfairly compete and solicit CPT customers, and should not be able to reap the benefits of their unlawful conduct.

62.    The foregoing acts constitute misappropriation of CPT's trade secrets under the Defend Trade Secrets Act, 28 U.S.C. § 1836.

63.    Defendants' conduct was malicious, deliberate, and willful, or in the alternative at least grossly negligent.

64.     Defendants' misappropriation of CPT's trade secrets has caused and will continue to cause damage to CPT in an amount to be determined at trial.

## COUNT III
**(Violation of the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code Ann. § 134A.001, *et seq.* – All Defendants)**

65.     CPT re-alleges and incorporates herein by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

66.     During the course of their relationship with CPT's predecessor, CorrLine, the Individual Defendants had access to CPT's confidential and trade secret information.

67.     For instance, the Individual Defendants had access to materials comprising confidential and proprietary information, including the trade secrets in in the product information, specifications, manuals, methods, formulas, compositions, application process and procedures, technology, data, know-how, reports, analyses, compilations, records, notes, presentations, summaries, studies and other materials of CPT's corrosive resistance technology CorrX™.

68.     This information is not available to the general public and is guarded by CPT.  CPT keeps such information confidential in order to maintain an advantage in the competitive anti-corrosive materials industry.

69.     This information is considered a trade secret under the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code Ann. § 134A.001, *et seq.*, because CPT has taken reasonable efforts to maintain its secrecy, and the information has independent economic value to CPT and to third parties because it is generally unknown and not readily ascertainable through proper means by persons who could obtain economic value from its disclosure or use.

70.     Under TUTSA, "actual or threatened misappropriation [of trade secrets] may be enjoined."  Tex. Civ. Prac. & Rem. Code Ann. §134A.003.

71.     The Individual Defendants misappropriated CPT's confidential and trade secret information.   For example, upon resignation, the Individual Defendants took the product information, specifications, manuals, methods, formulas, compositions, application process and procedures, technology, data, know-how, reports, analyses, compilations, records, notes, presentations, summaries, studies and other materials of CPT's corrosive resistance technology CorrX™, thereby acquiring such information without permission and through improper means, and with knowledge or reason to know that it was acquired through improper means.

72.     After acquiring CPT's confidential and trade secret information through improper means, the Individual Defendants further misappropriated such information by, upon information and belief, disclosing it to Bear Metal Technologies, Corrosion Exchange, and/or WirxGroup without CPT's express or implied consent.  The Individual Defendants also knew or had reason to know that such information was acquired through improper means, and/or acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

73.     Bear Metal Technologies and Corrosion Exchange misappropriated CPT's confidential and trade secret information by, upon information and belief, acquiring such information from one or more of the Individual Defendants with knowledge or with reason to know that it was acquired through improper means.

74.     Further, upon information and belief, Defendants have misappropriated and are misappropriating CPT's confidential and trade secret information by using it without CPT's express or implied consent at Bear Metal Technologies, Corrosion Exchange, and WirxGroup, evidenced at least by the substantial similarity of the Bear Metal Technologies, Corrosion Exchange, and WirxGroup products to CPT's own CorrX™.  Defendant acquired such information through improper means, and/or obtained such information with knowledge or reason to know that

it was obtained from someone that acquired it through improper means or under circumstances giving rise to a duty to maintain its secrecy or limit its use.

75.     Upon information and belief, Defendants have misappropriated and are misappropriating CPT's trade secrets by unlawfully possessing and utilizing CPT's property, including CPT's confidential information, and using that information to solicit CPT's customers. Upon information and belief, Defendants have utilized the unlawfully obtained confidential information and misappropriated trade secrets to unfairly compete and solicit CPT's customers, and should not be able to reap the benefits of their unlawful conduct.

76.     Upon information and belief, Defendants' actions have caused CPT to lose existing and/or potential customers.  Defendants' actions have damaged CPT's goodwill, and have diminished CPT's reputation and legitimate business interests.

77.     The Individual Defendants' unlawful possession of CPT's property, including CPT's confidential and misappropriated trade secret information, with, upon information and belief, the clear intent to use such information to expand Bear Metal Technologies', Corrosion Exchange's, and WirxGroup's business, constitutes the "threatened" misuse of CPT's trade secrets.  Injunctive relief is therefore appropriate.

78.     CPT has no adequate remedy at law and, unless injunctive relief is granted, will continue to be irreparably harmed by Defendants' misappropriation in a manner that is not fully compensable by money damages.  Accordingly, CPT requests that this Court enter an order enjoining Defendants from using any misappropriated CPT confidential information and from disclosing such information to anyone not authorized to receive such information.

79.     Moreover, upon information and belief, Defendants' misappropriation of CPT's trade secrets has been and is willful and malicious.

80.     As a direct and proximate result of Defendants' misappropriation, CPT's requests an award of its compensatory damages, as well as exemplary damages and its reasonable attorneys' fees pursuant to TUTSA.

## COUNT IV
### (Common Law Misappropriation – All Defendants)

81.     CPT re-alleges and incorporates herein by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

82.     CPT rightfully owns, possesses, and has the right to immediate possession of CPT's personal property, including CPT's confidential information, trade secrets, intellectual property, trademarks, and other non-copyrighted physical documents containing trade secret and confidential information ("CPT's Property").  CPT has expended extensive time, labor, skill, and money, including countless man hours for developing, testing, formulating, and enhancing its CorrX™ products; recruiting and retaining skilled personnel; promoting and maintaining the CorrX™ brand name.

83.     Defendants have used CPT's Property without burdening much time, labor, skill, and money, thereby enjoying a free ride and gaining special advantage in the competitive corrosion prevention industry.  For example, without CPT's consent or authorization, the Individual Defendants wrongfully took, acquired, disclosed, used, and developed anti-corrosive products from CPT's Property.  Instead of a fair and square development of their own products, Defendants have wrongfully used CPT's Property without just compensation.

84.     CPT has suffered serious damages by Defendants' misappropriation of CPT's Property.

## COUNT V
### (Breach of Contract (Confidentiality Agreement) – the Individual Defendants)

85.    CPT re-alleges and incorporates herein by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

86.    The Individual Defendants breached their Confidentiality Agreements with CorrLine International, LLC when they appropriated, transferred, retained, used, and/or disclosed CorrLine's confidential and proprietary information regarding its CorrX™ products, compositions, methods, application process and procedures, and technology to one or more of CMT, Bear Metal Technologies, and Corrosion Exchange, LLC.  *See* Ex. A at ¶¶ 1–3 (Hatle); Ex. B ¶¶ 1–3 (Hernandez); Ex. C at ¶¶ 1–3 (Mulville).

87.    Hatle also breached his Confidentiality Agreement when he filed United States Patent No. 10,030,310 and at least one additional patent application without transferring the right, title, and interest in and to the Inventions and to extensions of the Patents to CPT.  Ex. A at ¶ 3.

88.    CorrLine complied with and performed under the Confidentiality Agreements, and was ready and willing to perform at all relevant times.   CPT acquired the right to the Confidentiality Agreements in the course of the bankruptcy sale order and, to the extent required, complied with and performed under the Confidentiality Agreements, and was ready and willing to perform at all relevant times.

89.    CorrLine suffered and/or will suffer harm and monetary damages as the direct and proximate consequence of the Indvidual Defendants' breach of their respective Confidentiality Agreements.

90.    CPT is entitled to recover direct and consequential damages as a result of the Individual Defendants' breach.

91.     Additionally, because money damages are insufficient to make whole and adequately protect CPT against further harm, CPT is entitled to specific performance of the Agreements specifically including (1) to require the Individual Defendants to destroy and/or return all Confidential Information to CPT and ensure such Confidential Information is not appropriated, transferred, retained, used, and/or disclosed by the Individual Defendants or Defendants in the future; and (2) for Hatle to cooperate with CPT and to execute and deliver all papers, documents, instruments, and assignments necessary to vest all rights, title, and interests in and to United States Patent No. 10,030,310 and any additional patent applications based on the Inventions and Patents that Hatle assigned to CPT.  The Individual Defendants are also liable to CPT for reasonable and necessary attorneys' fees incurred for the preparation and trial of this claim, plus additional sums in the event of an appeal, as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

## COUNT VI
### (Breach of Contract (Assignment Agreement) – Hatle)

92.     CPT re-alleges and incorporates herein by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

93.     Hatle breached his Assignment Agreement (Exhibit D) with CPT when he filed and prosecuted to issuance United States Patent No. 10,030,310, and at least one additional patent application, without transferring the entire right, title, and interest in and to the Inventions and to extensions of the Patents.

94.     CPT complied with and performed under the Assignment Agreement, and was ready and willing to perform at all relevant times.

95.     CPT is entitled to specific performance of the Assignment Agreement, specifically including to cooperate with CPT and to execute and deliver all papers, documents, instruments,

and assignments necessary to vest all rights, title, and interests in and to United States Patent No. 10,030,310 and any additional patent applications based on the Inventions and Patents that Hatle assigned to CPT.

96.     Hatle is also liable to CPT for reasonable and necessary attorneys' fees incurred for the preparation and trial of this claim, plus additional sums in the event of an appeal, as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

## COUNT VII
### (Conversion – Individual Defendants)

97.     CPT re-alleges and incorporates herein by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

98.     CPT rightfully owns, possesses, and has the right to immediate possession of CPT's Property.

99.     The Individual Defendants have wrongfully exercised dominion and control over CPT's Property in a manner inconsistent with CPT's rights.  For example, without CPT's consent or authorization, the Individual Defendants have wrongfully taken, acquired, disclosed, used, and derived information from CPT's Property.

100.     Individual Defendants have no right of possession to CPT's Property as Individual Defendants' rights of possession ceased when they stopped working for CPT.

101.     At the time of Individual Defendants' actions, CPT owned, possessed, and had the right to immediate possession of CPT's Property.

102.     Individual Defendants' conduct deprived CPT of its ownership rights.

103.     CPT has suffered serious damages by the Individual Defendants' conversion of CPT's Property.

## REQUEST FOR A JURY TRIAL

104.   CPT requests a jury trial.

## PRAYER FOR RELIEF

105.   Upon trial on the merits, CPT requests that it be awarded:

(a)   An injunction enjoining and restraining Defendants, and their agents, representatives, associates, employees, and all those acting in concert or participation with them, from using any CPT confidential information for their own benefit and from disclosing CPT confidential information to anyone not authorized to receive the information;

(b)   An order requiring Defendants to return all CPT confidential information in their possession, custody or control to CPT;

(c)   An order prohibiting Defendants from engaging in business with CPT's current or former customers for which Defendants unlawfully solicited with misappropriated CPT confidential information and trade secrets;

(d)   A judgment that CPT's Trademarks and trade secrets have been infringed or misappropriated by each Defendant;

(e)   Enter judgment against Defendants for actual damages and any profits of Defendants from Defendants' infringement of the CPT's Trademarks as provided by 15 U.S.C. § 1051 *et seq.* or, upon CPT's election prior to a final decision by the Court, statutory damages as provided by 15 U.S.C. § 1117, in an amount to be determined at trial;

(f)   Enter judgment against Defendants for actual damages and any profits of Defendants from Defendants' misappropriation of the CPT's trade secrets, as provided by 18 U.S.C. §§ 1836 *et seq.* or, upon CPT's election prior to a final decision by the Court, statutory damages as provided by 18 U.S.C. § 1834(b)(3), in an amount to be determined at trial;

(g)   The entirety of the amount of money that Defendants have realized world-wide in anything related to corrosion prevention products, including derivative work received as a result of entering the corrosion prevention products market;

(h)   The lost revenue and profits from any jobs CPT lost due to Defendants' wrongful conduct;

(i)   Damages for the reasonable value of the information Defendants took from CPT, including research and development costs;

(j)     All other compensatory damages that CPT suffered from the Defendants' wrongful conduct;

(k)     An award of exemplary damages; and

(l)     Such other and further relief as the Court may deem appropriate.


DATED:  June 23, 2020                    Respectfully Submitted,

                                         By:  /s/ John R. Keville

                                         John R. Keville
                                         Attorney-in-Charge
                                         Texas State Bar No. 00794085
                                         Southern District of Texas ID No. 20922
                                         Email: jkeville@winston.com
                                         Corinne S. Hockman
                                         Texas State Bar No. 24102541
                                         Southern District of Texas ID No. 3019917
                                         Email: chockman@winston.com
                                         Hyun Min Han
                                         Texas State Bar No. 24109972
                                         Southern District of Texas ID No. 3394349
                                         Email: hhan@winston.com
                                         WINSTON & STRAWN, LLP
                                         800 Capitol, Suite 2400
                                         Houston, Texas 77002
                                         Telephone: (713) 651-2600
                                         Facsimile:(713) 651-2700

                                         **COUNSEL FOR PLAINTIFF**
                                         **CORROSION PREVENTION**
                                         **TECHNOLOGIES LLC**