# EXHIBIT C



# MUTUAL CONFIDENTIALITY AGREEMENT

This Mutual Confidentiality Agreement (this "**Agreement**") is made and entered into as of **February 05, 2013**, between CorrLine International, LLC, a Texas limited liability company ("**CorrLine**"), and K A T E, a Missouri City, TX ("**Company**"), concerning the exchange of certain information relating to the corrosion mitigation products and processes manufactured or produced by CorrLine ("**CorrX**").

For the purposes of this Agreement, Corrline and Company are each a "**Party**" and together are the "**Parties**".

## RECITALS

WHEREAS, Company (i) wishes to have a better understanding of CorrX (ii) wishes to become a manufacturer's representative, sales agent or distributor of CorrX (iii) wishes to test the effectiveness of CorrX as corrosion mitigation technology process for its equipment and facilities, and/or (iv) may elect to utilize, apply and treat its assets with CorrX technology in its effort to mitigate corrosion incidents under its maintenance program;

WHEREAS, in connection with exploring a potential transaction or relationship ("**Opportunity**") between the Parties, each Party will have access to certain Confidential Information (as defined herein) concerning the business of the other Party and CorrX product, technology and process;

WHEREAS, the Confidential Information is proprietary and valuable to the Parties and the unauthorized disclosure or inappropriate use of such Confidential Information could be detrimental to the business of each Party; and

WHEREAS, in order to protect the Confidential Information of the Parties, their assets and the rights and interests of their customers, the Parties desire to disclose such Confidential Information to each other pursuant to and in reliance on this Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and obligations hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, it is hereby agreed between the Parties, as follows:

1. **Definitions.**

    a. "**Confidential Information**" shall mean: (a) all information, CorrX materials (and products related thereto), product information, specifications, manuals, application process and procedures, technology, data (regardless of its form or embodiment, including all source code, object code and natural language code therefore), patents, copyrights, trademarks and other intellectual property, know-how, reports, analyses, compilations, records, notes, presentations, summaries, studies and other materials (in whatever form maintained) containing or reflecting information relating to a Party (the "**Disclosing Party**") or the Disclosing Party's assets, liabilities, properties, accounts, financial information, operations, services, products, business plans or models or strategies, distribution systems, network or communication systems, software or customers, vendors and suppliers, that may be disclosed, provided or made available to the other Party (hereinafter, the "**Recipient**") or its Representatives (as defined herein) in any form or format (including orally, in writing or electronically) before, on or after the date hereof, or to which the Recipient or its Representatives otherwise become aware or gain access or possession, (b) all data, reports, analysis, compilations, extracts, summaries, writings, studies, interpretations, forecasts, records or other materials (whether documentary, electronic or otherwise) prepared by or on behalf of the Parties or any of their Representatives, that relate to or are based on or contain any of the information listed in (a) above or that reflect a summary or review or evaluation of any of the information listed in (a) above or the business,

Initials _____   Page 1 of 4
Mutual Confidentiality Agreement                                              CONFIDENTIAL

plans, operations, financials, data, documents or customers of the Parties, (c) the existence of this Agreement and any discussions or negotiations between the Parties relating to CorrX or the Opportunity, and (d) any other information which is marked or expressly designated as "Confidential" by the Disclosing Party or its Representatives, provided that the term Confidential Information shall not include any information that: (i) is or becomes generally available to the public, other than as a result of a wrongful or unauthorized disclosure by Recipient or its Representatives; (ii) was known by the Recipient or its Representatives prior to the date of this Agreement (except for any information provided to it by the Disclosing Party in contemplation of this Agreement), as demonstrated by Recipient's written records and documentation; (iii) is independently developed by or on behalf of Recipient without the use of or reference to any Confidential Information; or (iv) becomes available to Recipient or its Representatives on a nonconfidential basis from a third party (other than Disclosing Party or its Representatives) who Recipient does not know, after reasonable inquiry, to be bound by any confidentiality, fiduciary or other obligation to the Disclosing Party with respect to such information.

b. **"Representatives"** shall refer to all of each respective Party's partners, directors, managers, officers, employees, members, accountants, attorneys, independent contractors, temporary employees, agents or any other representatives or persons that may from time to time be employed, retained by, working for, or acting on behalf of, such Party.

2. **Confidentiality.** Except as otherwise provided herein, Recipient shall: (a) use any Confidential Information of the Disclosing Party only in connection with exploring the Opportunity and for any other express purpose for which such information may be disclosed pursuant to this Agreement and not for any competitive purpose or purpose detrimental to the Disclosing Party, including without limitation the development of similar or equivalent programs or concepts to CorrX or the Opportunity; (b) hold all Confidential Information of the Disclosing Party in confidence and not disclose Confidential Information to any other person; (c) use reasonable best efforts to protect the confidentiality of, and take all reasonable steps to prevent unauthorized disclosure or use of, Confidential Information of the Disclosing Party; and (d) advise the Disclosing Party immediately in writing in the event Recipient becomes aware of any unauthorized disclosure, misappropriation or misuse of Confidential Information of the Disclosing Party by any person, and provide reasonable assistance to the Disclosing Party in its efforts to prevent or halt any such disclosure, misappropriation or misuse or in any proceeding or lawsuit related thereto. Notwithstanding the foregoing, Confidential Information may be disclosed to the Recipient's Representatives who need to know such information for the purpose of evaluating or pursuing the Opportunity, provided that, prior to any such disclosure, any such Representatives are informed by Recipient of the confidential nature of such information and of the terms and provisions of this Agreement and agree with Recipient to be bound by the terms and provisions of this Agreement as if a party hereto. The Parties shall be responsible for any breach of this Agreement by such Party or any of its Representatives (including any Representative who may hereafter cease to be employed by, acting for, or otherwise associated with, the Parties). The Parties shall take all reasonably necessary measures to restrain any current or former Representatives to whom Confidential Information was disclosed from any unauthorized disclosure or use of such Confidential Information. If any legal action or applicable law, rule or regulation requires the Recipient to disclose any Confidential Information protected hereunder, the Recipient shall immediately notify the Disclosing Party prior to any such disclosure, and upon the Disclosing Party's request, the Recipient shall use commercially reasonable efforts to cooperate with Disclosing Party in contesting such disclosure or in obtaining a protective order or other remedy to maintain the confidentiality of the Confidential Information.

3. **Copies of Confidential Information.** Except as necessary to evaluate the Opportunity, no copies of any Confidential Information may be made or retained without the Disclosing Party's prior written consent. Any Confidential Information furnished to Recipient or any of its Representatives, as well as all copies, compilations, notes or memoranda prepared by Recipient relating to, containing or reflecting any Confidential Information, are and shall remain the property of the Disclosing Party and shall, upon Disclosing Party's request, be promptly returned to the Disclosing Party accompanied by all copies of such items. With Disclosing Party's prior written consent, any such Confidential Information held by Recipient in electronic format may be deleted or destroyed by Recipient and, in such case, Recipient shall certify in writing to the Disclosing Party of such deletion or destruction.

4. **Term.** This Agreement shall be effective in perpetuity from the date of this Agreement and until the (i) the Confidential Information becomes publicly available or (ii) the Disclosing Party elects to inform the

Initials _____
Mutual Confidentiality Agreement

Page 2 of 4

CONFIDENTIAL

Recipient, in writing, that such Confidential Information is no longer subject to the terms of this Agreement. The Parties agree that all confidentiality obligations and limited use restrictions hereunder shall survive the return and/or destruction of Confidential Information under Section 3 hereof or the expiration or termination of any business arrangement or relationship the Parties elect to have or terminate independent of this Agreement for the duration of the term set forth herein. Any cause of action or remedy of a Party arising from or accruing under this Agreement during the term set forth herein shall survive any termination of this Agreement.

5. **No Warranty.** The Parties hereby acknowledge that neither Party, nor any of their respective agents, representatives, affiliates or assigns, makes any representations or warranties whatsoever, either express or implied, concerning the accuracy, completeness or correctness of the Confidential Information disclosed hereunder, nor is any such representation or warranty implied.  Each Party expressly disclaims any and all liability that may be based on its Confidential Information, errors therein or omissions therefrom.  Subject to such limitations and restrictions as may be specified therein, only those representations and warranties that are made pursuant to a definitive, written agreement memorializing a transaction between the Parties relating to the Opportunity (when, as and if executed) will have any legal effect.  Each Party receives and utilizes Confidential Information of the other Party at its sole cost, risk and exposure. Recipient agrees that Disclosing Party shall not have any liability resulting from any use of or reliance upon the Confidential Information.  At all times hereunder, Disclosing Party shall retain ownership of all Confidential Information disclosed, and nothing contained herein shall be construed as granting or conferring any rights by license or otherwise in any Confidential Information.

6. **No Obligations.** Neither this Agreement, nor the disclosure of Confidential Information under this Agreement, nor the ongoing discussions and correspondence between the Parties or their respective Representatives, shall create any obligation of a Party to furnish information to the other Party or its affiliates or Representatives, or to enter into any binding commitment or Opportunity regarding the subject matter of the Confidential Information.  If in the future the Parties elect to enter into a binding commitment regarding the Opportunity or the subject matter of the Confidential Information, such Opportunity or commitment will be explicitly stated in a separate written agreement executed by both Parties, and the Parties hereby affirm that they do not intend their discussions, correspondence, and other activities to be construed as forming a contract, partnership or joint venture regarding the subject matter of the Confidential Information or any other maintenance program or other transaction between them without execution of such separate written agreement.

7. **Enforcement.** The Parties acknowledge and agree that a breach of this Agreement will cause the non-breaching Party irreparable injury and damage.  The Parties, therefore, expressly agree that the non-breaching Party shall be entitled to injunctive and other equitable relief to prevent a breach of this Agreement, or any part thereof by the other Party or its Representatives, without proof of actual damages or posting of bond or other security, in addition to any other remedy (monetary, equitable or otherwise) to which the non-breaching Party might be entitled.

8. **Governing Law and Time for Bringing Action**. This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Texas without regard to the principles of conflicts of law thereof.  The Parties expressly agree that the federal and state courts located in Harris County, Texas shall have subject matter jurisdiction to entertain any action brought to enforce this Agreement and, by execution hereof, the Parties voluntarily submit to personal jurisdiction of such courts. Any dispute arising under or by virtue of this Agreement or any difference of opinion between the parties hereto concerning their rights and obligations under this Agreement shall be finally resolved by arbitration. Prior to such arbitration, the Parties agree to select a mutually agreed upon mediator to resolve any differences of opinion. In the event that mediation is unsuccessful in resolving any differences in opinion, the parties agree to resolve their differences by Arbitration. Mediation shall be in accordance with applicable rules and regulations of arbitration of the United States Arbitration Board. The proceeding shall be held in the English language and the decision of the arbitration proceedings shall be final and binding on both parties. Each party shall bear its own expenses for legal counsel, expert witness and all related mediation and arbitration costs.

9. **Costs.** Recipient and Recipient's Representatives shall bear all costs of the evaluation of the Confidential Information provided by the Disclosing Party, including the fees and disbursements of counsel and advisors engaged by Recipient.

10. **Public Disclosures/Press Releases.** Neither Party shall issue any press release or disclosure to the general public that discussions or negotiations are taking place between the Parties concerning a potential or possible transaction relating to the Opportunity without the prior written consent of the other Party.

11. **Miscellaneous.** This Agreement represents the entire agreement between the Parties with respect to the subject matter herein, supersedes all prior written or oral agreements concerning the subject matter herein, and may be executed in one or more separate counterparts, all of which shall constitute one and the same Agreement.  The exchange of copies of this Agreement and of signature pages by facsimile transmission shall constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes. The failure of either Party to enforce or insist upon compliance with any of the terms or conditions of this Agreement, the waiver of any term or condition of this Agreement, or the granting of an extension of time for performance under this Agreement, shall not constitute the permanent waiver of any term or condition of this Agreement, and this Agreement and each of its provisions shall remain at all times in full force and effect. In the event that any provision or portion of this Agreement is determined to be invalid or unenforceable for any reason, in whole or in part, the remaining provisions of this Agreement shall be unaffected thereby and shall remain in full force and effect to the fullest extent permitted by law. Any amendment, modification and/or discharge of this Agreement shall only be valid or binding on the Parties if made in writing and signed on behalf of each of the Parties by their respective duly authorized officers or representatives.  The prevailing Party in any action to enforce this Agreement shall be entitled to all court costs and reasonable, out of pocket attorneys' fees. All notices hereunder shall be in writing and mailed, telefaxed or otherwise delivered to the address shown below, unless the Party to whom notice is to be given has provided a change of address to the other Party in writing (and then to such changed address), and shall be effective upon receipt or on the fifth (5th) business day after posting if by first class U.S. mail.  Confirmation of execution by electronic transmission of a facsimile signature shall be binding upon any Party so confirming.

IN WITNESS WHEREOF, the Parties have made and executed this Agreement effective as of the date and year first written above.

| CorrLine International, LLC | K A T E, Inc ("Company") |
|---|---|
| By: _Milton L. Sco__ | By: _Ian Mulvi__ |
| Name: _Milton L. Scott_ | Name: _Tim Mulville_ |
| Title: _CEO_ | Title: _CEO/President_ |
| Address: 8 Greenway Plaza, Suite 910.1 Houston, TX 77046 | Address: 3706 Border Court Missouri City, TX 77459-6653 |
| Date: _6/25/13_ | Date: _6-24-2013_ |

Initials _TM_    Page 4 of 4
Mutual Confidentiality Agreement            CONFIDENTIAL