# EXHIBIT C

# LAW OFFICES OF PETER JOHNSON

PETER JOHNSON
**BOARD CERTIFIED**
Texas Board of Legal Specialization
Business bankruptcy law
Consumer bankruptcy law

www.pjlaw.com

Eleven Greenway Plaza
Aim Investments Tower, Suite 2820
Houston, Texas 77046
713.961.1200

MAILING ADDRESS:
P.O. Box 980877
Houston, TX 77098-0877

Email: pjohnson@pjlaw.com

October 27, 2014
SENT BY CERTIFIED AND FIRST CLASS MAIL

Loren L. Hatle
21122 Grandin Wood Court
Humble, Texas 77338

RE: CorrLine International, LLC, Debtor
Bankruptcy Case No. 14-32740
United States Bankruptcy Court for the
Southern District Of Texas, Houston, Division

---

Dear Mr. Hatle:

As you are aware our firm represents The Tagos Group LLC (hereinafter "Tagos") in the above referenced bankruptcy proceeding and as a result of an auction conducted by the Chapter 7 bankruptcy Trustee, Tagos has acquired in its subsidiary, TGS Solutions, LLC (hereinafter "TGS"), certain assets from the CorrLine International, LLC bankruptcy estate (hereinafter "CorrLine"). For the purpose of this correspondence, I write to you in behalf of Tagos and TGS, the entity acquiring the assets of Corrline.

Included in the assets acquired by TGS from CorrLine pursuant to the Order of Honorable Jeff Bohm, United States Bankruptcy Judge dated October 14, 2014 (the "Sale Order"), were the following:

> (e) all Contracts of Seller used in the Business, including, but not limited to the Seller's rights under non-competition agreements with former officers, employees and their agents;

As you are aware, on July 30, 2013 you entered into a written contract with Corrline identified as "CONFIDENTIALITY AGREEMENT" in which you agreed to the following, among other covenants in such agreement:

essential to the performance of his or her duties as an Employee of the Company. In light of the competitive nature of the business and the unique nature of the CorrX materials in which the Company is engaged, Employee agrees that during the term of Employee's employment and thereafter, the Employee shall not (i) disclose any

IN ADDITION TO OTHER SERVICES WE OFFER, WE HELP PEOPLE FILE FOR BANKRUPTCY RELIEF UNDER THE BANKRUPTCY CODE. THEREFORE, THIS LAW FIRM IS ALSO A DEBT RELIEF AGENCY

EXHIBIT C

Confidential Information to any person or entity; (ii) use or exploit in any manner the Confidential Information for himself or any person, partnership, association, corporation or other entity other than the Company;(iii) remove any Confidential Information, or any reproduction thereof, from the possession or control of the Company or (iv) treat Confidential Information otherwise than in a confidential manner.

All Confidential Information developed, created or maintained by the Employee, alone or with others while employed by CorrLine International, and all Confidential Information maintained by the Employee thereafter, shall remain at all times the exclusive property of the Company. The Employee shall return to the Company all Confidential Information, including but not necessarily limited to: reports, manuals, correspondence, customer lists, computer programs, and all other materials and all copies thereof relating in any way to the Company's business, or in any way obtained by me during the course of employment that are in his possession immediately upon request and in any event upon the completion of his employment by the Company. I further agree that I shall not retain copies, notes or abstracts of the foregoing.

In the event Employee's employment with the Company terminates, whether voluntarily or involuntarily, employee agrees to neither directly nor indirectly solicit any of the Company's customers as of the date of the employee's termination, for a period of twelve months after such termination.

For a period of twelve months after Employee's employment terminates with the Company, whether voluntarily or involuntarily, Employee agrees to not directly or indirectly solicit any of the Company's employees to enter any relationship with a business that competes (or has similar products) with the Company or otherwise induce or attempt to induce such employees to terminate their relationships with the Company.

I have enclosed a copy of the "CONFIDENTIALITY AGREEMENT" for your review and reference of those items previously owned by Corrline that constitute confidential information.

As you may also be aware, TGS also acquired from CorrLine under Judge Bohm's Order, all Intellectual Property including, but not limited to the following:

"*Intellectual Property*" means any and all of the following in any jurisdiction: (a) trademarks and service marks, including trademarks filed by CorrLine for the following : "CorrLine", "CorrLine CorrX", "Making Corrosion History", "Corrosion is the Enemy, Not an Industry", and "Coating Edge Technology" and all filings, applications and registrations and the goodwill connected with the use of and symbolized by the foregoing; (b) copyrights, including all applications and registrations, and works of authorship, whether or not copyrightable; (c) trade secrets and confidential know-how; (d) patents and patent applications, including but not limited to CorrX coatings and procedures as well as the patents in all stages as listed in the following summary prepared by CorrLine counsel Buskop Law Firm, the current status of such patents are further described in Exhibit C attached hereto and incorporated herein by reference:

| File No. | Serial No. | Filing Date | Mark/Title | Application Type | Reg. No./Patent S/N | Reg. Date/Issue Date | Status |
|---|---|---|---|---|---|---|---|
| 2004.000 | | | CONSULTATION | GENERAL FILE | | | N/A |
| 2004.001 | 61/591,028 | January 26, 2012 | TREATMENT FOR PROVIDING IMPROVED ADHESION OF BARRIER COATINGS TO METALS | PROVISIONAL PATENT APPLICATION | | | Expired – See 2004.001A |
| 2004.001A | 13/750,445 | January 25, 2013 | TREATMENT KIT FOR CLEANING SUBSTRATE SURFACES FOR REMOVAL OF WATER AND NON-WATER SOLUBLE OXIDES AND IONIC COMPOUNDS "POWDER KIT" | UTILITY PATENT APPLICATION | | | Filed Response to 1st Non Final Office Action on February 18, 2014 |
| 2004.002 | 13/359,108 | January 26, 2012 | METHOD FOR PROVIDING IMPROVED ADHESION OF BARRIER COATINGS TO METALS | UTILITY PATENT APPLICATION | | | Application Abandoned – See 2004.003 |
| 2004.003 | 14/057,817 | October 18, 2013 | METHOD FOR PASSIVATING SUBSTRATE SURFACES | UTILITY PATENT APPLICATION (CONTINUATION IN PART OF 2004.002) | | | First Action Prediction: 26 Months |
| 2004.004 | N/A | N/A | POSSIBLE LITIGATION WITH CORRBAN TECHNOLOGIES INC. REGARDING CORRX PRODUCT | LITIGATION | | | N/A |
| 2005.005 | | | TREATMENT KIT FOR CLEANING SUBSTRATE SURFACES FOR REMOVAL OF WATER AND NON-WATER SOLUBLE OXIDES AND IONIC COMPOUNDS "LIQUID KIT" | UTILITY PATENT APPLICATION (DIVISIONAL APPLICATION OF 2004.001A) | | | Received Signed Retention Letter – Waiting on Signed Documents & Approval to File from Client |

email addresses, websites, URLS, and internet domain name registrations and access to CorrLine's website, Vimeo site, LinkedIn site, and any other websites representing CorrLine or sharing CorrLine content; (f) all intellectual property as defined in the Asset Contribution Agreement between TriGenex of Texas Inc and CorrLine International, LLC restated as all intellectual property rights, statutory or common Law, worldwide, including (a) trademarks, service marks, trade dress, slogans, logos and all goodwill associated therewith, and any applications or registrations for any of the foregoing; (b) copyrights and any applications or registrations for any of the foregoing; and (c) patents, all confidential know-how, trade secrets and similar proprietary rights in confidential inventions, discoveries, improvements, processes, techniques, devices, methods, patterns, formulae, specifications, and lists of suppliers, vendors, customers, and distributors; and (g) all marketing material including but not limited to letterhead, presentations, pamphlets, videos and displays related to the Business, CorrLine, or products and services of CorrLine; (h) all other intellectual property and intellectual property rights and assets, and all rights, interests and protections that are associated with, similar to, or required for the exercise of, any of the foregoing.

    You have previously been sent a copy of the Sale for your review and reference that contains the foregoing.

HATLE_0000504

      PLEASE TAKE NOTICE THAT TGS Solutions, LLC, the current owner of CorrLine's rights under the Sale Order, including the Intellectual Property and CONFIDENTIALITY AGREEMENT, intends to enforce the contractual duties and its rights to ownership and will hold you personally liable for any breach of the CONFIDENTIALITY AGREEMENT and any action that interferes with the property rights acquired by TGS under the sale transaction directed by the Sale Order. Any such interference or violation will be considered intentional and malicious, which may be enforceable by appropriate Court Order or sanction, available contractual remedies of TGS and render any damage claim against you or others that may assist you to be non-dischargeable in a personal bankruptcy proceeding.

      Thank you for your attention to this most important matter.

                                       Sincerely yours,

                                       *Peter Johnson*

                                       Peter Johnson

Enclosure



# CORRLINE INTERNATIONAL, LLC

# CONFIDENTIALITY AGREEMENT

FOR GOOD CONSIDERATION, and in consideration of being employed by CorrLine International LLC ("the Company"), the Employee has had and will have possession of or access to confidential information relating to the Company, including but not limited to the following:

1. All information, CorrX materials (and products related thereto), product information, specifications, manuals, methods, formulas, compositions, application process and procedures, technology, data (regardless of its form or embodiment, including all source code, object code and natural language code therefore), patents, copyrights, trademarks and other intellectual property, know-how, reports, analyses, compilations, records, notes, presentations, summaries, studies and other materials (in whatever form maintained), liabilities, properties, accounts, financial information, product margin information, operations, services, products, business plans or models or strategies, distribution systems, network or communication systems, software or customers, vendors and suppliers, that may be disclosed, provided or made available to Employee in any form or format (including orally, in writing or electronically) before, on or after the date of hire, or to which the Employee otherwise become aware or gain access or possession, (a) all data, reports, analysis, compilations, extracts, summaries, writings, studies, interpretations, forecasts, records or other materials (whether documentary, electronic or otherwise) prepared by or on behalf of Employee, that relate to or are based on or contain any of the information listed in (b) above or that reflect a summary or review or evaluation of any of the information listed in (c) above or the business, plans, operations, financials, data, documents or customers, (d) the existence of this Agreement and any discussions or negotiations between the Employee and CorrLine relating to CorrX or the Opportunity, and (e) any other information which could reasonably be viewed as confidential or is marked or expressly designated as "Confidential" by CorrLine, provided that the confidentiality obligations set forth in this Agreement shall not apply to any Confidential Information that: (i) is or becomes generally available to the public, other than as a result of a wrongful or unauthorized disclosure by Employee Recipient or its Representatives; (ii) was known by the Employee prior to the date of this Agreement, as demonstrated by Recipient's written records and documentation; or (iii) becomes available to Employee on a nonconfidential basis from a third party who Employee does not know, after reasonable inquiry, to be bound by any confidentiality, fiduciary or other obligation to the Disclosing Party with respect to such information.

2. The Confidential Information is a valuable, special and unique asset of CorrLine International and Employee's access to and knowledge of the Confidential Information is essential to the performance of his or her duties as an Employee of the Company. In light of the competitive nature of the business and the unique nature of the CorrX materials in which the Company is engaged, Employee agrees that during the term of Employee's employment and thereafter, the Employee shall not (i) disclose any

~ 1 ~

HATLE_0000506



Confidential Information to any person or entity; (ii) use or exploit in any manner the Confidential Information for himself or any person, partnership, association, corporation or other entity other than the Company;(iii) remove any Confidential Information, or any reproduction thereof, from the possession or control of the Company or (iv) treat Confidential Information otherwise than in a confidential manner.

3. All Confidential Information developed, created or maintained by the Employee, alone or with others while employed by CorrLine International, and all Confidential Information maintained by the Employee thereafter, shall remain at all times the exclusive property of the Company. The Employee shall return to the Company all Confidential Information, including but not necessarily limited to: reports, manuals, correspondence, customer lists, computer programs, and all other materials and all copies thereof relating in any way to the Company's business, or in any way obtained by me during the course of employment that are in his possession immediately upon request and in any event upon the completion of his employment by the Company. I further agree that I shall not retain copies, notes or abstracts of the foregoing.

4. Employee recognizes, agrees and represents that the Company would not permit Employee to access the Company's Confidential Information unless Employee agrees to the restrictions contained herein, and that the company is relying on the agreements of Employee contained in this Agreement in permitting Employee access to the Confidential Information.

5. Employee represents and warrants that no Information deemed confidential by any of Employee's previous employers shall be utilized or disclosed in any way whatsoever for any purpose related to the Company, or any of its affiliated companies' business.

6. In the event Employee's employment with the Company terminates, whether voluntarily or involuntarily, employee agrees to neither directly nor indirectly solicit any of the Company's customers as of the date of the employee's termination, for a period of twelve months after such termination.

7. For a period of twelve months after Employee's employment terminates with the Company, whether voluntarily or involuntarily, Employee agrees to not directly or indirectly solicit any of the Company's employees to enter any relationship with a business that competes (or has similar products) with the Company or otherwise induce or attempt to induce such employees to terminate their relationships with the Company.

8. The Company may notify any future or prospective employer representative or third party of the existence of this agreement, and shall be entitled to full unjuctive relief for any breach.

HATLE_0000507



Employee has read and considered the provisions of this Agreement and, having done so, agrees, states, and covenants that the scope of activities to be restrained, are reasonably required for the protection of goodwill and business interests of the Company. In the event a court of competent jurisdiction determines as a matter of law that any of the terms of Agreement are unreasonable or overbroad, the parties expressly allow such court to reform this Agreement to the extent necessary to make it reasonable as a matter of law and to enforce it as so reformed.

_____    _____
Employee Signature                                    Date July 29, 2013

LOREN L. HATLE
Employee Printed Name

HATLE_0000508