UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CORROSION PREVENTION TECHNOLOGIES LLC * Civil No. H-20-2201
*
* Houston, Texas
VERSUS * May 19, 2021
* 2:00 p.m.
HATLE, et al *

TELEPHONE CONFERENCE
BEFORE THE HONORABLE ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE

For the Plaintiffs:

Ms. Corinne S. Hockman
Mr. John R. Keville
Winston and Strawn LLP
800 Capitol Street
Suite 2400
Houston, Texas 77002

For the Defendants:

Mr. Robb David Edmonds
Mr. Michael Faries
Edmonds & Nolte, PC
2625 Bay Area Blvd.
Suite 530
Houston, Texas 77058

Court Reporter:

Fred Warner
Official Court Reporter
515 Rusk Ave.
Houston, Texas 77002

Proceedings recorded by mechanical stenography, produced by computer aided transcription.

THE COURT: This is Judge Hanen. We are on the record in 20-2201, Corrosion Prevention versus Hatle. I hope that's "Hatle."

Who do I have on for the plaintiffs?

MR. KEVILLE: Good afternoon, Your Honor. For the plaintiffs you have John Keville and Corinne Stone Hockman.

THE COURT: Okay. And for the defendants.

MR. EDMONDS: Good afternoon, Your Honor. For the defendants, that's Hatle.

THE COURT: Thank you.

MR. EDMONDS: My name is Robb Edmonds. And I have got a new lawyer with me, Michael Faries, F-a-r-i-e-s. And we're here on behalf of all five of the named defendants.

THE COURT: All right.

Mr. Keville, you kicked this thing off with your letter. Tell me about the discovery you need, and then I am going to let the defendants respond to it then before we will see what we can do to remedy everyone's problems. So why don't you start off.

MR. KEVILLE: Thank you, Your Honor. And if it's okay, under what is in your local rules about having young lawyers get the chance to argue motions, I would like to let Corey Stone Hockman address this if that's okay with the Court.

THE COURT: It's okay with me.

 MS. HOCKMAN: Good afternoon, Your Honor.

So I think actually some of the issues may be streamlined through the letters back and forth. We have struggled to get answers and document productions in this case; but based on some of the representations in defendants' letter to the Court, we now understand that they have made the representation that no additional documents exist.

Now, setting aside that, we find it very difficult to believe that companies who buy ingredients from vendors, make products with those ingredients and sell those products to customers and the fact that defendants have produced profits, 10 pages of profit and loss statements where we think that there has to be invoice and sales information data that underlie those numbers, setting all of that aside, we now think that we are in a position, based on the defendants' representation that no more documents exist, that we can take that representation and use it in depositions.

Now, if, of course, we need discovery in the course of those depositions, that there are actually documents that exist, we made need to revisit this issue; but at this point our main concern is we now understand for the first time in writing that no additional documents exist, so we now feel that we are in a position to move forward with depositions.

There is one side issue with one deposition, but we were not previously in that circumstance that we felt that we could move forward without the documents. We now are. But that now leaves us with the fact that the existing discovery deadlines and expert deadlines are not feasible for us to close discovery by the end of June and to have submitted an expert report by May 14th.

THE COURT: Okay.

Do Mr. Edmonds or Mr. Faries want to weigh in?

MR. EDMONDS: Yes, Your Honor. This is Robb Edmonds. I am actually going to turn this over to Michael Faries as well.

MR. FARIES: Thank you, Robb.

Your Honor, in response to these matters in the discovery that's been going on now since this was filed in June, we've indicated multiple times with these, especially some of these requests for corporate documents and invoices, that they haven't existed. Over the phone, through email we have communicated that multiple times these are not large companies, these are not multi-faceted companies with huge numbers of employees. These are individuals who are largely running this business on their own, and they don't record things, they don't keep a tremendous amount of records at all in the normal course of business. So to address some of the surprise is that these documents just don't exist, and that's

something we've made clear for a while.

From the defense perspective, though, we find the need to extend the discovery to be problematic, to say the least, because this back and forth has been going on since the new year. And two weeks before we hit a expert deadline for the plaintiffs, now we need to extend time; and no depositions have been noticed until last week, were the first ones. And we are under the impression that they have what they needed, they understood what they are going to get; and we were honestly waiting to see what the defense -- I'm sorry -- the plaintiffs were even going to do to further their case.

There is not much documents to give. We have given everything we have, and the information we have given has been relevant, and it, in terms of volume, has been tremendous.

In response, we have not gotten anywhere near to that from the plaintiffs. The first production we received from them was just the items of the original complaint. The second was a list of highly confidential reports that served up absolutely no purpose. And then we had one additional set of production received from them that only pertained, to the best of our understanding, to one of their seven counts. The rest of the production that we asked for from them for the other six counts, specifically the

trade secret matters, we have gotten nothing. And while the burden is on them to prove these matters, that just sort of leaves us wondering what's going on to now suddenly have to extend all of this out.

So from our perspective, depositions and everything else that they need could have been done months ago. The idea that they need a two-or-three-month extension for expert reports, asking only for two weeks prior to that to the deadlines seems a little off to us.

And at this point we are concerned heavily with the cost that this is incurring on our client just to keep the wheel spinning when we have no further discovery needs and the close of discovery is totally fine, we're about to move forward to get this done.

So from our perspective this is just extending and delaying the inevitable. There is not really many more documents to find at all, and we are just sort of waiting to finally get to the end of this.

THE COURT: All right. What I am hearing this from both sides is that both sides I think are now admitting or at least conceding, unless something different comes up in the depositions, that the defendants have complied with their discovery obligations.

Let me ask Mr. Faries, have you gotten everything you need?

MR. FARIES: Well, given the position that they are asserting obviously to trade secrets and confidential information, we have asked repeatedly for a list, enumerations, specificity, something to know what it is that the defendant supposedly stole, we don't have that.

But at the same time, we're the defense, non-moving party in this regard. So if they can't prove their burden of what a trade secret is, that sort of falls on them. But if it suddenly comes out at the last moment that they have a laundry list of trade secrets that supposedly have been taken or some aspect of the confidentiality agreement, then, especially at this 11th hour of the discovery matter, it's almost trial by ambush.

So, one the hand, we have what we need to defend against this lawsuit as it stands; but at the same time we have not received any of that information that we have asked for. So it sort of puts us in a situation that there's a possibility that a rabbit comes out of a hat, but we are not sure what it could be or what they could look like and we don't really know what that's going to prove.

So right now our position is that we are ready to go forward with what we have and we are confident what we can go forward with, but we haven't been really helped out in that regard. So we're fine if it closes out because it honestly helps us.

THE COURT: Ms. Hockman, what about their claim -- and, of course, I may be paraphrasing Mr. Faries badly -- but their claim that they, you know, where they're being sued for a trade secret, for theft of a trade secret or misuse of a trade secret, but they don't know which trade secret you are claiming they took.

MS. HOCKMAN: Yes, Your Honor. We served discovery responses, in particular responses to interrogatories that detail the bases for our claim, so they should have that information.

THE COURT: And so whatever you're claiming they took are in those answers?

MS. HOCKMAN: Yes. I mean, for the most part I think we would like to explore more; and we have been constrained in the fact that we don't have adequate documents from them and we have been unable to fully investigate and complete our investigation through depositions, and so there may be supplementation that needs to take place. But at this stage we have provided that information.

THE COURT: Okay.

All right. It sounds like we are getting things resolved, and I don't know that there is any order that I can enter, but let me talk to both sides now.

We entered, we, the Court, entered the scheduling order in November. And in November we were

assuming we were going to start jury trials in January. Obviously it's May, and we just started last week.

So I guess what I am telling you is, I don't know how firm your trial setting in January of '21 is. I would like to think it's still going to be firm that we'll have things ironed out over the summer and be able to slot you in. I am warning both sides there is an outside chance I may have to push it.

Regardless, if you guys can agree, if deadlines need to be changed, I mean, we are still under certain code restrictions and people don't like to travel, or at least some people don't; and I don't know how much of that applies in this case. You guys can agree, by agreement can change any of these other deadlines, and I'll be fine with that as long as you send me a letter that's signed by both sides. So if you need to bump the expert deadline and you want to move it back a month for the plaintiffs and a month for the defendants, just send me a letter to that effect that both sides have signed that says, Judge, here's what we did. And I am doing that just so I have proof of what's what. But I did want to give you a heads up there is an outside chance that it's going to be, that the trial setting in January may be tough.

Now, I am finding, to give you some sliver of hope or faith, that as I'm putting cases to trial they're

miraculously settling.

MR. EDMONDS: Yeah. That happens.

THE COURT: So if they continue to do that at the current rate, that January trial setting may be good; and it may be something that along about November, before your pretrial order is due, both sides again may want to write me a letter together and say, hey, Judge, we are getting ready -- and I have been where you guys are. Putting together a pretrial order is not only an arduous task sometimes, it's expensive.

And you may want to write me and say, how does January look? And I'll be glad to analyze that for you and give you my best guess. But you will not offend me by doing that, because, believe me, I know what it takes and I know these attorney's fees can rack up. And getting ready, the expense of getting ready for trial and then not going and then having to do three months later getting ready again, I mean, I have had those conversations. They're not easy to have with your client. You mean, I am paying you twice to get ready? And it's hard to explain that in that intervening three months you've handled 50 other cases.

All right. I think it looks like we're on track.

Mr. Faries, Ms. Hockman, either of y'all, is there something we can do today to make it go smoother?

MR. KEVILLE: Your Honor, John Keville for the plaintiff, if I may, just to add one point. We have had several conferences before writing this letter trying to get the extension of the dates, and the defendants were not agreeable. That's ultimately why we wrote the letter. We were hopeful that we could work out the additional discovery issues with the extra time.

And then now hearing in this letter that there are no documents, which I will say is astounding to me because I don't know how they buy chemicals and market those products to others without any paper records whatsoever. But I take their representation at their word.

I will say, we attached one of their marketing documents that was part of our complaint as an exhibit to our complaint in this case; and they have not only not produced that, but they have not produced any other marketing documents, and they represent they don't have any. So we will have to explore that in the deposition.

But the bottom line is, we've tried to get an agreement to extend the dates, and they don't have have it. And so, I think, unless I hear from defendants something otherwise that now after this call they're willing to agree, I think we are still in the same position.

THE COURT: All right. Mr. Edmonds.

MR. EDMONDS: Yes, Your Honor. This is Robb

Edmonds. I think we're more amenable to letting deadlines slide now knowing that we don't have to prepare for a trial date in January.

But I do want to hand the mic over to Mr. Faries again because I think there needs to be conversation of the parties' discovery plan that we have put together and how we bifurcated the electronic discovery and specifically bifurcated emails from all electronic discovery has a separate plan, has a separate protocol. And only yesterday did we get anything remotely related to email requests from the plaintiff. And maybe some of the responses via email may cure their surprise, and we have very little documentation. But again, that was served yesterday except for the email discovery plan was signed off by the Court back in I believe February.

THE COURT: All right. Let me do this. I am going to extend the -- let me back up then before I do anything.

Mr. Keville, did you produce expert reports what, two days ago, three days ago?

MR. KEVILLE: No, we did not, Your Honor. That's really what triggered this letter is we had gotten no documents, so we had kind of not been able to schedule the depositions and we weren't able to put the expert reports together. So that really is what was triggering this.

THE COURT: Here is what I am going to do. I am

going to just arbitrarily give a month extension on everything. So expert reports by the plaintiff due 5-14, now due 6-14. Defense experts set 6-18, 7-18. Discovery which was 6-23, 7-23. I think that's what the defendants thought it was anyway.

MR. EDMONDS: Yes, Your Honor. This is --

THE COURT: Hold on.

And then I would keep all the other deadlines as they are. And then if some other party, one of the two parties needs some relief and you can't agree on it, then you'd come back to me.

Go ahead, Mr. Edmonds.

MR. EDMONDS: Yes, Your Honor. Robb Edmonds here.

Yes. And I want to apologize to the plaintiffs and the defendants, or sorry, the Court for missing that discovery deadline because all the other dates on this electronic notification were the same dates that were agreed by the parties in the joint case management plan; and I didn't even notice, instead of July, this one date said June. And I didn't know if maybe that was a typo or if that was intentional, but that was the only date that wasn't agreed to by the parties, and I didn't bother to even notice that. And it's clear as day it was June, and I had in my mind it was July like we had all agreed. But anyway --

THE COURT: At this stage there's no harm, no foul.

MR. EDMONDS: Very good.

THE COURT: Let's go forward using those deadlines, let's get the discovery done. If there is a problem, try to work it out between yourselves. If not, come back to me.

MR. KEVILLE: Your Honor, once again, John Keville. Just one point I had raised on this, and hopefully this can be worked out between the parties. I will try my hardest.

But the first depo that we noticed was of their COO, who the three pages of financials that they produced came from him; and they have said he is not available until July. So, it may cause that to slip more. I am just putting that out there so we're aware. And we will try and work -- I will certainly try very hard to work through it with the other side.

THE COURT: Where is he?

MR. EDMONDS: Yes, Your Honor. This is Robb Edmonds again. So, Chuck, Christopher Kent Knowles is who they're referring to. He spends his summers in upstate Wisconsin. He just left on May 11th. And we were just sent the subpoena on Friday, last Friday for him for 11 days from the date of the subpoena.

So the subpoena was May 13th. He left two days prior to that. There was no conversation. I had no notice that that is who they are going to depose first, and that was completely out of the blue.

He is the caretaker for his 90-year-old father. They both go up to their cabin in upstate Wisconsin. Minneapolis is the closest airport to where they are. He is there until the end of July, and he will be back in Houston, actually I think it's the third week of July.

Now, there is a possibility we can work something out, do something virtually, something along those lines; but the plaintiffs have noticed him to be at their office in Houston in 11 days. And I notified them that that's unreasonable and was not enough time at all to pull that off.

THE COURT: Well, Mr. Edmonds, let me interrupt. Let me put the burden on you, and let's figure out a way to do this virtually.

MR. EDMONDS: I agree, Your Honor.

THE COURT: And obviously if there is a subpoena duces tecum with it, you are going to have to send the documents over to the plaintiffs literally because obviously they're going to want to look at the documents, and you may have to Fed-Ex them a copy of whatever you produce up to your client. Let's see if we can get this done virtually. You know, he and his 90-year-old dad don't need to be doing extra traveling during Covid season.

MR. EDMONDS: Exactly, Your Honor. And if he leaves him, he has to put him in some kind of senior living care

while he's gone. So that seems to be -- hopefully we won't have to go through all that.

THE COURT: Well, Mr. Keville, if that turns out to be inadequate for some reason, again, you can come back to me. This is one of the reasons I don't delegate my discovery matters to the magistrates because I want to handle it because I know at the end of the day I am going to have to -- if it's done wrong, it's my mistake, not hers.

But I would assume one of your first questions is, is this all the documents you have?

MR. KEVILLE: That is definitely going to be one of our first questions, Your Honor. And we did send them an email when they said he wasn't available that either we could do it virtually or we could send someone up to Wisconsin, whichever they preferred, so we are fine either way.

THE COURT: All right. And either way is fine with me. But I am sure that's a question he can answer virtually about the documents because he ought to know who is keeping those documents and where they are.

MR. KEVILLE: Absolutely.

THE COURT: All right. Counsel, work this out. It sounds like you are on the right path. And if you need more time or there is another problem, as I said, just write another letter.

MR. KEVILLE: We appreciate it. Thank you very much

Your Honor.

MS. HOCKMAN: Thank you, Your Honor

MR. EDMONDS: Thank you, Your Honor.

THE COURT: Thank you, counsel.

(Conclusion of proceedings)

CERTIFICATION

I, Fred Warner, Official Court Reporter for the United States District Court for the Southern District of Texas, Houston Division, do hereby certify that the foregoing pages 1 through 17 are a true and correct transcript of the proceedings had in the above-styled and numbered cause before the Honorable ANDREW S. HANEN, United States District Judge, on the 19th day of May, 2021.

WITNESS MY OFFICIAL HAND at my office in Houston, Harris County, Texas on this the 26th day of May, A.D., 2021.

/s/ Fred Warner
Fred Warner, CSR
Official Court Reporter