**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CORROSION PREVENTION | ) | |
| TECHNOLOGIES LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-02201 |
| | ) | |
| LOREN L. HATLE, SANTIAGO | ) | **JURY TRIAL DEMANDED** |
| HERNANDEZ, TIMOTHY MULVILLE, | ) | |
| BEAR METAL TECHNOLOGIES, LLC, and | ) | |
| CORROSION EXCHANGE, LLC, | ) | |
| | ) | |
| *Defendants.* | ) | |

**CORROSION PREVENTION TECHNOLOGIES LLC'S OPPOSITION TO
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
ON COUNTS I, II, III, IV, V, AND VII**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................... 1

II.    NATURE AND STAGE OF PROCEEDINGS .................................................. 1

III.   STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ............... 2

IV.   FACTUAL BACKGROUND .............................................................................. 2

V.    SUMMARY OF THE ARGUMENT ................................................................. 4

VI.   ARGUMENT ......................................................................................................... 5

    A.   The Summary Judgment Standard .................................................... 5

    B.   Defendants Should Not Get Judgment on CPT's Lanham Act False
        Advertising Claims ................................................................................ 6

        1.   CPT has standing because it is a direct competitor of Defendants
           and has suffered injury as a result of their false advertising. .................... 6

        2.   CPT's false advertising claim is not time-barred. ..................................... 9

    C.   CPT's Trade Secret Claims Are Not Barred ................................. 10

        1.   Each Defendant must be addressed individually. .................................... 12

           a.   Hatle ................................................................................................. 12

           b.   Corrosion Exchange ....................................................................... 15

           c.   Bear Metal Technologies ............................................................... 16

           d.   Hernandez ....................................................................................... 18

           e.   Mulville ........................................................................................... 18

    D.   CPT's Breach of Contract Claims Against the Individual Defendants Are
        Not Barred ............................................................................................ 19

    E.   CPT's Conversion Claims Against the Individual Defendants Are Not
        Barred .................................................................................................... 19

VII.  CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*,
998 F.3d 190 (5th Cir. 2021) .................................................14

*Alfa Laval Inc. v. Flowtrend, Inc.*,
2016 WL 2625068, at *6 (S.D. Tex. May 9, 2016) ........................9, 10

*Armco, Inc. v. Armco Burglar Alarm Co., Inc.*,
693 F.2d 1155 (5th Cir. 1982) ..............................................9

*Aspen Tech., Inc. v. M3 Tech., Inc.*,
569 F. App'x 259 (5th Cir. 2014) .......................................11, 17

*In re Bass*,
113 S.W.3d 735 (Tex. 2003)..............................................13

*Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*,
2019 WL 2723253 (S.D. Tex. June 28, 2019) ...........................6, 8

*Chaplin v. NationsCredit Corp.*,
307 F.3d 368 (5th Cir. 2002) .............................................10

*In re CorrLine Int'l., LLC*,
516 B.R. 106 (Bankr. S.D.T.X. 2014) ................................3, 7, 13

*In re CorrLine Int'l, LLC*,
No. 14-32740, Doc. No. 99 (Bankr. S.D.T.X. Oct. 14, 2014) ...............4

*Cypress Semiconductor Corp. v. Superior Court*,
163 Cal. App. 4th 575 (2008) .........................................12, 13

*Elvis Presley Enterprises, Inc. v. Capece*,
141 F.3d 188 (5th Cir. 1998) .............................................9

*Garner Envtl. Services, Inc. v. First In Rescue, Safety & Training, LLC*,
2016 WL 7671377 (Tex. App.—Houston [1st Dist.] Dec. 22, 2016, no pet.)........................13

*GE Betz, Inc. v. Moffitt-Johnston*,
885 F.3d 318 (5th Cir. 2018) .............................................16

*Gimme The Best, L.L.C. v. Sungard Vericenter, Inc.*,
2010 WL 1388993 (S.D. Tex. Apr. 1, 2010) ...............................19

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
    634 F.3d 787 (5th Cir. 2011) ....................................................................6

*HiRel Connectors, Inc. v. United States*,
    465 F. Supp. 2d 984 (C.D. Cal. 2005) ..................................12, 16, 18

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
    174 F.3d 411 (4th Cir. 1999) ...........................................................12, 16

*Jacked Up, L.L.C. v. Sara Lee Corp.*,
    854 F.3d 797 (5th Cir. 2017) ..............................................................5, 6

*Jaso v. The Coca Cola Co.*,
    435 F. App'x 346 (5th Cir. 2011) ...........................................................9

*Johnson v. Crown Enterprises, Inc.*,
    398 F.3d 339 (5th Cir. 2005) .................................................................10

*Kendall Holdings, Ltd. v. Eden Cryogenics*,
    LLC, 521 F. App'x 453 (6th Cir. 2013)..........................................14, 15

*KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*,
    988 S.W.2d 746 (Tex. 1999)..................................................................10

*Lexmark Int'l., Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014).............................................................................6, 8

*Logan v. Burgers Ozark Country Cured Hams Inc.*,
    263 F.3d 447 (5th Cir. 2001) ...............................................................6, 9

*M-I L.L.C. v. Q'Max Sols., Inc.*,
    2019 WL 3565104 (S.D. Tex. Aug. 6, 2019) ......................................16

*Mendes v. Toyota Motor Sales, U.S.A., Inc.*,
    2016 WL 1222153 (S.D. Tex. Mar. 29, 2016)......................................10

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*,
    69 F. Supp. 3d 175 (D.D.C. 2014) ........................................................7

*Pemex Exploracion y Produccion v. BASF Corp.*,
    CIV.A. H-10-1997, 2013 WL 5514944 (S.D. Tex. Oct. 1, 2013) .........20

*Pressure Sys. Int'l., Inc. v. Sw. Research Inst.*,
    350 S.W.3d 212 (Tex. App.—San Antonio 2011, pet. denied) ........11, 13

*Raytheon Co. v. Indigo Sys. Corp.*,
    688 F.3d 1311 (Fed. Cir. 2012).....................................................11, 14, 15

*Reeves v. Sanderson Plumbing Prod., Inc.*,
530 U.S. 133 (2000)..................................................................................7

*Retractable Techs., Inc. v. Occupational & Med. Innovations, LTD.*,
2010 WL 3199624 (E.D. Tex. Aug. 11, 2010) ......................................14

*Seatrax, Inc. v. Sonbeck Int'l., Inc.*,
200 F.3d 358 (5th Cir. 2000) ................................................................11

*Springboards to Educ., Inc. v. Kipp Found.*,
325 F. Supp. 3d 704 (N.D. Tex. 2018) ...................................................8

*Stine v. Stewart*,
80 S.W.3d 586 (Tex. 2002).....................................................................19

*Stolle Mach. Co., LLC v. RAM Precision Indus.*,
605 F. App'x 473 (6th Cir. 2015) ....................................................12, 16

*Sw. Energy Prod. Co. v. Berry-Helfand*,
491 S.W.3d 699 (Tex. 2016)........................................................ *passim*

*United States v. Lawrence*,
276 F.3d 193 (5th Cir. 2001) ..................................................................2

*Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*,
360 S.W.3d 691 (Tex. App.—Dallas 2012, no pet.)...........................20

*WesternGeco v. Ion Geophysical Corp.*,
2009 WL 3497123 (S.D. Tex. Oct. 28, 2009)......................................19

**Statutes**

18 U.S.C. § 1836(d) ......................................................................................11

Defend Trade Secrets Act .........................................................1, 2, 11, 15

Lanham Act........................................................................................ *passim*

Tex. Civ. Prac. & Rem. Code Ann. § 16.003 ............................................19

Tex. Civ. Prac. & Rem. Code Ann. § 16.010 ............................................11

Tex. Civ. Prac. & Rem. Code § 16.051 .....................................................19

Texas Uniform Trade Secrets Act.............................................1, 2, 11, 15

**Other Authorities**

Bankruptcy Rule 2004 ..............................................................................3, 13

Fed. R. Civ. P. 56(a) ....................................................................................................................5

## I.     INTRODUCTION

Plaintiff Corrosion Prevention Technologies LLC ("CPT") files this Opposition to Defendants Loren L. Hatle's ("Hatle"), Santiago Hernandez's ("Hernandez"), Timothy Mulville's ("Mulville"), Bear Metal Technologies, LLC's ("Bear Metal"), and Corrosion Exchange, LLC's ("CE") (collectively "Defendants") Motions for Summary Judgment on Counts I (Lanham Act), II (DTSA), III (TUTSA), IV (misappropriation), V (breach of contract), and VII (conversion) (their "Motions").[1] As the following arguments and authorities demonstrate, Defendants have not met their burden of establishing that they are entitled to summary judgment on these claims.

## II.     NATURE AND STAGE OF PROCEEDINGS

This case is about Defendants' theft and misappropriation of CPT's revolutionary corrosion prevention technology. On June 23, 2020, CPT filed its Complaint in this Court for Defendants' violations of the DTSA, the TUTSA, and the Lanham Act, and for breaches of contract, misappropriation, and conversion. Doc. No. 1 ¶¶ 44–103. Defendants answered on July 31, 2020. Doc. No. 16. Discovery has been underway since November 2020, and Plaintiff deposed defendants Hernandez, Mulville, and Hatle and were scheduled to depose CE's second corporate representative, Kip Knowles. Defendants first represented to the Court they had no additional relevant documents (Defs.' May 7, 2021 Ltr. to Court ¶ 4); but Hatle testified Kip Knowles (Defendant CE's Chief Operations Officer) had many documents (*e.g.*, Ex. 1, Hatle Dep. Tr. at 279:22–280:4, 154:9–20, 174:10–18, 245:21–246:25).[2] Then Defendants cancelled Knowles' deposition. Defs.' June 8, 2021 Ltr. to Court at 1. Shortly thereafter, Defendants filed these motions. On July 6, 2021, the Court stayed all deadlines pending the resolution of these motions.

---

[1] CPT files this Response to Docket Entries 35, 36, and 38–40. CPT will separately file its Response to the Motion for Summary Judgment on Count VI (Doc. No. 43) for Hatle's breach of contract as to his assignment agreement on or before the response date of July 13, 2021.

[2] All exhibits are to the Declaration of Corinne S. Hockman filed concurrently herewith.

# III. STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

(1) Defendants' Motion on Count I fails to establish that CPT is outside of the zone of interest or that that it did not suffer a direct injury. Moreover, Defendants also fail to demonstrate why they have suffered the undue prejudice required for a laches defense. Accordingly, the Court should deny Defendants' Motion on Count I.

(2) Defendants' Motions on Counts I–V and VII are all premised on their affirmative defense of statute of limitations. The defense is based on three letters from October 2014 to October 2015 cautioning Hatle to abide by his confidentiality agreement. These letters, which address suspicions about Hatle's conduct marketing a new product from late 2014 to 2015, do not bar CPT's claims against CE, Bear Metal, Hernandez, or Mulville, nor claims against any Defendant for anything other than breach of Hatle's agreement. Accordingly, Defendants' Motions on Counts I–VI should be denied as to all Defendants except Hatle on this basis alone.

(3) The discovery rule applies to DTSA, TUTSA, breach of contract, and conversion claims, and Defendants have not and cannot establish that CPT knew or should have known of the facts giving rise to its claims, including actual injury, before the limitations period. Accordingly, the Court should deny Defendants' Motions on Counts II–V and VII on this independent basis.

The Fifth Circuit reviews the grant or denial of summary judgment *de novo*. *United States v. Lawrence*, 276 F.3d 193, 195 (5th Cir. 2001).

# IV. FACTUAL BACKGROUND

CPT is a corrosion prevention company whose technology was started and developed by its predecessors Trigenix and CorrLine International, LLC after years of investment, research, and development. CPT's products include its suite of CorrX™ products, including CorrX™ PREP and CorrX™ WASH, which remove contaminants that induce corrosion.

Defendants Hatle, Hernandez, and Mulville are all former employees/contractors of CorrLine. Ex. 1 at 78:10–12; Ex. 2, Hernandez Dep. Tr. at 11:3–4; Ex. 3, Mulville Dep. Tr. at 18:17–20. While at CorrLine, each signed confidentiality agreements, acknowledging that through the course of their employment with CorrLine, they had access to CorrLine's confidential information and agreeing not to use, disclose, or remove this information. Doc. No. 1-1, 1-2, 1-3. Despite this, each took CorrLine information, including confidential and trade secret information, in violation of their agreements. *E.g.*, Ex. 1 at 142:12–22; Ex. 2 at 64:7–65:3; Ex. 3. at 23:10–24:6.

On October 14, 2014, the Tagos Group, LLC and TGS Solutions ("Tagos") acquired certain assets of Corrline from bankruptcy, including the Confidentiality Agreements signed by Hatle, Hernandez, and Mulville. *See e.g.*, Doc. No. 36-1. Tagos was aware that Southern District Bankruptcy Judge Jeff Bohm stated "[t]he Court finds that Hatle's testimony is inaccurate" and "this Court has found reason to doubt the credibility of Hatle's testimony," concluding that:

> Hatle is not a credible witness. He frequently responded to clear questions by giving nonresponsive answers that attempted to cast aspersions on Scott's honesty and implored how honest he (Hatle) is. Even more compelling, counsel for Tagos managed to adduce testimony revealing Hatle's willingness to make false statements under oath … the Court finds that Hatle fully understood the question when it was posed to him at the 2014 examination, but chose to answer inaccurately. … The Court finds Hatle's testimony to be disingenuous at best and outright perjurous at worst. … In sum, the Court finds Hatle to be an extremely unjustifiably indignant individual who has difficulty telling the truth. The Court gives very little weight to his testimony.

*In re CorrLine Int'l., LLC*, 516 B.R. 106, 132–33 (Bankr. S.D.T.X. 2014). Accordingly, it is no surprise that Tagos wrote to Hatle only on October 27, 2014, putting him on notice that Tagos owned and would enforce the confidentiality agreement if it was breached. *Id.* In August 2015, Tagos stated further concern and asked for a Bankruptcy Rule 2004 examination of Hatle as well as documents in his possession. *See e.g.*, Doc. No. 36-2. Hatle refused. Ex. 4, HATLE0003515. Finally, on October 12, 2015, Tagos' counsel wrote to the attorney for Clean Metal Technologies ("Clean Metal"), a company owned by Randy LeBoeuf again stating intent to enforce the Confidentiality Agreement if there was any breach. *See e.g.*, Doc. No. 36-3.

Shortly thereafter, Hatle and Mr. LeBoeuf split, and Hatle formed MicroClean Metals. Ex. 1 at 132:3–133:17. Hatle never sold or advertised product at Clean Metal at least in part because of these letters. *Id.* at 299:3–23. In fact, Hatle never sold product until 2019. *Id*. at 173:3–174:3. Tagos never had any communication with Hernandez, Mulville, or Bear Metals.

Through the bankruptcy, Tagos purchased all of CorrLine's assets, including but not

limited to its intellectual property in the form of patents, patent applications, trademarks over CorrLine and CorrX, and trade secrets, among others; all contracts, including confidentiality and non-competition agreements with employees and former employees; customer lists; and legal rights. *In re CorrLine Int'l, LLC*, No. 14-32740, Doc. No. 99 (Bankr. S.D.T.X. Oct. 14, 2014). Tagos then sold these interests to TGS Solutions, LLC, which, in turn, became CPT.

Defendant Corrosion Exchange was incorporated by Hatle and Knowles in December 2017 to compete in the corrosion mitigation market. Ex. 5, Hatle Dep. Ex. 11.[3] Defendant Bear Metal was incorporated by Hernandez in late 2014, which at least until recently, competed in the field of corrosion prevention. Ex. 2 at 55:4–5. Through these businesses, Defendants flagrantly appropriated CPT's images, marketing materials, promotional videos, letters of recommendation, environmental studies and more, falsely claiming them as their own. *See infra* at 7–8. Defendants' unlawful behavior did not become known and cognizable to CPT (and could not have) until at least 2019 when Defendants began to sell products in the case of Hatle and CE (Ex. 1 at 173:3–174:3) and until 2020, when their promotional video was published publicly in the case of Hernandez, Mulville, and Bear Metal (Ex. 6, Bear Metal Video). Consequently, CPT was forced to file this action, seeking compensation and relief for Defendants' illegal actions.

## V.   SUMMARY OF THE ARGUMENT

**Count I:** Defendants' Motion on Count I fails to recognize CPT's cognizable claim of false advertising under the Lanham Act. Instead, apparently misunderstanding CPT's claim and accusing CPT of an "improper attempt to shoehorn … a copyright claim into a Lanham Act claim," Defendants argue CPT lacks standing. Doc. No. 35 at 5. But false advertising of the nature Defendants committed here is a proper claim under the Lanham Act for which CPT has standing

---

[3] Despite this documentation, Mr. Hatle testified he started at CE in 2019, and that Kip Knowles may have set up the company the year before but due to a "clerical" issue, moved the formation to the next year. Ex. 1 at 151:20–152:1.

because it is a direct competitor of Defendants—and therefore is within the zone of interest—and has suffered direct injury because of Defendants' conduct.

Moreover, CPT's Lanham Act claim is not time-barred or subject to laches because the letters upon which Defendants rely apply only to Hatle (not the other Defendants) and do not and could not concern false advertising that occurred years later at a company that did not exist at the time of the 2014/2015 letters. Defendants cannot claim CPT had knowledge by 2015 of false advertising that had not yet occurred for a company that did not yet exist. Defendants have also not shown the undue prejudice required for their laches defense.

**Counts II–V and VII**: Defendants' Motions on Counts II–V and VII are similarly defective. Each suggests CPT's claims are barred under applicable statutes of limitations based on the same three letters. Not so. At the outset, Defendants have not met their burden to prove they are entitled to judgment as to each Defendant; instead, they lump all five Defendants together, relying on letters sent only to Hatle regarding his conduct and not mentioning the conduct of the other Defendants. Moreover, Defendant CE was not formed until December 27, 2017—putting any action it took squarely within the statute of limitations, the shortest of which is three years.

Finally, as to all Defendants including Hatle, each of counts II–V and VII is subject to the discovery rule. Defendants have failed to establish that no genuine issue of material fact exists regarding when CPT suffered injuries such that it knew or should have known it had ripe claims.

## VI.    ARGUMENT

### A.    The Summary Judgment Standard

Summary judgment is appropriate only where "the movant shows that there is no genuine dispute as to any material fact" and it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d

797, 804 (5th Cir. 2017) (citation omitted). As the nonmoving party, the Court must view the facts and inferences in the light most favorable to CPT. *Id.*

**B.     Defendants Should Not Get Judgment on CPT's Lanham Act False Advertising Claims**

      **1.     CPT has standing because it is a direct competitor of Defendants and has suffered injury as a result of their false advertising.**

A plaintiff may bring a cause of action for false advertising under the Lanham Act when the injury falls within the zone of interest and the defendant proximately caused the alleged injury. *Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014).

To come within the zone of interest for false advertising, "a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131. "Deterioration of competitive position is precisely the kind of injury the Lanham Act was intended to redress." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 798 (5th Cir. 2011). When the parties are direct competitors, the plaintiff "fall[s] squarely withing the zone-of-interest described by the Court in *Lexmark*." *Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*, 2019 WL 2723253, at *5 (S.D. Tex. June 28, 2019).

The proximate cause inquiry asks "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Lexmark*, 572 U.S. at 133. "Diversion of sales to a direct competitor" is the "paradigmatic direct injury from false advertising." *Id.* at 138. "[P]otential difficulty in ascertaining and apportioning damages is not … an independent basis for denying standing where it is adequately alleged that a defendant's conduct has proximately injured an interest of the plaintiff's that the statute protects." *Id.* at 135. This is because a plaintiff "may still be entitled to injunctive relief under § 1116(a) (assuming it can prove a likelihood of future injury) or disgorgement of the defendant's ill-gotten profits under § 1117(a)" even if it is unable to "quantify its losses with sufficient certainty to recover damages." *Id*. at 135–36. Thus, a plaintiff does not have to prove actual damages to establish standing. *Logan v. Burgers Ozark Country*

*Cured Hams Inc.*, 263 F.3d 447, 461 (5th Cir. 2001). To survive summary judgement, a plaintiff must only provide sufficient evidence from which a reasonable juror could conclude its injuries were proximately caused by defendant's false statements. *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 69 F. Supp. 3d 175, 216 (D.D.C. 2014).

Here, Defendants are in direct competition with CPT in the sale of corrosion prevention products. Ex. 1 at 257:4–14, 294:23–295:4; Ex. 2 at 54:17–25; Ex. 7, Defs.' Response to Plaintiff's Request for Admission 41 (admitting that Defendants sell corrosion prevention products). Defendants have made false and misleading statements that have diverted sales away from CPT to Defendants. For example, Hatle created a document to market a product called OxNot/OxNot 207 and falsely claimed that "***OXNOT GEL & OXNOT 207 have been renamed from CorrX PREP & CorrX WASH***." Ex. 8, Hatle Dep. Ex. 21; Ex. 1 at 207:3–208:5. Although Hatle denies creating this document, the metadata shows otherwise. *See* Ex. 9, Film Former Metadata. Accordingly, there is a genuine issue of fact as to whether Hatle is the creator of this document, thus running afoul of the Lanham Act. CPT intends to put on evidence at trial that he is.

Moreover, credibility determinations like these preclude summary judgment, particularly where a court in this district found Hatle uncredible and has difficulty telling the truth. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000). Judge Bohm also found that Hatle "intentionally manipulated invoice information" and "[s]tated differently, Hatle manufactured this evidence in an effort to reduce the risk." *CorrLine*, 516 B.R. at 161. In view of Hatle's history of misrepresentation and manipulation of evidence, this issue is unripe for summary judgment.

Hatle also edited a test report performed on CorrX™ in 2010, replacing references to CorrX™ with CleanWirx to falsely attribute the results. Ex. 1 at 188:15–190:15, 192:19–194:8; *compare* Ex. 10, Hatle Dep. Ex. 14 *with* Ex. 11, Hatle Dep. Ex. 15. But this is not the only time

Hatle has taken a CorrX™ document and attempted to palm it off as a CleanWirx one. In a published paper, Hatle similarly claimed his "new technology [Cleanwirx] advances highly effective corrosion control," using a picture of steel actually treated with CorrX™, not Cleanwirx, to show his purported results. *Compare* Ex. 12, Hatle Dep. Ex. 23 at 1 (CleanWirx paper) *with* Ex. 13, Hatle Dep. Ex. 24 (CorrX™ paper). When pressed, Hatle admitted (1) he did not have permission to use these CorrX™ photograph; (2) the image he used in the CleanWirx paper actually belonged to CPT and showed steel treated with CorrX™ products; and (3) it was misleading to use this photograph in a paper about CleanWirx when it really showed a piece of metal treated with CorrX™. Ex. 1 at 216:21–217:10. Consistent with his *modus operandi*, Hatle also appropriated a microscope report showing the cleaning effect of CorrX™ on metal as a CleanWirx report. *Compare* Ex. 12, Hatle Dep. Ex. 23 at 10–34 (falsified CleanWirx report) *with* Ex. 14, Hatle Dep. Ex. 22 (CorrX™ report). Hatle conceded there was no CleanWirx analysis— only one performed on CorrX™-treated metal, but he used it and passed it off as a CleanWirx analysis to the public nonetheless. Ex. 1 at 212:12–213:11. Similarly, Mulville used a CPT video to create a promotional video for Bear Metal wherein he falsely represented characteristics of CorrX™ as those of Bear Metal's products. *See e.g.,* Ex. 3 at 42:8–17.

Thus, CPT falls within the zone of interest for a false advertising claim under the Lanham Act. *Boltex*, 2019 WL 2723253 at *5; *Springboards to Educ., Inc. v. Kipp Found.*, 325 F. Supp. 3d 704, 714 (N.D. Tex. 2018).

Proximate cause is also satisfied as CPT's injuries are a direct result of the conduct barred by the Lanham Act. Indeed, this case presents a "classic Lanham Act false advertising claim in which one competitor[r] directly injur[es] another by making false statements about his own goods [or the competitor's goods] and thus inducing customers to switch." *Lexmark*, 572 U.S. at 137.

According to Hatle, CE only has three direct competitors (CPT included) and "a few other minor ones," offering inferior products that "don't do a very good job." Ex. 1 at 294:23–295:4, 33:23–34:4.[4] There is no question that CPT and Defendants are direct competitors. Defendants have also profited from selling their falsely advertised products. *See* Ex. 1 at 164:1–2 (CE); Ex. 2 at 70:16–20 (Bear Metal).[5] Accordingly, there is sufficient evidence for a reasonable juror to conclude that Defendants' false statements proximately caused injuries to CPT by diverting sales from CPT to Defendants. *See Logan*, 263 F.3d 447 at 463. CPT has standing.

### 2. CPT's false advertising claim is not time-barred.

The Lanham Act does not establish a limitations period for false advertising claims. *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 356 (5th Cir. 2011). So, courts look to the most analogous state law limitations to determine the laches period. *Id.* In Texas, this is the four-year period applicable to fraud claims. *Id.* The period for laches begins when the plaintiff knew or should have known of the defendant's injurious conduct. *Id.* To prevail on the affirmative defense of laches, the defendant must establish that there was "(1) delay in asserting a right or claim; (2) that the delay was inexcusable; (3) that undue prejudice resulted from the delay." *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1161 (5th Cir. 1982). Additionally, "[a]ny acts after receiving a cease and desist letter are at the defendant's own risk because it is on notice of the plaintiff's objection to such acts. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998). Thus, the laches period ends when plaintiff sends a letter objecting to defendant's conduct. *Alfa Laval Inc. v. Flowtrend, Inc.*, 2016 WL 2625068, at *6 (S.D. Tex. May 9, 2016).

---

[4] CE designated Kip Knowles, the COO, to provide testimony regarding CE's market, including its competitive studies and competitive analyses. *See* Ex. 18, Hatle Dep. Ex. 3. CPT noticed Mr. Knowles' deposition for June 7, but Defendants unilaterally suspended the deposition and have since blocked CPT from taking Mr. Knowles' deposition. Accordingly, CPT expects that there will be additional evidence regarding the competitive relationship between CPT and CE that is elicited during the discovery period (and in particular once it is able to depose Mr. Knowles).
[5] Mr. Knowles was also designated to provide corporate testimony regarding CE's sales, revenue, and profitability.

Defendants fail to allege, must less establish, they suffered undue prejudice because of any delay. Thus, Defendants have failed to meet their burden. *See Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 344 (5th Cir. 2005) ("All that they argue is that [the plaintiff] waited too long. This argument does not satisfy their burden."). Defendants premise their time-bar defense on the October 2014 and 2015 letters from Tagos to Hatle. At the outset, these letters are not sufficient to bar CPT from bringing this claim against any defendant beyond Hatle. *See* Doc. No. 35-06, 35-8 (discussing only Hatle, not CE, Mulville, Hernandez, or Bear Metal). Moreover, the letters are silent regarding any potential claims under the Lanham Act, including false advertising. *Id*. Instead, they merely put Hatle on notice that he has a confidentiality agreement and cannot use confidential information to create products. *Id*. Additionally, if Defendants' argument that the three letters demonstrate knowledge of Defendants' misconduct is correct (it is not), then the letters also put Defendants on notice of CPT's objections to same, thereby ending the laches period. *See Alfa*, 2016 WL 2625068, at *6. Defendants are not entitled to judgment on Count I.

## C.     CPT's Trade Secret Claims Are Not Barred

Defendants' have also failed to establish CPT's trade secret claims (Counts II and III) are barred. A party "moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense." *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002). Defendants must "(1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury." *Id.*; *Mendes v. Toyota Motor Sales, U.S.A., Inc.*, 2016 WL 1222153, at *2 (S.D. Tex. Mar. 29, 2016).

The Defend Trade Secrets Act ("DTSA") and the Texas Uniform Trade Secrets Act

("TUTSA") both have three-year statutes of limitations. 18 U.S.C. § 1836(d); Tex. Civ. Prac. & Rem. Code Ann. § 16.010. But, the discovery rule, which is expressly incorporated into the DTSA and TUTSA,[6] "defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *Seatrax, Inc. v. Sonbeck Int'l., Inc.*, 200 F.3d 358, 365 (5th Cir. 2000). Here, CPT filed its complaint on June 23, 2020. Doc. No. 1. To prevail on summary judgment, Defendants must show that CPT's trade secret claims accrued against each Defendant and that CPT knew or should have known of facts that would have led to the discovery of the nature of its resulting injuries before June 23, 2017.

Whether a plaintiff knew or, through the exercise of reasonable diligence, should have known of its injuries is a question of fact unfit for summary judgment. *Raytheon Co. v. Indigo Sys. Corp.*, 688 F.3d 1311, 1316 (Fed. Cir. 2012); *see also Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 722 (Tex. 2016). Awareness that a former employee is marketing a competing technology does not constitute "discovery of the injury." *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 264 (5th Cir. 2014); *see also Pressure Sys. Int'l., Inc. v. Sw. Research Inst.*, 350 S.W.3d 212, 217 (Tex. App.—San Antonio 2011, pet. denied) (development of competing technology by former employee "not necessarily wrongful in and of itself"). Similarly, suspicions of misappropriation of trade secrets is insufficient to show knowledge because "subjective beliefs and opinions are not facts that in the exercise of reasonable diligence would lead to the discovery of a wrongful act." *Sw. Energy Prod.*, 491 S.W.3d at 724. Instead, to establish a plaintiff should have known of its injury, the **defendant** must present evidence showing an ***objective basis*** for

---

[6] U.S.C. § 1836(d) ("A civil action under subsection (b) may not be commenced later than 3 years after the date on which the misappropriation with respect to which the action would relate **is discovered or by the exercise of reasonable diligence should have been discovered**.") (emphasis added); Tex. Civ. Prac. & Rem. Code § 16.010(a) ("A person must bring suit for misappropriation of trade secrets not later than three years after the misappropriation **is discovered or by the exercise of reasonable diligence should have been discovered**.") (emphasis added).

further inquiry and evidence of what plaintiff would have discovered had it made such inquiry. *Id.*

### 1. Each Defendant must be addressed individually.

The Motions would have the Court treat all Defendants as one for the purposes of statutes of limitations analysis. This is improper. *See Stolle Mach. Co., LLC v. RAM Precision Indus.*, 605 F. App'x 473, 483 (6th Cir. 2015) ("The district court treated the statute-of-limitations analysis identically as to both [defendants], but this was a mistake."); *HiRel Connectors, Inc. v. United States*, 465 F. Supp. 2d 984, 989 (C.D. Cal. 2005) ("In situations involving multiple defendants, there may be multiple dates of accrual."). Instead, the limitations period for each is triggered separately based on each Defendant's misappropriation and CPT's knowledge thereof. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 420 (4th Cir. 1999) ("[The plaintiff]'s awareness of [one defendant]'s own alleged misappropriation, not [another defendant]'s misappropriation, triggered the limitations period."). If Defendants' approach were correct, any time one entity misappropriates trade secrets, "[m]alevolent third parties would merely have to lie low and wait out the clock. The plaintiffs, through no fault of their own, would forever lose their trade secrets with recourse only against the original misappropriator. *Cypress Semiconductor Corp. v. Superior Court*, 163 Cal. App. 4th 575, 583 (2008). Accordingly, and despite that Defendants failed to complete this analysis, thereby providing the Court yet another basis to deny judgment, CPT will address the statutes of limitations as they apply to each Defendant.

#### a. Hatle

The only evidence that Defendants cite in support of their argument that CPT had knowledge of its injury are the three letters sent by Tagos' counsel. The first, dated October 27, 2014, is a letter to Hatle reminding him of obligations under his confidentiality agreement. *See* Doc. No. 36-1. It does not identify any activity of suspected misappropriation. *Id.* This was a reasonable step to protect Tagos' property, particularly given Hatle's history of dishonesty.

*CorrLine*, 516 B.R. at 133; *In re Bass*, 113 S.W.3d 735, 742 (Tex. 2003) ("The third factor [in determining whether a trade secret exists] considers the extent of measures taken to guard the secrecy of the information."). The second, sent August 26, 2015, is another letter to Hatle requesting a Bankruptcy Rule 2004 examination because Tagos had "concern" its property was "being utilized in an unauthorized manner." *See* Doc. No 36-2. Hatle refused. Ex. 4. Unable to obtain information from Hatle, Tagos sent the third letter on October 12, 2015, to Clean Metal and Leboeuf informing them of Hatle's confidentiality obligations and what Tagos "believe[d] [was] an ***attempt*** by Mr. Hatle to violate both his contractual agreements regarding confidentiality and his further attempt to wrongfully invade the intellectual property rights owned by Tagos." Doc. No. 36-3 at 1 (emphasis added). As noted, Tagos had these suspicions because Clean Metal "appear[ed] to be marketing a product and technology that has the same characteristics and uses and the proprietary technology owned by Tagos." *Id.* at 2.

The three letters are insufficient to show that CPT had knowledge of its injury as they amount to nothing more than "mere surmise, suspicion, and accusation." *Sw. Energy Prod.*, 491 S.W.3d at 724. Indeed, Hatle testified that the third letter does not even allege that he misappropriated any trade secrets or confidential information. Ex. 1 at 296:5–297:22. The fact that CPT had knowledge that Clean Metal may be marketing a competing technology does not constitute knowledge of misappropriation because marketing "is not necessarily wrongful in and of itself." *Pressure Sys. Int'l.*, 350 S.W.3d at 217. Moreover, Clean Metal stopped marketing and selling because of the letters, precluding any advance beyond suspicion into knowledge. Ex. 1 at 299:3–14. Accordingly, the letters are not proof that CPT had knowledge of its injuries. *Garner Envtl. Servs., Inc. v. First In Rescue, Safety & Training, LLC*, 2016 WL 7671377, at *4 (Tex. App.—Houston [1st Dist.] Dec. 22, 2016, no pet.) ("Nevertheless, we find no basis to conclude

that allegations in a cease-and-desist letter must be construed as proof of knowledge of the allegations."). An issue of fact exists regarding when CPT had sufficient knowledge to file suit. Summary judgment must be denied.

In addition, Defendants have not shown that further inquiry by CPT would have led to the discovery of any injury, nor could they, because Hatle left Clean Metal, working with two other companies before forming CE with Knowles, not selling product until CE. Ex. 1 at 173:3–174:3. An injury resulting from a defendant's misappropriation of a trade secret design or formulation, at the earliest, becomes discoverable once defendant's product enters the marketplace. *See Raytheon*, 688 F.3d at 1317 (disassembly and inspection of defendant's product was the only path for plaintiff to discover facts giving rise to its cause of action); *see also Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 200 (5th Cir. 2021) ("[I]nformation like computer codes or product designs may be readily discoverable once the information appears in the marketplace."). Indeed, "the existence of a cognizable injury," like the sale of a competing product using plaintiff's trade secret, "is a condition precedent to the discovery rule." *Kendall Holdings, Ltd. v. Eden Cryogenics*, LLC, 521 F. App'x 453, 457 (6th Cir. 2013); *Retractable Techs., Inc. v. Occupational & Med. Innovations, LTD.*, 2010 WL 3199624, at *3 (E.D. Tex. Aug. 11, 2010) (limitations did not accrue until plaintiff was damaged by sale of a competing product).

Here, Hatle testified that during his involvement with Clean Metal from December 2014 to April 2016, Clean Metal did not sell any product—"not one ounce." Ex. 1 at 128:15–20, 124:21–125:1. In fact, Clean Metal did not manufacture any product or even have a manufacturer in place. *Id*. at 125:14–18. It is entirely unclear whether Hatle had even developed a product, as he testified that in 2016, the product was still "just a concept," (*id.* at 125:21–126:10), and the "Cleanwirx" being marked was just a "method," not a product (*id.* at 198:11–22, 200:12–15). Upon receipt of

letter from CPT, Hatle's business partner in Clean Metal ceased operations. *See* Ex. 15, at HATLE0003332 ("Had we not received the letter from [CPT's counsel]'s Office, regarding your violation of a Confidentiality Agreement, which you signed and failed to disclose to me and my attorneys at the begin, we would have been well on our way to creating and selling product."); Ex. 1 at 299:3–23. Without any sales, the statute of limitations could not have accrued at the time of the October 12, 2015, letter as Defendants contend because CPT had not yet suffered any injury, much less a discoverable injury. *Kendall Holdings*, 521 F. App'x at 457 ("No amount of reasonable diligence would enable a plaintiff to discover an injury that has not yet occurred."). Accordingly, Defendants have not through the three letters established when CPT's DTSA and TUTSA claims accrued, and therefore summary judgment should be denied.

Although it is not CPT's burden to show its claims accrued within the statute of limitations, the summary judgment evidence establishes that they do. Clean Metal's decision to cease operations before CPT sustained any cognizable injury alleviated any concerns that CPT may have had. *See Raytheon Co.*, 688 F.3d at 1318 (finding that after a plaintiff's initial suspicions are quashed, it does not have a "constant duty to investigate all acts of competition by [the defendant] for evidence of misappropriation"). Nonetheless, a continued investigation of Hatle would not have led to the discovery of an injury until 2019 at the earliest, the first time Hatle sold product— well within the limitations period. *See* Ex. 1 at 135:13–136:21 (MicroClean Metals did not manufacture, sell, or market any product), 173:3–174:3 (no entity made sales before early-2019). Thus, the limitations period did not accrue until 2019 at the earliest.

### b. Corrosion Exchange

No matter the content of the letters as applied to Hatle, they are absolutely irrelevant to and contain no evidence regarding the accrual of CPT's claims against CE.

Generally, a cause of action for a misappropriation under the DTSA and TUTSA accrues

when the defendant actually uses plaintiff's trade secret. *M-I L.L.C. v. Q'Max Sols., Inc.*, 2019 WL 3565104, at *4 (S.D. Tex. Aug. 6, 2019). A "use" is "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant." *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 326 (5th Cir. 2018). In cases with multiple defendants whose initial use occurred separately, there may be multiple accrual dates. *See HiRel Connectors, Inc. v. United States*, 465 F. Supp. 2d 984, 989 (C.D. Cal. 2005); *see also Stolle*, 605 F. App'x at 483 ("The district court treated the statute-of-limitations analysis identically as to both [defendants], but this was a mistake."). Similarly, the discovery rule may defer accrual for different periods for each defendant. *Hoechst*, 174 F.3d at 420 ("Hoechst's awareness of Nan Ya's own alleged misappropriation, not Rogers's misappropriation, triggered the limitations period.").

Here, Defendants argue that "[t]he third letter dated October 1[2], 2015, undisputedly demonstrates that [CPT] had knowledge of Defendants' alleged misappropriations…more than 5 years prior to this lawsuit." Doc. No. 36 at 4. But the letters do not show that CPT had any suspicions of misappropriation by CE, much less knowledge, because none reference CE. ***Indeed, CE did not even exist until December 27, 2017.*** Ex. 5 at 1. Thus, December 27, 2017 is the earliest date that the limitations period could be triggered for any claims against CE. *Stolle*, 605 F. App'x at 483 ("The statute of limitations cannot have begun running as to [the defendant] in 2003 when, according to the evidence in the record, [the defendant] was not founded until 2004."). The complaint filed in June 2020 thus *prima facie* satisfies the three-year limitations period as to CE.

### c. Bear Metal Technologies

The letters are also irrelevant with respect to the accrual of CPT's claims against Bear Metal. Although the October 12, 2015, letter references Bear Metal, it does so only in passing. There, it merely notes that Bear Metal "represented that it was developing a product similar to CorrX," and that it "appear[ed] to be marketing a product and technology that has the same

characteristics as the proprietary technology owned by [CPT]." Doc. No. 36-3 at 4. The statements evidence, at most, that CPT was suspicious of Bear Metal' activities, but mere suspicions "are not facts that in the exercise of reasonable diligence would lead to the discovery of a wrongful act." *Sw. Energy Prod.*, 491 S.W.3d at 724. Indeed, knowledge that Bear Metal Technologies was marketing a competing technology does not constitute "discovery of the injury." *Aspen*, 569 F. App'x at 264. Instead, to trigger the accrual period, CPT must have known or been reasonably able to discover that Bear Metal used CPT's proprietary information to create competing products. *Id.*

Additionally, Defendants have not shown that further inquiry by CPT would have led to the discovery of any injury. CPT only referenced Bear Metal in the October 2015 letter because is incorrectly believed that Hatle was involved in the formation of Bear Metal. *See* Doc. No. 36-3 at 4 ("[I]n October 2014 Hatle become involved in the formation of an entity known as Bear Metal Technologies."). However, Hernandez was the only person involved in forming Bear Metal, (Ex. 2 at 55:1–5), and he never considered including Hatle (*id.* at 84:18–20). CPT's mistaken belief stemmed from a proposed business venture that never came to fruition. *Id.* at 92:21–93:3. This cannot be the basis for a limitations defense as to Bear Metal.

Moreover, although Bear Metal eventually developed and sold corrosion prevention products, Defendants produced no evidence that CPT knew or should have known this before June 23, 2017 (three years before the complaint). To the contrary, consistent with Hernandez's initial plan of providing only services (*id.* at 61:16–62:6), at least as of August 5, 2019, Bear Metal's website only advertised services. *Compare* Ex. 16, August 2019 Bear Metal website (advertising carpentry, electrical, and plumbing services) *with* Ex. 17, Current Website (advertising corrosion prevention technology). Thus, there was no objective basis for CPT to inquire further with respect to Bear Metal, as it did not appear to be marketing a competing product. Judgment must be denied.

### d. Hernandez

Similarly, the letters do not show that the statute of limitations for CPT's claims against Hernandez accrued in 2015. The only reference to Hernandez in any of the letters is in the attachment to the August 26, 2015, letter requesting examination of Hatle. *See* Doc. No. 36-2 at 7. The attachment contains a proposed list of examination topics and document requests. *See* Doc. No. 36-2 at Ex. A. One such request seeks emails that Hatle sent or received from several individuals, including Hernandez. *See* Doc. No. 36-2 at 7. Emails between Hatle and Hernandez were included in this proposed request because of CPT's mistaken belief that Hatle was affiliated with Hernandez and Bear Metal, not because CPT has any independent suspicions that Hernandez independently misappropriated CPT's trade secrets. Moreover, all three letters are focused exclusively Hatle's obligations and actions. *See generally,* Doc. No 36-1 (discussing Hatle's confidentiality agreement); Doc. No. 36-2 (requesting an examination of Hatle); Doc No. 36-3 (discussing Hatle's activities). Since Hatle never formed a business with Hernandez, CPT had no reason to inquire further with respect to Hernandez's independent ventures. Counts II and III against Hernandez are not time-barred; judgment should be denied.

### e. Mulville

None of the letters make any reference to Mulville. *See* Doc. No 36-1, 36-2, 36-3. Defendants do not explain how the letters show that CPT had knowledge of Mulville's misappropriation. *See* Doc. No. 36. As stated, all three letters are focused entirely on Hatle. According to Mulville, he has had "no relationship whatsoever" with Hatle since 2014. *See* Ex. 3 at 50:4–11. Thus, Mulville's misappropriation of CPT's trade secrets is completely independent of Hatle and there is no basis to lump them together for statute of limitations purposes. *HiRel Connectors*, 465 F. Supp. 2d at 989. There is no basis for judgment.

## D. CPT's Breach of Contract Claims Against the Individual Defendants Are Not Barred

For similar reasons, Hatle, Hernandez, and Mulville (collectively, the "Individual Defendants") also failed to establish that the statute of limitations bars CPT's claim breach of the confidentiality agreements. Breach of contract claims in Texas are subject to a four-year statute of limitations. *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (citing Tex. Civ. Prac. & Rem. Code § 16.051). As with misappropriation of trade secret claims, the discovery rule "defers accrual of the cause of action until the plaintiff knew, or should have known through the exercise of reasonable diligence, of the facts giving rise to the cause of action." *WesternGeco v. Ion Geophysical Corp.*, 2009 WL 3497123, at *4 (S.D. Tex. Oct. 28, 2009).

The Individual Defendants cite the same three letters as the basis for judgment. Aside from the separate breach of his confidentiality agreement by Hatle discussed below, CPT's breach of contract claims against the Individual Defendants are predicated on the same conduct as CPT's misappropriation of trade secrets claims. Because the injuries are the same, the discovery rule defers accrual for the same period of time.

With respect to Hatle, even if the letters were sufficient to establish knowledge (they are not), the statute of limitations would only bar claims for breaches of the agreement that occurred before CPT sent the letters. In the breach of contract context, each independent breach has its own accrual date. *Gimme The Best, L.L.C. v. Sungard Vericenter, Inc.*, 2010 WL 1388993, at *6 (S.D. Tex. Apr. 1, 2010). Thus, Hatle's use of confidential information to develop his CleanWirx 207 product in 2018/2019 is a separate breach well within the limitations period. Ex. 1 at 161:5–17. CPT still has viable claims against Hatle. The Court should deny judgment.

## E. CPT's Conversion Claims Against the Individual Defendants Are Not Barred

The Individual Defendants have also failed to establish that CPT's conversion claims are

barred by limitations. Conversion claims in Texas have a two-year statute of limitations. Tex. Civ. Prac. & Rem. Code Ann. § 16.003. The limitations period for a conversion normally accrues at the time of the unlawful taking. *Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 700 (Tex. App.—Dallas 2012, no pet.). "However, if the original possession of the property is lawful, the limitations period does not begin to run until the return of the property has been demanded and refused, or until the person in possession has unequivocally exercised acts of domination over the property inconsistent with the claims of the owner or the person entitled to possession." *Id.* The discovery rule also applies. *Pemex Exploracion y Produccion v. BASF Corp.*, 2013 WL 5514944, at *32 (S.D. Tex. Oct. 1, 2013).

Here, the Individual Defendants lawfully possessed CPT's property during their employment. Thus, CPT's conversion claim did not accrue until CPT knew or should have known of the unlawful taking. *See Pemex*, 2013 WL 5514944, at *32. Upon leaving, Mulville and/or Hernandez at least retained a CPT promotional video and used it to create a promotional video for Bear Metal. Ex. 2 at 78:20–80:2. CPT had no way of knowing this until, at the earliest, February 3, 2020, when the video was made public. Ex. 6. Hatle at least retained CPT's SEM studies and marketing materials upon his resignation. Ex. 1 at 280:10–20. None of the letters pertain to Mulville or Hernandez, nor do they prove that CPT had knowledge that any of the materials discussed above were still in the Individual Defendants' possession. *See generally*, Doc. No. 40-1, 40-2, 40-3. Thus, these letters amount to, at most, evidence of "mere surmise, suspicion, and accusation" as to Hatle alone, "not facts that in the exercise of reasonable diligence would lead to the discovery of a wrongful act" as to any Individual Defendant. *Sw. Energy Prod*, 491 S.W.3d 699, 724 (Tex. 2016). The Defendants have thus failed to meet their burden as to Count VII.

## VII.    CONCLUSION

For these reasons, the Court should deny Defendants' Motions for Summary Judgment.

Dated: July 7, 2021

Respectfully submitted,

By: */s/ John R. Keville*
John R. Keville
Attorney-in-Charge
Texas Bar No. 00794085
S.D. Adm. No. 20922
jkeville@winston.com
Corinne S. Hockman
Texas Bar No. 24102541
S.D. Adm. No. 3019917
chockman@winston.com
Kyle A. Terao
Texas Bar No. 24106502
S.D. Adm. No. 3253694
kterao@winston.com
WINSTON & STRAWN LLP
800 Capitol, Suite 2400
Houston, Texas 77002
Tel. (713) 651-2600
Fax (713) 651-2700

**COUNSEL FOR PLAINTIFF
CORROSION PREVENTION
TECHNOLOGIES LLC**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served on counsel of record who are deemed to have consented to electronic service on July 7, 2021, via electronic filing using the Court's CM/ECF system.

*/s/ John R. Keville*