IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CORROSION PREVENTION TECHNOLOGIES LLC<br><br>*Plaintiff*,<br><br>v.<br><br>LOREN L. HATLE, SANTIAGO HERNANDEZ, TIMOTHY MULVILLE, BEAR METAL TECHNOLOGIES, LLC, and CORROSION EXCHANGE, LLC,<br><br>*Defendants*. | Case No. 4:20-cv-02201<br><br>**JURY TRIAL DEMANDED** |

**CORROSION PREVENTION TECHNOLOGIES LLC'S
OPPOSITION TO DEFENDANT LOREN L. HATLE'S MOTION FOR SUMMARY
JUDGMENT ON COUNT VI**

# TABLE OF CONTENTS

|      |                                                                                                                                              | Page |
|------|----------------------------------------------------------------------------------------------------------------------------------------------|------|
| I.   | INTRODUCTION                                                                                                                                 | 1    |
| II.  | NATURE AND STAGE OF PROCEEDINGS                                                                                                              | 2    |
| III. | STATEMENT OF THE ISSUES AND STANDARD OF REVIEW                                                                                               | 2    |
| IV.  | FACTUAL BACKGROUND                                                                                                                           | 3    |
| V.   | SUMMARY OF THE ARGUMENT                                                                                                                      | 7    |
| VI.  | ARGUMENT                                                                                                                                     | 8    |
|      | A. The Summary Judgment Standard                                                                                                             | 8    |
|      | B. There Is a Genuine Dispute of Material Fact Regarding Whether Hatle Complied with the Assignment Agreement                                | 8    |
|      |     1. The Later-Filed Patents and Application Are Directed to Inventions Covered by the Assignment Agreement            | 8    |
|      |     2. The Later-Filed Patents and Application May Be Considered Continuations-in-Part Applications                      | 11   |
| VII. | CONCLUSION                                                                                                                                   | 12   |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
 598 F.3d 1336 (Fed. Cir. 2010) ................................................................................... 10

*Augustine Med., Inc. v. Gaymar Indus., Inc.*,
 181 F.3d 1291 (Fed. Cir. 1999) ............................................................................. 11, 12

*In re CorrLine Int'l, LLC*,
 No. 14-32740, Doc. No. 99 (Bankr. S.D. Tex. Oct. 14, 2014) ..................................... 4

*Matter of Dallas Roadster, Ltd.*,
 846 F.3d 112 (5th Cir. 2017) ....................................................................................... 10

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
 850 F.3d 1315 (Fed. Cir. 2017) ..................................................................................... 9

*J.M. Davidson, Inc. v. Webster*,
 128 S.W.3d 223 (Tex. 2003) .......................................................................................... 8

*Jacked Up, L.L.C. v. Sara Lee Corp.*,
 854 F.3d 797 (5th Cir. 2017) ......................................................................................... 8

*Minco, Inc. v. Combustion Eng'g, Inc.*,
 95 F.3d 1109 (Fed. Cir. 1996) ........................................................................................ 8

*MHL TEK, LLC v. Nissan Motor Co.*,
 655 F.3d 1266 (Fed. Cir. 2011) ........................................................................... 8, 9, 11

*Ono's Trading Co., LLC v. Parnell*,
 CV 04-0706-CG-C, 2006 WL 8437743 (S.D. Ala. Nov. 22, 2006) ........................... 12

*United States v. Lawrence*,
 276 F.3d 193 (5th Cir. 2001) ......................................................................................... 3

*Wells Fargo Bank, N.A. v. David Orlando Collins*,
 No. H:09-2483, 2010 WL 3303663 (S.D. Tex. Aug. 19, 2010), *aff'd sub nom.
 In re Collins*, 437 F. App'x 314 (5th Cir. 2011) .......................................................... 9

**Statutes**

35 U.S.C. § 120 ................................................................................................................. 12

**Other Authorities**

Fed. R. Civ. P. 56(a) ...................................................................................................................8

MPEP § 201.08 ..........................................................................................................................11

MPEP § 2157 ...............................................................................................................................6

## I. INTRODUCTION

Plaintiff Corrosion Prevention Technologies LLC ("CPT") files this Opposition to Defendant Loren L. Hatle's ("Hatle") Motion for Summary Judgment on Count VI, Doc. No. 43 ("Motion").[1] Hatle is a former employee who, along with CPT's former employee and current partner James Knocke, signed a contract requiring them to assign and transfer "the entire right, title, and interest in and to the Inventions in the United States and foreign countries and the Patents and Patent Applications, including but not limited to all reissues, divisions, continuations and extensions of the Patents . . ." Doc. No. 1-4. After Hatle left, he filed three additional patent applications directed to the Inventions, including the inventive portions of James Knocke.

The entire basis of Hatle's Motion is the incorrect assertion that "[t]he Assignment Agreement required the assignment of a single patent application-- the Assigned Patent." Doc. No. 43 at 4. As quoted above, the contract required assignment of ***the Inventions*** *and* Patents *and* Patent Applications *and* continuations and extensions of the Patents. Questions of fact exist as to whether the later-filed patent applications are directed to "Inventions" subject to assignment under the contract, and questions of fact exist as to whether the later-filed patent applications are continuations-in-part of an assigned patent. The Court cannot determine from the Motion, which contains no analysis whatsoever of the patent and patent application, whether the later-filed patents and patent application are within the scope of the Invention assigned in the assignment agreement or are continuations or continuations-in-part. Both are intensely factual determinations for the jury. These determinations will also require discovery and possibly expert opinions.

Accordingly, as the following arguments and authorities demonstrate, Hatle has not met his burden of establishing that he is entitled to summary judgment on this claim.

---

[1] CPT files this Response to Doc. No. 43. CPT previously filed its Response to Doc. Nos. 35, 36, and 38–40 on July 7, 2021. *See* Doc. No. 55.

## II. NATURE AND STAGE OF PROCEEDINGS

This case is about Defendants' theft and misappropriation of CPT's revolutionary corrosion prevention technology. On June 23, 2020, CPT filed its Complaint in this Court for Defendants' violations of the DTSA, the TUTSA, and the Lanham Act, and for breaches of contract, misappropriation, and conversion. Doc. No. 1 ¶¶ 44–103. Defendants answered on July 31, 2020. Doc. No. 16. Discovery has been underway since November 2020, and Plaintiff deposed defendants Hernandez, Mulville, and Hatle and were scheduled to depose Defendant Corrosion Exchange's ("CE") second corporate representative, Kip Knowles. Defendants first represented to the Court they had no additional relevant documents (Defs.' May 7, 2021 Ltr. to Court ¶ 4); but Hatle testified Kip Knowles (CE's Chief Operations Officer) had many documents (*e.g.*, Ex. 1, Hatle Dep. Tr. at 279:22–280:4, 154:9–20, 174:10–18, 245:21–246:25).[2] Defendants immediately cancelled Knowles' deposition. Defs.' June 8, 2021 Ltr. to Court at 1. Shortly thereafter, Defendants filed six motions for summary judgment. On July 6, 2021, the Court stayed all deadlines pending the resolution of the motions and urging Hatle's counsel to produce documents requested that are even "tangentially to the summary judgment." Ex. 3, July 6, 2021 Hrg. Tr. at 17:21–23. CPT requested several categories of documents relevant to Hatle's Motion, including formulation and draft and final marketing documents, all of which are relevant to the interrelatedness of the Inventions claimed in and embodied by the various patents, and all of which Hatle previously testified do exist. *See* Ex. 1 at 163:1–25, 176:9–177:25. As of the filing of this Opposition, Hatle's counsel has not responded or produced the requested documents.

## III. STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

(1) Hatle's assignment agreement (Doc No. 1-4) requires that he transfer the right, title, and interest in ***in and to the Inventions*** in the United States and foreign countries ***and the Patents and Patent Applications***, including but not limited to continuations-in-part contained in a

---

[2] Unless otherwise noted, all exhibits are to the Declaration of Corinne S. Hockman filed concurrently herewith.

patent application entitled "Treatment Kit for Cleaning Substrate Surfaces for Removal of Water and Non-Water Soluble Oxides and Ionic Compounds." Hatle testified that each of his patent applications filed since the assignment agreement are all directed to the "evolution" of the same product with different combinations of the exact same ingredients. Moreover, each is directed to the same subject matter disclosed in the '943 patent. They therefore should have all been assigned to CPT. Accordingly, questions of fact exist as to whether Hatle breached his assignment agreement, and the Court should deny Hatle's Motion.

The Fifth Circuit reviews the grant or denial of summary judgment *de novo*. *United States v. Lawrence*, 276 F.3d 193, 195 (5th Cir. 2001).

## IV. FACTUAL BACKGROUND

CPT is a corrosion prevention company whose technology was started and developed by its predecessors Trigenix and CorrLine International, LLC after years of investment, research, and development. CPT's products include its suite of CorrX™ products, including CorrX™ PREP and CorrX™ WASH, which remove contaminants that induce corrosion.

Defendant Loren Hatle is a former employee of CorrLine who served as its Chief Technical Officer. Ex. 1 at 78:10–12, 79:16–20. Hatle, along with fellow CorrLine employee and chemist Jim Knocke[3], developed CorrLine's CorrX™ products, used in a two-step process and comprised of five key ingredients. *Id*. at 80:22–81:24. The corrosion mitigation invention involves applying a gel product containing citric acid, sodium persulfate, and sodium bisulfate to a surface, waiting a proscribed period of time, and then applying a rinse made with DMEA and water. *Id*. at 81:9–82:5; *see also* Doc. No. 43-1 at 5:52–6:39. As a chemist by education and training, Knocke helped Hatle develop the formulations in this process, specifically recommending the use of sodium persulfate and sodium bisulfate in the composition. Ex. 1 at 63:13–64:13, 73:14–22.

In October 2014, the Tagos Group, LLC and TGS Solutions, LLC ("Tagos")— a 45% owner of CorrLine and its largest creditor—acquired CorrLine's assets from bankruptcy. Tagos

---

[3] Knocke was an employee of CPT and is currently a partner in a joint venture between CPT and several other partners in the corrosion mitigation space.

purchased all CorrLine's assets, including but not limited to its intellectual property in the form of patents, patent applications, trademarks over CorrLine and CorrX, and trade secrets, among others; all contracts, including confidentiality and non-competition agreements with employees and former employees; customer lists; and legal rights. *In re CorrLine Int'l, LLC*, No. 14-32740, Doc. No. 99 (Bankr. S.D. Tex. Oct. 14, 2014). Tagos then sold these interests to TGS Solutions, LLC, which, in turn, became CPT.

In connection with the acquisition, TGS Solutions, LLC entered an assignment agreement with Hatle and Jim Knocke. Doc. No. 1-4. The assignment agreement specifies that the assignors, *i.e.*, Hatle and Knocke, assign and transfer to assignee, *i.e.*, TGS Solutions, LLC:

> the entire right, title, and interest **in and to the Inventions** in the United States and foreign countries **and the Patents and Patent Applications,** including **but not limited to** all reissues, divisions, continuations and extensions of the Patents . . . to be held and enjoyed by the assignee for its own use and benefit and for its successors and assigns as the same.

Doc. No. 1-4 (emphasis added). The "Inventions" assigned include all of those in the then-pending application entitled "Treatment Kit for Cleaning Substrate Surfaces for Removal of Water and Non-Water Soluble Oxides and Ionic Compounds," which has since issued as U.S. Patent No. 9,193,943 (the "'943 patent"). *Id.*; *see also* Doc. No. 43-1. Hatle and Knocke did assign the '943 patent to TGS Solutions, LLC. *See* Doc. No. 43-1 at cover page. The '943 patent covers a two-step process comprised of five ingredients: citric acid, sodium persulfate, and sodium bisulfate in the first step and a liquid made of water and an alkaline (*e.g.*, DMEA) in the second step. Ex. 1 at 99:5–22; Doc. No. 43-1 at 5:52–6:39.

Shortly after the CorrLine bankruptcy, Hatle went into business with Randy Leboeuf and became the Chief Technical Officer of Clean Metal Technologies, LLC. Ex. 1 at 121:11–18. While at Clean Metal, Hatle continued to develop the two-step corrosion mitigation process he co-developed with Jim Knocke at CorrLine. *See id.* at 121:22–122:1. Hatle filed a patent application

for this two-step process, which issued on July 24, 2018 as U.S. Patent No. 10,030,310 (the "'310 patent") and Hatle assigned it to Clean Metal Technologies, LLC. *See* Doc. No. 43-2 at cover page. Like CorrLine's '943 patent, the '310 patent is also directed to decontamination of a substrate to remove contaminants using a two-step product that contains citric acid, sodium persulfate, an alkaline (DMEA), and water. Ex. 1 at 102:3–9, 104:12–23, 159:7–25. The only substantive difference between the '943 patent and the '310 patent is that the '310 patent has one less ingredient than the '943 patent: sodium bisulfate. *Id*. at 159:12–25.[4]

After filing the patent application resulting in the '310 patent, Hatle was fired from Clean Metal Technologies. Ex. 1 at 132:6–15. Thereafter, he worked with two businesses, MicroClean Metals and WirxGroup, which were also engaged in the corrosion prevention space, attempting to market the two-step corrosion mitigation process. *Id*. at 134:7–11 (MicroClean Metals), 136:25–137:7 (WirxGroup). Hatle's relationships with both entities soured. *Id*. at 293:1–12.

At the end of December 2017, Hatle and current business partner Kip Knowles formed defendant Corrosion Exchange. *Id*. at 152:2–153:6. Since that time and through today, Hatle has served as the Chief Technical Officer of CE. *Id*. at 156:19–23. On March 27, 2020, Hatle, through CE, filed a patent application that issued as U.S. Patent No. 11,028,489 (the "'489 patent") on June 8, 2021. Doc. No. 43-3 at cover page; Ex. 1 at 105:24–107:16. The '489 patent previously published as U.S. Patent Application Publication No. 2020/0308714 (the "'714 publication") on October 1, 2020; Doc. No. 43-3 at cover page; Ex. 1 at 107:13–16. As with the '943 patent and the '310 patent, the '489 patent (and the '714 publication) is directed to a composition for removing contaminants from a metal substrate that contains DMEA, sodium persulfate, and water. Ex. 1 at

---

[4] There is one other minor difference between the two patents: the '943 patent claims the use of deionized water while the '310 patent uses filtered water. The specification of the '943 patent details that purified water can be used in lieu of deionized water. Doc. No. 43-1 at 4:28–32. The '943 patent therefore includes the disclosure of purified (i.e., filtered) water.

108:13–109:9; 160:1–12. The difference between the '943 patent and the '489 patent is that the '489 patent contains two less ingredients than the '943 patent: citric acid and sodium bisulfate. *Id*. at 160:9–16.

Hatle and CE recently filed a continuation application that claims priority to the '489 patent, U.S. Patent Application No. 17/195,361 (the "'361 application"). Ex. 1 at 268:1–269:7; Ex. 2, U.S. Patent Application Publication No. 2021/0189571 at cover page. The '361 application published publicly for the first time on June 24, 2021 as U.S. Patent Application Publication No. 2021/0189571. Ex. 2, U.S. Patent Application Publication No. 2021/0189571 at cover page. Like the '943 patent, the '310 patent, and the '489 patent, the '361 application discloses a surface treatment composition to remove contaminants from a metal substrate containing sodium persulfate, DMEA, and water. *Id* at abstract, claims 1, 4, 8.

Hatle testified that the invention claimed in each of the '943 patent, the '310 patent, the '489 patent, and the '361 application is an "evolution" of the same product that simply decreased the number of ingredients in each iteration. Ex. 1 at 158:23–160:16. All claim a product for treating or decontaminating substrate surfaces made of, at least, sodium persulfate (an oxidizer), DMEA (an alkaline), and water. Doc. No. 43-1 at 5:52–6:39 ('943 patent); Doc. No. 43-2 at 10:25–44 ('310 patent); Doc. No. 43-3 at 12:29–51; Ex. 2 at claims 1, 4, 8 ('361 application). As mentioned, the sodium persulfate present in each iteration of the invention claimed in the patents was suggested by **Jim Knocke** (a CPT employee and partner)—not Hatle—in the original CorrLine formulation.[5] Ex. 1 at 63:13–64:13, 73:14–22.

---

[5] At present, CPT does not contest the inventorship of the '310 patent, the '489 patent, or the '361 application on this basis, although it may do so at the United States Patent and Trademark Office at a later date. *See* Improper Naming of Inventors, MPEP § 2157.

6

Hatle failed to assign the '310 patent, the '489 patent, or the '361 application to CPT as contemplated by his assignment agreement. Doc. No. 1-4. If any one or more of these three patents should have been assigned to CPT, it is a breach. Accordingly, CPT was forced to file this action, seeking specific performance and reasonable attorneys' fees. Doc. No. 1 ¶¶ 95–96.

V.         **SUMMARY OF THE ARGUMENT**

Hatle's Motion rests on the incorrect statement that the assignment agreement "required the assignment of a single patent" and its progeny (*i.e.*, the '943 patent), and that "[n]o other patents or patent applications were mentioned or identified in the [a]ssignment [a]greement." Doc. No. 43 at 4. Hatle's interpretation of the assignment agreement ignores the plain language, in direct contravention of Texas law. The agreement obligates Hatle to assign "the entire right, title, and interest ***in and to the Inventions*** in the United States and foreign countries ***and the Patents and Patent Applications,*** including but not limited to all reissues, divisions, continuations and extensions of the Patents" to CPT. Doc. No. 1-4 (emphasis added). It therefore does not limit "Inventions" to only those claimed in the designated patent or its children. Here, each of the inventions claimed in the later-filed patents and patent applications (*i.e.*, the '310 patent, the '489 patent, and the '361 application) were disclosed in the '943 patent specification or, at a minimum, there is a question of fact for the jury to determine regarding what is disclosed by the written description of the '943 patent. If the fact finder determines the ingredients of the later "inventions" were disclosed in the '943 patent, each later patent should have been assigned to TGS Solutions (now CPT) under the term "Inventions" in the assignment agreement. Moreover, and in the alternative, if any or all of the later-filed patents and patent applications satisfies the definition of a continuation-in-part of the '943 patent—an inquiry that is a question of fact—it must have been assigned, and Hatle breached his agreement on this independent basis, as the assignment agreement also assigns continuations of the patent to TGS Solutions. Summary judgment must be denied.

## VI. ARGUMENT

### A. The Summary Judgment Standard

Summary judgment is appropriate only where "the movant shows that there is no genuine dispute as to any material fact" and it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 804 (5th Cir. 2017) (citation omitted). As the nonmoving party, the Court must view the facts and inferences in the light most favorable to CPT. *Id.*

### B. There Is a Genuine Dispute of Material Fact Regarding Whether Hatle Complied with the Assignment Agreement

#### 1. The Later-Filed Patents and Application Are Directed to Inventions Covered by the Assignment Agreement

The construction of a patent assignment agreement is a matter of state contract law. *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996). When interpreting a contract under Texas Law, the court's primary concern "is to ascertain the true intentions of the parties as expressed in the instrument." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). To that end, courts "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.*

Hatle did not abide by his assignment agreement, which obligated him to assign "the entire right, title, and interest ***in and to the Inventions*** in the United States and foreign countries ***and the Patents and Patent Applications,*** including but not limited to all reissues, divisions, continuations and extensions of the Patents" to CPT. Doc. No. 1-4 (emphasis added). The plain text of the agreement clearly contemplates that the Inventions assigned are not limited to (and thus are broader than) the patents and patent applications assigned. *See MHL TEK, LLC v. Nissan Motor Co.*, 655 F.3d 1266, 1275–76 (Fed. Cir. 2011) (finding an agreement assigning the "the entire right, title

and interest, domestic and foreign, in and to the inventions and discoveries in [the Parent Application]" encompassed more than just patents and applications related to the parent application). Here, the agreement contains the conjunctive conjunction "and," which required Hatle to assign the right, title, and interest in ***both*** Inventions ***and*** in patents and patent applications. *See Wells Fargo Bank, N.A. v. David Orlando Collins*, No. H:09-2483, 2010 WL 3303663, at *3 (S.D. Tex. Aug. 19, 2010), *aff'd sub nom. In re Collins*, 437 F. App'x 314 (5th Cir. 2011) ("The 'and' in paragraph 9 is conjunctive, and therefore the contract requires Wells Fargo's actions to be for the purpose of both the protection of its interest in the property and the protection of its rights under the contract in order to be reimbursed its attorneys' fees.").

The Motion argues that the assignment agreement only required Hatle to assign the patent that was "unambiguously and clearly identified" therein, the '943 patent, as well as any related patents. Doc. No 43 at 4. This interpretation improperly ignores the term "Inventions" in the agreement, which was separate from "Patents and Patent Applications," and which courts have found conveys a broader interest than the term "patents." *See Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1323 (Fed. Cir. 2017) (finding that it was improper to "conflate the meaning of the word 'patent,' as used in the agreement, with 'invention'" because the latter conveys additional rights); *MHL TEK*, 655 F.3d at 1275–76 ("The plain language of either assignment is not so narrow. Both clearly assign the 'inventions and discoveries' disclosed in the Parent Application without further requiring that 'inventions and discoveries' be in patents or applications that are related to the Parent Application."). The inclusion of the term "Inventions" required Hatle to assign any patents or patent applications that claim inventions disclosed in the '943 patent. *See MHL TEK,* 655 F.3d at 1276. Hence, Hatle breached the assignment agreement if the written description of the '943 patent "reasonably conveys to those skilled in the art, the

invention claimed" in the '310 patent, the '489 patent, and the '361 application. *Id.* (internal quotation marks and citations omitted). This inquiry is a question of fact. *See Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 127 (5th Cir. 2017) (stating that whether a breach occurred is a question of fact); *cf. Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (written description of a patent is a question of fact). Accordingly, because Hatle's motion provides no evidence on this point, and because the jury must determine whether the '310 patent, the '489 patent *or* the '361 application describe or claim inventions reasonably conveyed by the disclosure of the '943 patent, summary judgment must be denied.

And CPT need not rest on Hatle's complete failure of proof. Hatle himself admitted the progression from the '943 patent to the '310 patent to the '489 patent and the '361 application was an "evolution" of the same product that simply decreased in the number of ingredients in each iteration. Ex. 1 at 158:23–160:16. Each uses a subset of the ingredients listed in the '943 patent to achieve the same purpose. Doc. No. 43-1 at 5:52–6:39 ('943 patent); Doc. No. 43-2 at 10:25–44 ('310 patent); Doc. No. 43-3 at 12:29–51; Ex. 2 at claims 1, 4, 8 ('361 application).

The '943 patent discloses a composition "which can be in powder form or liquid form" that is "used to treat metals" to "prevent[] corrosion and oxidation due to the removal of the corrosion mechanism i.e. water soluble and insoluble ionic materials that participate in the cathodic corrosion mechanism." Doc. No. 43-1 at 1:62–2:3. Specifically, the composition "can include one or more additional treatment components selected from the group comprising: . . . an alkaline material . . . dimethylethanolamine [DMEA]; one or more additional first formulations, a fast dry apparatus, combinations thereof; or a d.i. water rinse." *Id*. at 5:1–9. Embodiments recited in the '943 patent also include citric acid and sodium persulfate. *Id.* at 4:4–9, 4:20–27. The '943 patent makes clear that although it describes certain embodiments, "the embodiments might be practiced other than

as specifically described herein." *Id*. 5:47–50. Thus, the invention described in the '943 patent—and that was assigned to TGS Solutions in Hatle's assignment agreement— includes the subject matter later claimed by the '310 patent (treatment composition comprised of citric acid, sodium persulfate, DMEA, and water) and the '489 patent and the '361 application (treatment composition comprised of sodium persulfate, DMEA, and water). The written description of the '943 patent thus "reasonably conveys to those skilled in the art the invention[s] claimed" in the '310 patent, the '489 patent, and the '361 application and "[were] assigned to" TGS Solutions. *MHL TEK,* 655 F.3d at 1276. Hatle therefore breached the agreement *three separate times* when he failed to assign the '310 patent, the '489 patent, or the '361 application to CPT. *Id.* at 1275–78 ("The specification of the Parent Application supports the claims of the [later-filed patent], meaning that it is within the 'inventions and discoveries' in the Parent Application and was therefore assigned"). At least the term "Inventions" in the assignment agreement obligated him to do so, because the inventions claimed in the '310 patent to the '489 patent and the '361 application are all disclosed in the '943 patent specification. Hatle breached his agreement and summary judgment must be denied.

### 2. The Later-Filed Patents and Application May Be Considered Continuations-in-Part Applications

Alternatively, even if the term "Inventions" does not cover some or all of the '310 patent, the '489 patent, and the '361 application (it does) Hatle still breached his assignment agreement because it required him to assign all "continuations … of the Patents" to TGS Solutions. *See* Doc. No. 1–4. One form of a patent application is called a continuation-in-part ("CIP") application. *See* Continuation-in-Part Application (R-08.2017), MPEP § 201.08. "A CIP application contains subject matter from a prior application and may also contain additional matter not disclosed in the prior application." *Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1302 (Fed. Cir. 1999); *see also* Continuation-in-Part Application (R-08.2017), MPEP § 201.08 ("A continuation-

11

in-part is an application filed during the lifetime of an earlier nonprovisional application, repeating some substantial portion or all of the earlier nonprovisional application and adding matter not disclosed in the earlier nonprovisional application."). Whether an application meets the definition of a CIP application is a question of fact. *Augustine Med.*, 181 F.3d 1291 at 1302.

Here, as explained above, the '310 patent, the '489 patent, and the '361 application all contain subject matter recited in the '943 patent. Thus, all meet the definition of a CIP of the '943 patent. The fact that Hatle did not claim them as such or attempt to claim priority under 35 U.S.C. § 120 is immaterial. *See Ono's Trading Co., LLC v. Parnell*, CV 04-0706-CG-C, 2006 WL 8437743, at *10 (S.D. Ala. Nov. 22, 2006) ("However, the second patent application, whether labeled as such, clearly meets the definition of a continuation-in-part. The second patent application specifically references the earlier filed application and has some subject matter in common with the earlier patent application, but it also contained additional matter not disclosed in the prior application. The fact that [the defendant] did not claim priority of filing date under 35 U.S.C. § 120 does not avoid assignment of second application."). Relying on an applicant's decision to claim priority under 35 U.S.C. § 120 rather than the definition of a CIP application, in this context, would allow Hatle to circumvent his patent assignment agreement by choosing not to claim priority on patents that were contemplated by the agreement. This should not stand.

Consequently, as the '310 patent, the '489 patent, and the '361 application all meet the definition of CIPs relating to the '943 patent, Hatle breached the agreement each time when he failed to assign to CPT, and summary judgment should be denied on this basis as well.

## VII. CONCLUSION

Hatle filed a bare-bones motion with no analysis, ignoring the plain language of the contract while stalling discovery. Considering the actual language of the contract, the Court has two straightforward and independent bases to deny summary judgment: (1) fact issues exist as to

whether any one or all of the '310 patent, the '489 patent, or the '361 application contain inventions stemming from the '943 patent, or (2) fact issues exist as to whether any one or all of the '310 patent, the '489 patent, or the '361 application are properly considered CIP applications of the '943 patent. For one or both of these reasons, the Court should deny Hatle's Motion for Summary Judgment on Count VI.

Dated: July 13, 2021

Respectfully submitted,

By: */s/ John R. Keville*
John R. Keville
Attorney-in-Charge
Texas Bar No. 00794085
S.D. Adm. No. 20922
jkeville@winston.com
Corinne S. Hockman
Texas Bar No. 24102541
S.D. Adm. No. 3019917
chockman@winston.com
Kyle A. Terao
Texas Bar No. 24106502
S.D. Adm. No. 3253694
kterao@winston.com
WINSTON & STRAWN LLP
800 Capitol, Suite 2400
Houston, Texas 77002
Tel. (713) 651-2600
Fax (713) 651-2700

**COUNSEL FOR PLAINTIFF CORROSION PREVENTION TECHNOLOGIES LLC**

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document has been served on counsel of record who are deemed to have consented to electronic service on July 13, 2021, via electronic filing using the Court's CM/ECF system.

*/s/ John R. Keville*