IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CORROSION PREVENTION TECHNOLOGIES LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> LOREN L. HATLE, SANTIAGO HERNANDEZ, TIMOTHY MULVILLE, BEAR METAL TECHNOLOGIES, LLC, and CORROSION EXCHANGE, LLC, <br><br> *Defendants.* | Case No. 4:20-cv-02201 <br><br> **JURY TRIAL DEMANDED** |

**CORROSION PREVENTION TECHNOLOGIES LLC'S SUR-REPLY IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ON COUNTS I, II, III, IV, V, AND VII**

Plaintiff Corrosion Prevention Technologies LLC ("CPT") files this Sur-Reply in Support of its Opposition to Defendants Loren L. Hatle's ("Hatle"), Santiago Hernandez's, Timothy Mulville's, Bear Metal Technologies, LLC's, and Corrosion Exchange, LLC's (collectively "Defendants") Motions for Summary Judgment on Counts II (DTSA), III (TUTSA), IV (misappropriation), V (breach of contract), and VII (conversation) (Doc. No. 55), which concern Hatle's misappropriation of CPT's trade secrets and breach of confidentiality agreement. Specifically, CPT files this Sur-Reply to alert the Court to Hatle's inconsistent litigation positions, which directly undermine his claim that he is entitled to judgment based on the statute of limitations.

**I. FACTUAL BACKGROUND AND ARGUMENT**

This lawsuit against Mr. Hatle is not the only one being currently litigated. In addition to this action for misappropriation of CPT trade secrets and confidential information, false

1

advertising under the Lanham Act, and breaches of two contracts, a former business partner of Hatle's in Clean Metal Technologies—Randy Leboeuf—filed claims against him for failure to pay promissory notes in Louisiana (the "Louisiana lawsuit").

Here, Defendants moved for summary judgement on the basis that certain October 2014 and 2015 letters to Hatle, while he was working with Leboeuf and Clean Metal Technologies, triggered the statutes of limitations because "[a]t the very least, the Third Letter dated October 15, 2015 undisputedly demonstrates that Plaintiff had knowledge of Defendants' alleged misappropriations of confidential information, which includes trade secrets, and marketing materials." Doc. No. 38 at 3; *accord* Doc. Nos. 35 at 6 and 36 at 4. In Hatle's Reply in support of the motions, he claimed "there is no genuine issue of material fact that Plaintiff was aware or should have been aware of any misappropriation of an alleged trade secret by Defendant Hatle" and "[i]t is indisputable that Plaintiff had [] actual knowledge of an alleged injury relating to its confidential and trade secret information. . . ." Doc. No. 60 at 6, 8.

In the Louisiana lawsuit, on August 18, 2021, Hatle's counsel deposed Mr. Lebeouf. *See generally* Ex. 1. Hatle presented Leboeuf with the same Johnson letters on which Defendants rely here—including the October 2015 letter from Johnston to Brandon Black (Exhibit 6 to Leboeuf's deposition). *See* Doc. No. 36-01, 36-03. Hatle's Louisiana counsel made statements and took positions ***directly contradicting Hatle's position in this litigation and in Hatle's motions for summary judgment***. There, Hatle claims that the letters do not make any allegations or accusations regarding breach of Hatle's agreement, or misappropriation of trade secrets, asserting that they offer nothing more than a "remind[er] of his obligations and limitations in regards to" CPT's assets. The following are relevant excerpts from the Louisiana deposition:

**Q** And let's look at Exhibit 6, please, Mr. LeBoeuf.
(Exhibit 6 was marked for identification.)[1]
And Exhibit 6 -- it is a letter from the Office of Peter Johnson to Brandon K. Black with Jones Walker. Jones Walker was one of the firms you retained in order to review the allegations of Tagos Group. Is that correct?
**A** Yeah. That's -- yes. Yes, ma'am.
\*\*\*
**Q** So my question was that Mr. Johnson doesn't state that Mr. Hatle is using the confidential information he purportedly possesses from CorrLine in breach of the confidentiality agreement, does he?
   **MS. HOCKMAN**: Same objection.
**A** No.
**Q** Continuing on in Mr. Johnson's letter, he goes on to state that "TGS purchased all of the assets of CorrLine out of bankruptcy in October 2014." And then he lists those assets that TGS purchased out of the CorrLine bankruptcy, and I'm moving on to Page 3, Mr. LeBoeuf, and after this list of the assets, beginning with the first full paragraph of Page 3, Mr. Johnson states, "Notwithstanding the foregoing, in October 2014 Hatle became involved in the formation of an entity known as Bear Metal Technologies that represented that it was developing a product similar to CorrX. It being evident that Hatle was ignoring the rights of TGS in both the assets purchased from the bankruptcy estate as well as the confidentiality agreement, on October 27, 2014, as counsel for TGS, I sent a letter to Hatle reminding him of his obligations and limitations in regards to the assets purchased by TGS."
Do you see where I was reading from, Mr. LeBoeuf?
**A** Yes, ma'am.
**Q** And again, in that paragraph, Mr. Johnson doesn't accuse Mr. Hatle of violating the confidentiality agreement, does he?
**A** No, ma'am.[2]

---

**Q** And as we've read this letter today, did you see any specific allegations that Mr. Black actually made against Mr. Hatle -- that he was in violation of the confidentiality agreement?
**A** Not from my knowledge.[3]

---

**Q** Exhibit 7 is an October 27, 2014, letter from Peter Johnson to Loren Hatle. Is that correct?
**A** Yes, ma'am.
**Q** And in the lower left hand corner there is a Bates stamp of LeBoeuf 005455. Do you see that?
**A** Yes, ma'am.
\*\*\*
**Q** At the end of this list that Mr. Johnson provides of the intellectual property, on Page 3, the last sentence, he says, "You have previously been sent a copy of the sale for your review and reference that contains the foregoing." And on the last page of Mr. Johnson's letter he has the same closing paragraph as in Exhibit 6 to Mr. Black, and he states, "Please take notice that TGS

---

[1] Exhibit 6 is the "Third Letter" referenced in the Motions here, dated October 2015.
[2] Ex. 1 at 78:6–15, 86:18–87:24.
[3] Ex. 1 at 96:10–14.

3

Solutions, LLC, the current owner of CorrLine's rights under the sale order, including the intellectual property and confidentiality agreement, intends to enforce the contractual duties and its right to ownership and will hold you personally liable for any breach of the confidentiality agreement and any action that interferes with the property rights acquired by TGS under the sale transaction directed by the sale order."

       Did you see where I read from, Mr. LeBoeuf?

**A**    Yes, ma'am.

**Q**    And in that sentences, Mr. Johnson doesn't accuse Mr. Hatle of doing anything in violation of the confidentiality agreement, does he?

       **MS. HOCKMAN**: Objection: Form.

**A**    Not to my knowledge.

**Q**    Again we have another letter from Mr. Johnson which he just sets out provisions of the confidentiality agreement and intellectual property that TGS acquired but he never explicitly states that Mr. Hatle has violated any type of confidentiality agreement with CorrLine, does he?

**A**    Not to my knowledge. Again my attorneys had reviewed everything that --

**Q**    Well, Mr. LeBoeuf, is it possible based -- and I'm just saying based on what you and I have read today with your own eyes -- have you seen anything in the two letters that we have gone over in Exhibit 6 or 7 where Mr. Johnson has accused Mr. Hatle of violating the confidentiality agreement he supposedly entered with CorrLine?

       **MS. HOCKMAN**: Objection: Form.

**A**    Not to my knowledge. Not from what you have went over.[4]

---

**Q**    And from the letters that you and I have just gone over from Mr. Johnson to Brandon Black and Mr. Hatle, Mr. Johnson made no specific allegations against Mr. Hatle. Is that correct?

       **MS. HOCKMAN**: Objection: Form.

**A**    Not to my knowledge. No, ma'am.[5]

---

**Q**    But again we've gone over this letter. He just walks about supposed obligations. But in this letter can you point to anywhere in this letter where Mr. Johnson accuses Mr. Hatle of violating any portion of the confidentiality agreement?

       **MS. HOCKMAN**: Objection: Form.

**A**    No, ma'am.[6]

These excerpts support CPT's Opposition position, that Hatle has failed to meet his summary judgment burden to "conclusively establish" the "affirmative defense of limitations" (*KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) because, as apparent from this

---

[4] Ex. 1 at 98:13–18, 101:8–102:24.
[5] Ex. 1 at 111:3–8.
[6] Ex. 1 at 117:5–11.

testimony that flies in the face of his arguments to this Court, Hatle cannot "(1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury." *Id.*; *Mendes v. Toyota Motor Sales, U.S.A., Inc.*, 2016 WL 1222153, at *2 (S.D. Tex. Mar. 29, 2016).

As Hatle's Louisiana counsel makes clear, Johnson's letters warning Hatle to abide by the obligations in his agreement make no accusations, and do not constitute "discovery of the injury" required to start the clock running on a statute of limitations. *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 264 (5th Cir. 2014); *see also Pressure Sys. Int'l., Inc. v. Sw. Research Inst.*, 350 S.W.3d 212, 217 (Tex. App.—San Antonio 2011, pet. denied) (development of competing technology by former employee "not necessarily wrongful in and of itself"). Hatle's position in the Louisiana lawsuit is that the Johnson letters in no way accused Hatle of violating any agreement entered with CPT's predecessor CorrLine or of misappropriating trade secrets, and, in Hatle's counsel's words "made no specific allegations against Mr. Hatle" at all. This supports this Court denying summary judgment for Hatle on the statute of limitations argument. At minimum, this creates a fact issue from which a reasonable jury could find CPT did not have notice of Hatle's breach and misappropriation; at most it creates a judicial estoppel on the point of notice. *E.g.*, *In re Coastal Plains, Inc.*, 179 F.3d 197, 205–06 (5th Cir. 1999) (providing an overview of judicial estoppel and stating that it should be applied where "the position of the party to be estopped is clearly inconsistent with its previous one" to prevent "intentional self-contradiction [from] being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice") (internal citations and quotations omitted).

5

## II.  CONCLUSION

Hatle takes the position in the Louisiana lawsuit that the letters from Peter Johnson offered nothing more than a reminder of Hatle's confidentiality obligations.  This further supports CPT's position that these letters cannot serve as the basis for a statute of limitations summary judgment.  Hatle's motions should be denied.

Dated: September 2, 2021

Respectfully submitted,

By: */s/ John R. Keville*
John R. Keville
Attorney-in-Charge
Texas Bar No. 00794085
S.D. Adm. No. 20922
jkeville@winston.com
Corinne S. Hockman
Texas Bar No. 24102541
S.D. Adm. No. 3019917
chockman@winston.com
Kyle A. Terao
Texas Bar No. 24106502
S.D. Adm. No. 3253694
kterao@winston.com
WINSTON & STRAWN LLP
800 Capitol, Suite 2400
Houston, Texas 77002
Tel. (713) 651-2600
Fax (713) 651-2700

**COUNSEL FOR PLAINTIFF CORROSION PREVENTION TECHNOLOGIES LLC**

## **CERTIFICATE OF SERVICE**

      I certify that a true and correct copy of the foregoing document has been served on counsel of record who are deemed to have consented to electronic service on September 2, 2021, via electronic filing using the Court's CM/ECF system.

                                          */s/ John R. Keville*