**Exhibit 1**

IN THE DISTRICT COURT OF

HARRIS COUNTY, TEXAS

333rd JUDICIAL DISTRICT

_____

| | |
|---|---|
| LOREN L. HATLE, | |
|     Plaintiff, | |
|   v. | Case No. |
| CLIFFORD WRIGHT, JR.; BERKELEY | 2019-87343 |
| RESEARCH GROUP, LLC; CLEVE J. GLENN; | |
| SEYFARTH SHAW LLP; MICROCLEAN | |
| METALS, LLC; and RANDY P. LEBOEUF, | |
|     Defendants. | |

_____

32ND JUDICIAL DISTRICT COURT

PARISH OF TERREBONNE

STATE OF LOUISIANA

_____

| | |
|---|---|
| RANDY P. LEBOEUF, | |
|     Plaintiff, | |
|   v. | Case No. |
| LOREN HATLE, ET AL, | 0187494 |
| , | |
|     Defendants. | |

_____

```
 1                A P E A R A N C E S
 2   ON BEHALF OF PLAINTIFF LOREN L. HATLE:
 3        TAMARA STINER TOOMER, ESQUIRE (by
 4   videoconference)
 5        Johnsen Law
 6        316 East Main Street, Suite 2D
 7        Humble, TX 77338
 8        tamara@johnsenlaw.com
 9        (832) 786-8646
10
11   ON BEHALF OF DEFENDANTS CLEVE GLENN AND SEYFARTH SHAW:
12        ROBIN O'NEIL, ESQUIRE (by videoconference)
13        Fogler Brar Ford O'Neil Gray
14        2 Houston Center
15        909 Fannin Street, Suite 1640
16        Houston, TX 77010
17        roneil@foglerbrar.com
18        (713) 325-8242
19
20   ON BEHALF OF WITNESS RANDY P. LEBOEUF:
21        CORI STONE HOCKMAN, ESQUIRE (by videoconference)
22        Winston & Strawn LLP
23        35 W. Wacker Drive
24        Chicago, IL 60601
25        chockman@winston.com
```

1          A P E A R A N C E S (Cont'd.)
2    ALSO PRESENT:
3         William Bordelon, Esquire (by videoconference),
4    William Bordelon
5         Loren Hatle, Plaintiff (by videoconference)
6         Darryl Landwehr, Esquire (by videoconference),
7    Landwehr Law Firm
8         Caroline Ortego, Esquire (by videoconference),
9    Johnsen Law
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 78

```
 1   Tagos Group.  Is that correct?
 2        A    Yeah, at that time, because Loren said he
 3   had no -- no obligations.  He had no noncompete.  He
 4   had nothing.  He had nothing signed with the
 5   Tagos/CorrLine Group.
 6        Q    And let's look at Exhibit 6, please, Mr.
 7   LeBoeuf.
 8                  (Exhibit 6 was marked for
 9                   identification.)
10             And Exhibit 6 -- it is a letter from the
11   Office of Peter Johnson to Brandon K. Black with Jones
12   Walker.  Jones Walker was one of the firms you
13   retained in order to review the allegations of Tagos
14   Group.  Is that correct?
15        A    Yeah.  That's -- yes.  Yes, ma'am.
16        Q    In fact you retained three separate firms to
17   investigate this issue.  Is that correct?
18        A    Yes, ma'am.
19        Q    And those firms were, in addition to Jones
20   Walker, Mr. Kiesel's firm and Mr. Sundbery's firm.  Is
21   that correct?
22        A    Yes, ma'am.
23        Q    And do you recall telling Mr. Hatle that you
24   spent over $50,000 on these three firms investigating
25   the issue?
```

1  Mr. Johnson accuse Mr. Hatle of violating that
2  confidentiality agreement?
3      A    I don't know.
4      Q    Well, let's read it again.  It just states
5  that "The confidential information Hatle possesses was
6  the property of CorrLine and survives CorrLine and the
7  term of the Confidentiality Agreement."
8           Mr. Johnson doesn't say that Mr. Hatle used
9  that confidential information in violation of the
10 confidentiality agreement, does he?
11              MS. HOCKMAN:  Objection:  Form.
12     A    Right.
13     Q    Right, he doesn't say that?
14              MS. HOCKMAN:  Objection:  Form.
15     A    He states it.  Yes, ma'am.
16     Q    He states what?
17     A    What you're referring to.
18     Q    So my question was that Mr. Johnson doesn't
19 state that Mr. Hatle is using the confidential
20 information he purportedly possesses from CorrLine in
21 breach of the confidentiality agreement, does he?
22              MS. HOCKMAN:  Same objection.
23     A    No.
24     Q    Continuing on in Mr. Johnson's letter, he
25 goes on to state that "TGS purchased all of the assets

```
 1   of CorrLine out of bankruptcy in October 2014."
 2              And then he lists those assets that TGS
 3   purchased out of the CorrLine bankruptcy -- and I'm
 4   moving on to Page 3, Mr. LeBoeuf -- and after this
 5   list of the assets, beginning with the first full
 6   paragraph of Page 3, Mr. Johnson states,
 7   "Notwithstanding the foregoing, in October 2014 Hatle
 8   became involved in the formation of an entity known as
 9   Bear Metal Technologies that represented that it was
10   developing a product similar to CorrX."
11              "It being evident that Hatle was ignoring
12   the rights of TGS in both the assets purchased from
13   the bankruptcy estate as well as the confidentiality
14   agreement, on October 27, 2014, as counsel for TGS, I
15   sent a letter to Hatle reminding him of his
16   obligations and limitations in regards to the assets
17   purchased by TGS."
18              Do you see where I was reading from, Mr.
19   LeBoeuf?
20        A     Yes, ma'am.
21        Q     And again, in that paragraph, Mr. Johnson
22   doesn't accuse Mr. Hatle of violating the
23   confidentiality agreement, does he?
24        A     No, ma'am.
25        Q     "Apparently undeterred, Hatle became
```

1  letter, can you ascertain from Mr. Johnson's letter
2  what specific allegations he is claiming that Mr.
3  Hatle has done in violation of the confidentiality
4  agreement?
5           MS. HOCKMAN:  Objection:  Form.
6    A    You know, I consulted with my attorneys, and
7  I can't remember exactly what was the, you know -- it
8  was -- they handled the situation, and I leaned on
9  them for advice and direction.
10   Q    And as we've read this letter today, did you
11 see any specific allegations that Mr. Black actually
12 made against Mr. Hatle -- that he was in violation of
13 the confidentiality agreement?
14   A    Not from my knowledge.
15   Q    I thank you for bearing with me through this
16 exhibit, and I am prepared to take a lunch break
17 assuming everybody else is wanting to go off the
18 record and do the same.
19           MS. HOCKMAN:  Sure.
20           MR. LANDWEHR:  Fine.
21           MR. BORDELON:  This is Billy Bordelon
22 for a second.
23           MS. STINER TOOMER:  Yes, sir.
24           MR. BORDELON:  I don't care timewise
25 whatever you all do, but I want you to know that at

```
 1                    (Exhibit 7 was marked for

 2                    identification.)

 3              MS. HOCKMAN:  Give me one second.

 4      A    Okay.  I have it, ma'am.

 5      Q    And Exhibit 7 is an October 27, 2014, e-mail

 6  from Peter Johnson to Mr. Hatle.  Is that correct?

 7              MS. HOCKMAN:  Objection:  Form.

 8      A    Yes, ma'am.

 9              MS. HOCKMAN:  I'm sorry, to clarify

10  it's a letter not an e-mail for the record.

11              MS. STINER TOOMER:  Thank you for that.

12  BY MS. STINER TOOMER:

13      Q    Exhibit 7 is an October 27, 2014, letter

14  from Peter Johnson to Loren Hatle.  Is that correct?

15      A    Yes, ma'am.

16      Q    And in the lower left hand corner there is a

17  Bates stamp of LeBoeuf 005455.  Do you see that?

18      A    Yes, ma'am.

19      Q    Have you seen this document before?

20      A    Not that I can recall.  No, ma'am.

21      Q    And I represent to you it was produced from

22  your files.  Would you have any idea why it would be

23  in your files?

24      A    No, ma'am.  Well, this is -- I apologize.

25  This is from Peter Johnson.  I didn't have time to
```

 1   Judge Bohm's order all intellectual property including
 2   but not limited to the following."
 3           And Mr. Johnson lists various
 4   things -- various intellectual property that was
 5   acquired by TGS.
 6           Does that appear correct to you?
 7      A   Yes, ma'am.
 8      Q   At the end of this list that Mr. Johnson
 9   provides of the intellectual property, on Page 3, the
10   last sentence, he says, "You have previously been sent
11   a copy of the sale for your review and reference that
12   contains the foregoing."
13           And on the last page of Mr. Johnson's letter
14   he has the same closing paragraph as in Exhibit 6 to
15   Mr. Black, and he states, "Please take notice that TGS
16   Solutions, LLC, the current owner of CorrLine's rights
17   under the sale order, including the intellectual
18   property and confidentiality agreement, intends to
19   enforce the contractual duties and its right to
20   ownership and will hold you personally liable for any
21   breach of the confidentiality agreement and any action
22   that interferes with the property rights acquired by
23   TGS under the sale transaction directed by the sale
24   order."
25           Did you see where I read from, Mr. LeBoeuf?

1      A      Yes, ma'am.

2      Q      And in that sentences, Mr. Johnson doesn't

3   accuse Mr. Hatle of doing anything in violation of the

4   confidentiality agreement, does he?

5                MS. HOCKMAN:  Objection:  Form.

6      A      Not to my knowledge.

7      Q      Again we have another letter from Mr.

8   Johnson which he just sets out provisions of the

9   confidentiality agreement and intellectual property

10  that TGS acquired, but he never explicitly states that

11  Mr. Hatle has violated any type of confidentiality

12  agreement with CorrLine, does he?

13     A      Not to my knowledge.  Again my attorneys had

14  reviewed everything that --

15     Q      Well, Mr. LeBoeuf, is it possible

16  based -- and I'm just saying based on what you and I

17  have read today with your own eyes -- have you seen

18  anything in the two letters that we have gone over in

19  Exhibit 6 or 7 where Mr. Johnson has accused Mr. Hatle

20  of violating the confidentiality agreement he

21  supposedly entered with CorrLine?

22               MS. HOCKMAN:  Objection:  Form.

23     A      Not to my knowledge.  Not from what you have

24  went over.

25     Q      So can it be that Mr. Johnson is just out

1  states.  Is that right?

2      A    Yes, ma'am.

3      Q    And from the letters that you and I have
4  just gone over from Mr. Johnson to Brandon Black and
5  Mr. Hatle, Mr. Johnson made no specific allegations
6  against Mr. Hatle.  Is that correct?
7           MS. HOCKMAN:  Objection:  Form.
8      A    Not to my knowledge.  No, ma'am.
9      Q    And likewise Mr. Johnson in those two
10 letters made no specific allegations against Clean
11 Metal Technologies.  Is that right?
12          MS. HOCKMAN:  Objection:  Form.
13     A    That's right.  Yes, ma'am.
14     Q    So continuing on in that paragraph, the last
15 sentence starting with, "After three months" -- "
16          "After three months and despite neither
17 Clean Metal Technologies nor Loren indicating either
18 would voluntarily agree to be deposed, The Tagos Group
19 has taken no action against either Clean Metal
20 Technologies or Loren to require these depositions,
21 and, in fact, has not taken any other action."
22          Tagos Group has never sued Clean Metal
23 Technologies has it to your knowledge?
24          MS. HOCKMAN:  Objection:  Form.
25     A    No, ma'am.

1    Q    Exhibit 6 or Exhibit 7?  I'm sorry.
2    A    Exhibit 7.
3    Q    I'm with you now.  Thank you.
4    A    That's the reason it went to an attorney.
5    Q    But again we've gone over this letter.  He
6    just walks about supposed obligations.  But in this
7    letter can you point to anywhere in this letter where
8    Mr. Johnson accuses Mr. Hatle of violating any portion
9    of the confidentiality agreement?
10              MS. HOCKMAN:  Objection:  Form.
11   A    No, ma'am.
12   Q    If you can -- let's just talk about Clean
13   Metal Technologies for a moment.  You had testified
14   earlier that until a patent was granted on Mr. Hatle's
15   technologies, there was to be no product sales or
16   marketing.  Is that correct?
17   A    No product sales.  Yes, ma'am.
18   Q    And what about marketing?  Was marketing
19   allowed?
20   A    We never really talked about not trying to
21   promote our business and talk about what we were doing
22   and getting into doing, but the initial sale part
23   is -- is what we held back on.
24   Q    And would you agree this became a great
25   source of frustration for Mr. Hatle?

```
 1              CERTIFICATE OF NOTARY PUBLIC

 2              I, SIDNEY MARTINEZ, the officer before whom

 3     the foregoing proceedings were taken, do hereby

 4     certify that any witness(es) in the foregoing

 5     proceedings, prior to testifying, were duly sworn;

 6     that the proceedings were recorded by me and

 7     thereafter reduced to typewriting by a qualified

 8     transcriptionist; that said digital audio recording of

 9     said proceedings are a true and accurate record to the

10     best of my knowledge, skills, and ability; that I am

11     neither counsel for, related to, nor employed by any

12     of the parties to the action in which this was taken;

13     and, further, that I am not a relative or employee of

14     any counsel or attorney employed by the parties

15     hereto, nor financially or otherwise interested in the

16     outcome of this action.
                                  <%22410,Signature%>
17                                     SIDNEY MARTINEZ

18                                Notary Public in and for the

19                                     State of Texas

20

21     [X] Review of the transcript was requested.
```

1  CERTIFICATE OF TRANSCRIBER

2  I, RACHEL LUNAN, do hereby certify that this

3  transcript was prepared from the digital audio

4  recording of the foregoing proceeding, that said

5  transcript is a true and accurate record of the

6  proceedings to the best of my knowledge, skills, and

7  ability; that I am neither counsel for, related to,

8  nor employed by any of the parties to the action in

9  which this was taken; and, further, that I am not a

10  relative or employee of any counsel or attorney

11  employed by the parties hereto, nor financially or

12  otherwise interested in the outcome of this action.

13

14

&lt;%26457,Signature%&gt;
15  RACHEL LUNAN