United States District Court
Southern District of Texas

**ENTERED**

March 01, 2022

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CORROSION PREVENTION TECHNOLOGIES LLC, | § § § | |
| Plaintiff, | § | |
| VS. | § § | CIVIL ACTION NO. 4:20-CV-2201 |
| LOREN L. HATLE, *et al*, | § § | |
| Defendants. | § § | |

## <u>ORDER</u>

Pending before the Court are Defendants' Loren L. Hatle, Santiago Hernandez, Timothy Mulville, Bear Metal Technologies, LLC ("Bear Metal"), and Corrosion Exchange, LLC ("CE") (collectively the "Defendants" or "Counterclaim Plaintiffs") Motions for Summary Judgment. (Doc. Nos. 36, 38, 39, 40, 41, 43). Plaintiff Corrosion Prevention Technologies LLC's ("CPT" or "Plaintiff") filed a two Responses, together addressing all six motions, (Docs. No. 55, 57), and Defendants filed a Reply to each Response. (Docs. No. 60, 62). Plaintiff supplemented its Response to Doc. No. 55, (Doc. No. 64), and Defendants subsequently filed a Reply to said supplement. (Doc. No. 65). After considering the briefing and applicable law, the Court denies each motion.

## I.    Background[1]

CPT manufactures, markets, and sells treatment kits for corrosion. Corrosion is a problem in various industries, such as oil and gas, shipping trades, and others. CPT allegedly created a more efficient corrosion prevention technology that involves fewer steps to complete, saving time and

---

[1] The Background comes from the facts alleged in CPT's complaint. (*See* Doc. No. 1). Where appropriate for analysis of the motion, however, the facts will be recited in the light most favorable to Defendants as the non-moving party. *See Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

energy of users. Its main product, which is allegedly trademarked, is called CorrX. Defendants Hatle, Hernandez, and Mulville ("Individual Defendants") are former employees of CPT. Defendant Bear Metal Technologies was allegedly started by Defendant Hernandez when he left CPT's employ, and Defendant Corrosion Exchange was subsequently started by Defendant Hatle.

CPT sued all Defendants for alleged violations of the Lanham Act, the Federal Defend Trade Secrets Act, and the Texas Uniform Trade Secrets Act ("TUTSA"), and for common law misappropriation. It also sued the individual Defendants for breach of various confidentiality agreements they allegedly signed and for conversion. Finally, CPT sued only Hatle for breach of an assignment agreement ("Assignment Agreement") under which Hatle was allegedly obligated to transfer the rights to certain intellectual property to CPT.

Subsequently, Defendants answered and filed counterclaims against CPT for declaratory judgment of noninfringement of two patents (US Patent No. 9,782,804 (the "'804 patent") and US Patent No. 9,193,943 (the "'943 patent")), and state-law claims of tortious interference with potential business relationship, business disparagement, and defamation. (*See* Doc. No. 16). The Court later dismissed these Counterclaims. (Doc. No. 22).

Defendants have now filed six motions for summary judgment encompassing all seven counts alleged in the Complaint. (Doc. Nos. 36, 38, 39, 40, 41, 43), contending that the facts demonstrate that Plaintiff lacks standing to bring a Lanham Act claim, that all claims are time-barred by their respective statutes of limitations, and that Hatle did not breach the Assignment Agreement.

## II.    Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

### III.    Analysis

Defendants have moved for summary judgment on each of the seven counts at issue in this lawsuit. The Court will address each count individually.

#### A. Count I: Violation of the Lanham Act (Doc. No. 35)

Defendants move for summary judgment with respect to Count I, violation of the Lanham Act, arguing that Plaintiff lacks standing to assert this claim and that the applicable statute of limitations bars this claim. The Court will first consider the standing argument.

##### 1. **Standing**

In order to have standing under the Lanham Act, "a plaintiff must plead (and ultimately prove) an injury to commercial interest in sales or business reputation proximately caused by the

3

defendant's reputation." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140. To satisfy the "proximate cause" prong of the requirement, a plaintiff "ordinarily must show economic or reputational injury directly from the deception wrought by defendant's advertising; and that occurs when deception of consumer causes them to withhold trade from the plaintiff." *Id.* at 133.

Defendants argue that Plaintiff does not have standing to bring a Lanham Act claim because none of the alleged acts of misconduct set forth in Count I of the Complaint "involve a registered mark of Plaintiff, nor mention the Plaintiff at all." (Doc. No. 35 at 4–5). Instead, Defendants contend that Plaintiff seeks to pass off what should be a copyright claim as a trademark claim, because the alleged acts of misconduct are a disguised "species of mutant copyright law" which do not fall under the protection of the Lanham Act. (*Id.*) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003)).

Plaintiff responds, contending that it has standing to assert the claim because it is a direct competitor with Defendants that has suffered injury as a result of false advertising. A prima facie case of false advertising under the Lanham Act requires the plaintiff to show:

>   (1) A false or misleading statement of fact about a product;
>   (2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers;
>   (3) The deception is material, in that it is likely to influence the consumer's purchasing decision;
>   (4) The product is in interstate commerce; and
>   (5) The plaintiff has been or is likely to be injured as a result of the statement at issue.

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000); *see also* 15 U.S.C. § 1125. Specifically, Plaintiff argues that the metadata, attached as (Doc. No. 55-11), shows that Hatle created a document which falsely claimed that the products that Defendants were selling were renamed from products that belong to Plaintiff, referencing its "CorrX" trademark. (Doc. No.

55 at 13). As a result, Plaintiff contends that these false statements were designed to intentionally confuse consumers—and to ultimately detract from the sales of Plaintiff—by deliberately misleading consumers to believe that the product being sold by Defendant was exactly the same as the product being sold by Plaintiff.

The Court finds that Plaintiff has standing to bring this Lanham Act claim. Plaintiff has sufficiently pled an injury to commercial sales interest or business reputation proximately caused by Defendants. At the very least, a genuine dispute of material fact exists as to the question of proximate cause. Furthermore, Plaintiff has asserted, supported by Defendant Hatle's testimony, that it is a direct competitor with Defendants, (*see* Doc. No. 56-1 at 39), and thus is clearly within the zone of interests of the Lanham Act on the facts presented. Defendants, therefore, are not entitled to summary judgment as a matter of law with respect to standing under Count I. Defendants' Motion on this issue is denied.

### 2. Statute of Limitations

Defendants also argue that they are entitled to summary judgment with respect to Count I because the claim is time-barred. (Doc. No. 35 at 5). "The burden of pleading and establishing the statute of limitations defense falls upon the defendant." *Jaso v. The Coca Cola Co.*, 435 F. App'x. 346, 351 (5th Cir. 2011) (citing Fed. R. Civ. P. 8(c)(1)). "The Lanham Act 'establishes no limitations for claims alleging unfair competition or false advertising.'" *Id.* at 356 (quoting *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996)). The Fifth Circuit has instructed "that the most analogous Texas statute of limitations for a Lanham Act claim is the four-year statute of limitations applied to fraud claims under § 16.004 of the Texas Civil Practice & Remedies Code." *Jaso*, 435 F. App'x at 356 (citing *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 859–860 (N.D. Tex. 2009)). Other Texas courts have held similarly. *See, e.g., Edmark Indus. SDN.*

*BHD. v. South Asia Int'l (H.K.) Ltd.*, 89 F. Supp. 2d 840, 846 (E.D. Tex. 2000); *Derrick Mfg. Corp. v. Southwestern Wire Cloth, Inc.*, 934 F. Supp. 796, 805 (S.D. Tex. 1996).

Moreover, because the Lanham Act does not contain a statute of limitations, "federal courts have referred to analogous state statutes of limitations to determine whether a presumption of laches should apply." *Bd. of Regents, Univ. of Texas Sys. v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 667 (W.D.Tex. 2008). "The time period for laches under the Lanham Act 'begins when the plaintiff knew or should have known of the infringement.'" *Jaso*, 435 F. App'x at 356 (quoting *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998)). "The defense of laches requires proof that there was (1) a 'delay in asserting a right or claim'; (2) 'that the delay was inexcusable'; and (3) 'that undue prejudice resulted from the delay.'" *Id.*

This lawsuit was filed on June 23, 2020. In each of their Motions, Defendants reference three letters: (1) a letter sent by Plaintiff's lawyer Peter Johnson to Hatle in October 2014, reminding Hatle of his obligations under the confidentiality agreement ("2014 Letter"), (2) a letter sent by Johnson to Hatle in August 2015, expressing concern that "the property CPT has acquired from CorrLine ["CLI"] estate is currently being utilized in an unauthorized manner" and that they planned to investigate further ("2015 Letter"), and (3) a letter sent from Johnson to Mr. Brandon Black on October 12, 2015, concerning Plaintiff's belief that Hatle was attempting to violate his contractual agreements with Plaintiff. ("Third Letter").

Defendants assert that the Third Letter "demonstrates that Plaintiff had knowledge of Defendants' alleged misuses of marketing materials as far back as October 2015—more than 5 years prior to this lawsuit (filed June 23, 2020)." (Doc. No. 35 at 6) (citing Doc. No. 35-8 at 4). They contend that as a result, the facts show that Plaintiff is time-barred by the relevant statute of limitations.

6

Plaintiff, in response, first argues that Defendants, by failing to allege that they suffered undue prejudice as a result of the delay, have failed to meet their burden in establishing the defense. (Doc. No. 55 at 16). Furthermore, Plaintiff argues that the Third Letter is only addressed to, and consequently only applicable to Hatle, while also contending that the letter is silent with respect to any potential claims under the Lanham Act. (*Id.*). Finally, Plaintiff contends that even if the three letters demonstrate knowledge of Defendants' misconduct, "then the letters also put Defendants on notice of [Plaintiff's] objections to the same, thereby ending the laches period." (*Id.*) (citing *Alfa Laval Inc. v. Flowtrend, Inc.*, 2016 WL 2625068 at *6 (S.D. Tex. May 9, 2016)).

The Court finds that, when drawing all inferences in favor of Plaintiff as the non-moving party, a genuine dispute of material fact is present with respect to when Plaintiff knew or should have known of Defendants' misconduct. The question of whether Plaintiff knew or should have known at the time it sent the Third Letter is a question of fact that must be resolved by the finder of fact rather than this Court, and as a result, Defendants' Motion is denied on this issue.

### B. Counts II and III: Violation of the Federal Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act (Doc. No. 36)

Defendants further argue they are entitled summary judgment with respect to Count II and III because the claims are time-barred. (*See* Doc. No. 36 at 3). A civil action alleging misappropriation of a trade secret "may not be commenced later than 3 years after the date on which the misappropriation with respect to which the action would relate is discovered or by exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d). Similarly, an action under the Texas Uniform Trade Secrets Act is also governed by a three-year statute of limitations, with the limitations period beginning when the misappropriation is discovered or should have been discovered. Tex. Civ. Prac. & Rem Code § 16.010(a); *see also Seatrax, Inc. v. Sonbeck Int'l., Inc.*, 200 F.3d 358, 365 (5th Cir. 2000) ("[T]he discovery rule exception, which is

expressly incorporated in the revised three-year statute of limitations, defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action."). This lawsuit was filed on June 23, 2020. Therefore, in order to prevail on summary judgment, Defendants must demonstrate that the limitations period to run began before June 23, 2017.

Defendants again point to the Third Letter to support their argument that "Plaintiff had knowledge of Defendants' alleged misuses of marketing materials as far back as October 2015—more than 5 years prior to this lawsuit (filed June 23, 2020)." (Doc. No. 36 at 4) (citing Doc. No. 36-3 at 3–4). They contend that as a result, the facts show that Plaintiff's Count II and Count III claims are time-barred by the relevant statute of limitations.

Plaintiff, in response, argues first that the question of Plaintiff knew or should have known of its injuries is a question of fact that is not appropriate to be decided on summary judgment. Furthermore, Plaintiff argues that it is improper to treat all Defendants as on for the purposes of the statute of limitations analysis, because there may be multiple dates of accrual. (Doc. No. 55 at 18). Therefore, Plaintiff addresses each Defendant individually.

### 1. **Hatle**

With respect to Defendant Hatle, Plaintiff argues that the letters cited by Defendants "are insufficient to show CPT had knowledge of its injury as they amount to nothing more than 'mere surmise, suspicion, and accusation.'" (Doc. No. 55 at 19) (quoting *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 724 (Tex. 2016)). Plaintiff points to Hatle's testimony, in which Hatle stated that the Third Letter did not allege misappropriation of trade secrets or confidential information. (Doc. No. 56-1 at 44–45). Plaintiff also argues that Defendants have failed to show that any further inquiry would have led to the discovery or any injury. (Doc. No. 55 at 20). Hatle

testified that neither he nor Clean Metal Technologies ("CMT"), the company he worked for from December 2014 to April 2016, sold or manufactured any product; instead, they merely developed "concepts" or "methods." (Doc. No. 56-1). After receiving letters from Plaintiff, Hatle's business partner at Clean Metal ceased operations. (*Id.*). Thus, Plaintiff argues it was not possible even upon further inquiry for anything to make it aware of Hatle's breach, because he ceased operations after receiving the letters.

In the Third Letter, Plaintiff states that the letter's purpose is to provide information "regarding what TGS believes is an attempt by Mr. Hatle to violate both his contractual agreements regarding confidentiality and his further attempt to wrongfully invade the intellectual property rights owned by TGS." (Doc. No. 36-3). It further states that it was "evident that Hatle was ignoring the rights of TGS in . . . the Confidentiality Agreement, on October 27, 2014" and, referencing Bear Metal and Clean Metal, "both companies appear to be marketing a product and technology that has the same characteristics and uses as the proprietary technology owned by CorrLine and subsequently acquired by TGS." (*Id.*).

Each side has presented evidence to support their assertions, and as a result, a genuine dispute of material fact exists as to the precise moment that the statute of limitations was tolled with respect to Hatle's alleged misappropriation. This is a question of fact that is best resolved by the finder of fact. Defendants Motion with respect to Defendant Hatle on Counts II and III is denied.

### 2. **Corrosion Exchange**

With respect to Defendant CE, Plaintiff argues that "the letters do not show that CPT had any suspicions of misappropriation by CE, much less knowledge, because none reference CE." (Doc. No. 55 at 22). Plaintiff buffers this argument by pointing out that CE did not exist until

December 2017. (Doc. No. 55-7). It follows, per Plaintiff, that the limitations period could not have begun before December 2017 at it relates to CE, and therefore, Defendant is not entitled to summary judgment.

Therefore, the Court denies the motion as to CE.

### 3. **Bear Metal**

With respect to Defendant Bear Metal, Plaintiff, pointing to the Third Letter, argues that the reference to Bear Metal was made in passing, and only suggests that Plaintiff was suspicious of Bear Metal's activities, not knowledge of a violation. (*See* Doc. No. 36-3 at 4). Furthermore, Plaintiff contends that Defendants have failed to show that further inquiry would have led Plaintiff to discover any injury because at the time the letter was written, Plaintiff incorrectly believed that Hatle was involved in the formation of Bear Metal along with Defendant Hernandez. (*Id.*). Plaintiff's argument on this point appears incomplete, though one may infer that once it recognized that Hatle was not involved with Bear Metal, Plaintiff had no reason to pursue further inquiries at that time. Finally, Plaintiff argues that Defendants have produced no evidence that Plaintiff knew or should have known about Bear Metals sales of corrosion prevention products before June 23, 2017, because Bear Metal's website *only* advertised services as late as August 5, 2019. (*Compare* Doc. No. 55-18 *with* Doc. No. 55-19). Therefore, Plaintiff argues that there is no evidence that it knew or should have known about Bear Metal's sales of corrosion prevention technology as early as June 2017.

Defendants, in response, argue that Defendant Hernandez signed the same confidentiality agreement as Hatle, and therefore, Plaintiff's mistaken belief about Hatle's involvement in the formation of Bear Metal has no bearing on the fact that it should have known that Hernandez, through Bear Metal, was allegedly violating the agreement. (*See* Doc. No. 36-3 at 3).

The Court finds that a question of fact exists as to when Plaintiff knew or should have known about Bear Metal's alleged violations that is best resolved by the finder of fact. Defendants' motion with respect to Defendant Bear Metal on Counts II and III is denied.

### 4. **Hernandez**

With respect to Defendant Hernandez, Plaintiff argues that the letters are exclusively focused on Hatle's actions, and that the only reference to Hernandez was the result of a "mistaken belief that Hatle was affiliated with Hernandez and Bear Metal, not because CPT has any independent suspicions that Hernandez independently misappropriated CPT's trade secrets." (Doc. No. 55 at 24). Upon realizing the Hatle and Hernandez never formed a business with one another, Plaintiff had no reason to inquire further into Hernandez. As a result, Plaintiff argues that the claim should not be time-barred with respect to Hernandez.

Defendants, in response, present the same arguments here as they presented for Bear Metal. Defendant Hernandez signed the same confidentiality agreement as Hatle, and therefore, Plaintiff's mistake belief about Hatle's involvement in the formation of Bear Metal has no bearing on the fact that it should have known that Hernandez, through Bear Metal, was allegedly violating the agreement. (*See* Doc. No. 36-3 at 3).

The Court finds that there is a genuine dispute of material fact as to when Plaintiff knew or should have known about Hernandez's misappropriation, and therefore, Defendants' motion with respect to Defendant Hernandez on Counts II and III is denied.

### 5. **Mulville**

With respect to Defendant Mulville, Plaintiff argues that none of the letters make any reference to Mulville. (Doc. No. 55 at 24) (citing Docs. No. 36-1, 36-2, 36-3). Defendants contend that this lack of reference, coupled with Mulville's testimony that he has had "no relationship

whatsoever" with Hatle since 2014, makes Mulville's alleged misappropriation independent of Hatle's. (*See* Doc. No. 56-3 at 9). Furthermore, Plaintiff argues that Defendants have failed to explain how the letters demonstrate that it had any knowledge of Mulville's misappropriation.

The Court denies Defendants' Motion on Counts II and III as it relates to Mulville.

<u>C. Count IV: Common Law Misappropriation (Doc. No. 38)</u>

Defendants argue that they are entitled to summary judgment with respect to Count IV, concerning common law misappropriation—also known as unfair competition—because the claim is time-barred. *See Vertex Servs., LLC v. Oceanwide Houston, Inc.*, 583 S.W.3d 841, 849 (Tex. App.—Houston [1st Dist.] 2019, no pet.). "Every action for which there is no express limitations period, except for the recovery of real property, must be brought not later than four years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code § 16.051. The Court finds no case or statute setting forth an express statute of limitations with respect to common law misappropriation in Texas. As a result, it is presumed that the statute of limitations is four years.

Defendants argue that the claim is time-barred because the Third Letter "undisputedly demonstrates that Plaintiff had knowledge of Defendants' alleged misappropriations of confidential information . . . as far back as October 2014—more than 5 years prior to this lawsuit." (Doc. No. 38) (citing Doc. No. 38-3 at 3–4).

In response, Plaintiff argues that the discovery rule "defers accrual of the cause of action until the plaintiff knew, or should have known through the exercise of reasonable diligence, of the facts giving rise to the cause of action." *WesternGeco v. Ion Geophysical Corp.*, 2009 WL 3497123, at *4 (S.D. Tex. Oct. 28, 2009). Relying on the arguments asserted in response to Counts II and III, Plaintiff contends that a fact question exists with respect to when Plaintiff knew or should have known of Defendants' misappropriation. The Court agrees. A genuine dispute of fact

exists as to when Plaintiff became aware, or should have become aware, of Defendants'
misappropriation. Defendants' Motion is on this issue is denied.

### D. Count V: Breach of Contract (Confidentiality Agreement) (Doc. No. 39)

Defendants similarly argue they are entitled to summary judgment with respect to Count
V because the claim is time-barred. Count V concerns a breach of contract claim against the
Individual Defendants for breaching their confidentiality agreements with CLI when they used
CLI's confidential information regarding CorrX products to one or more of CMT, Bear Metal, or
CE. (Doc. No. 1 at 26).

"As a general rule, the statute of limitations for a breach of contract action is four years
from the day the cause of action accrues. A breach of contract claim accrues when the contract is
breached." *Capstone Healthcare Equip. Servs., Inc. ex rel. Health Sys. Grp., L.L.C. v. Quality
Home Health Care, Inc.*, 295 S.W.3d 696, 699 (Tex. App.—Dallas 2009, pet. denied) (cleaned
up); *see also Smith v. Ferguson*, 160 S.W.3d 115, 123 (Tex. App.—Dallas 2005, pet. denied) ("An
action for breach of contract is governed by a four-year statute of limitations."). As the lawsuit
was filed June 23, 2020, the action for breach of contract must have been brought before June 23,
2016, to avoid being time-barred.

Defendant points to the 2014 letter (Doc. 39-1) and the Third Letter (Doc. 39-3) to
demonstrate that Plaintiff had knowledge of Individual Defendants' alleged breach as early as
October 2014, and as a result, they are entitled to summary judgment.

Plaintiff argues that Defendants cite the same three letters to demonstrate knowledge on
this claim as they cited for the trade secret misappropriation claims. (Doc. No. 55 at 25). As such,
with respect to Defendants Hernandez and Mulville, Plaintiff reasserts the arguments set forth in

response to Counts II and III, arguing that the same accrual period applied for Counts II and III must apply for Count V, and therefore, the claim is not time-barred.

As to Defendant Hatle, Plaintiff argues that the letters are not sufficient to establish knowledge, but even if they were, they would only apply as to breaches occurring before the limitation period. (Doc. No. 55 at 25) (citing *Gimme The Best, L.L.C. v. Sungard Vericenter, Inc.*, 2010 WL 1388993, at *6 (S.D. Tex. Apr. 1, 2010)). Plaintiff contends that at worst, it has some viable claims against Hatle, and thus, summary judgment is inappropriate.

The Court finds that Plaintiff has sufficiently raised a genuine dispute of material fact as to when it first learned, or should have learned, of Defendants' breach. Moreover, the Court finds that any alleged breach of the confidentiality agreement occurring on or after June 23, 2016— within four years of the commencement of this lawsuit—is not time-barred.[2]

### E. Count VI: Breach of Contract (Assignment Agreement) (Doc. No. 43)

Defendant Hatle argues that he is entitled to summary judgment with respect to Count VI because the undisputed facts demonstrate that he fully performed the terms of the Assignment Agreement, and therefore no breach has occurred. "The elements of a breach of contract claim are (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App.—San Antonio 2015, pet denied).

Count VI concerns a breach of contract claim against Defendant Hatle with respect to the Assignment Agreement between CLI and Hatle. Hatle argues that the Assignment Agreement "required the assignment of a single patent application – the Assigned Patent." (Doc. No. 43 at 4).

---

[2] Furthermore, to the extent that any of the Defendants' activities constitute a violation of the confidentiality agreement, that document has continuing obligations that may or may not defeat the statute of limitations claims. (*See, e.g.*, Doc. No. 1-1 at ¶ 2).

The "Assigned Patent" refers to the '943 Patent. (*Id.*) Hatle argues that the Assigned Patent is currently assigned to Plaintiff, and therefore, he has materially performed under the Assignment Agreement. Hatle argues that the other patents he filed, the '310 Patent, the '489 Patent, and the '361 Patent ("Later-Filed Patents"), are not subject to the Assignment Agreement because they are unrelated to the '943 Patent, claim no priority to any part of the '943 Patent, do not share the same inventorship or titles of the '943 Patent, and are different inventions than the '943 Patent. (*Id.*). Therefore, Hatle contends there has been no breach of the Assignment Agreement and that he is entitled to summary judgment as a matter of law.

Plaintiff responds by presenting two arguments. First, Plaintiff contends that Hatle's Later-Filed Patents are covered by the Assignment Agreement. (Doc. No. 57 at 12–14). Plaintiff points to the specific language of the Assignment agreement, which, in pertinent part, states that Hatle will assign "the entire right, title, and interest in and to the Inventions in the United States and foreign countries and the Patents and Patent Applications, including but not limited to all reissues, divisions, continuations and extensions of the Patents" to Plaintiff. (Doc. No. 1-4). Focusing on the "Inventions" language, Plaintiff argues that Hatle has not provided any evidence that the written description of the '943 patent fails to "reasonably [convey] to those skilled in the art, the invention claim" in the later-filed patents, and therefore, there is a question of fact as to whether the later-filed patents are subject to the Assignment Agreement. *MHL TEK, LLC v. Nissan Motor Co.*, 655 F.3d 1266, 1276 (Fed. Cir. 2011); *see also Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 127 (5th Cir. 2017) ("What constitutes a breach of contract is a question of law, but whether the breaching conduct occurred is a question of fact."). Plaintiff additionally points to Hatle's testimony, in which he stated that each Later-Filed Patent evolved from the '943 patent, but with fewer ingredients. (Doc. 58 at 31–33).

Relying on the same testimony from Hatle, Plaintiff contends that even if "Inventions" does not cover the later-filed patents, Hatle breached the Assignment Agreement because it required him to assign all "continuations" of the Patents. (*See* Doc. 1-4). Plaintiff argues that the Later-Filed Patents qualify as "Continuation-In-Part applications" ("CIP application"), which contain "subject matter from a prior application and may also contain additional matter not disclosed in the prior application." *Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1302 (Fed. Cir. 1999). Whether an application qualifies as a CIP application is a question of fact. *Id.* at 1303. Plaintiff argues that Hatle's testimony suggests that the later-filed patents contain subject matter recited in the '943 patent, and therefore, the jury must decide whether the Later-Filed Patents qualify as CIP applications.

The Court finds that Plaintiff has sufficiently raised a genuine dispute of material fact with respect to the terms of the Assignment Agreement and whether Hatle's conduct constitutes a breach. Questions of fact remain about whether the Later-Filed Patents were covered by the Assignment Agreement. As such, the Court denies Defendants' Motion for Summary Judgment with respect to the breach of contract claim.

### F. Count VII: Conversion (Doc. No. 40)

Finally, Individual Defendants argue that they are entitled to summary judgment with respect to Count VII because the claim is time-barred. "The limitations period for conversion is two years, and beings to run at the time of the unlawful taking." *In re Estate of Mechior*, 365 S.W.3d 794, 798 (Tex. App.—San Antonio 2012, pet. denied). If, however, the initial possession was lawful, "the limitations period does not begin to run until the return of the property has been demanded or refused, or until the person in possession has unequivocally exercised acts of dominion over the property inconsistent with the claims of the owner or the person entitled to

possession." *Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 700 (Tex. App.—Dallas 2012, no pet.).

Again, Defendants identify the 2015 letter, (Doc. 40-2), and the Third Letter, (Doc. No. 40-3), to demonstrate that Plaintiff had knowledge of the Individual Defendants' alleged conversion of confidential information as early as October 2014. (Doc. No. 40). As such, Defendants contend that the claim is untimely, and they are entitled to summary judgment as a matter of law.

Plaintiff, in response, argues that the Individual Defendants "lawfully possessed CPT's property during their employment," and as a result, the conversion claim did not accrue until Plaintiff knew or should have known about the unlawful taking. (Doc. No. 55 at 26). First, Plaintiff contends that Defendants Mulville and/or Hernandez retained one of its promotional videos to create a similar video for Bear Metal, but that Plaintiff had no way of knowing about this unlawful taking until the video was released in February 2020. (Doc. No. 55-8). Second, Plaintiff contends that Defendant Hatle retained its SEM studies and marketing materials upon his resignation, (Doc. No. 55-3), and that none of the letters proffered by Individual Defendants demonstrate anything beyond "'mere surmise, suspicion, and accusation' as to Hatle alone, 'not facts that in the exercise of reasonable diligence would lead to the discovery of a wrongful act' as to any Individual Defendant." (Doc. No. 55 at 26) (quoting *Sw. Energy Prod.*, 491 S.W.3d at 724). Plaintiff argues, therefore, that the statute of limitations defense ought not apply because the limitations period began within two years of the lawsuit being filed.

The Court finds that a genuine dispute of material fact exists with respect to when the statute of limitations tolled for the conversion claim. There does not appear to be any debate that the Defendants' initial possession of Plaintiff's promotional materials was lawful. As such, a

question of fact exists with respect to when the possession allegedly amounted to conversion. Therefore, Defendants' Motion is denied on the conversion claim.

## IV.    Conclusion

For the foregoing reasons, the Court denies Defendants' Motions for Summary Judgment. (Docs. No. 36, 38, 39, 40, 41, 43).

Signed at Houston, Texas, this 1st day of March, 2022.

Andrew S. Hanen
United States District Judge